1  Cardiac output is increased (cardiovascular disease)

2  Better blood pressure (cardiovascular disease)

3  Less brain fog (Alzheimers)

4  Lessens stress on joints (rheumatoid arthritis)

5  Inflammation reduced (rheumatoid arthritis)

6  Loosens the Primary System that Causes Pain (fibromyalgia)"

7  (i)  From the Dallas area, alone, FDA had received "approximately

8  06 complaints … alleging injury due to the medical device or

9  requesting assistance due to disease claims made by the inventor,

10  Ashley Black."

11  (j)  Defendant's agent or employee—identity redacted from the

12  report—who "inputs the required FDA medical device description in

13  the U.S. Customs database" when the device's manufacturer(s) ships it

14  to the U.S. "was recently given direction by [redacted] to change the

15  product code for the FasciaBlaster from a finished device 89LYG

16  (manual therapeutic massager) to a medical device component, 89IOD

17  (Exercise component) . . . [a]t least 05 detentions were initiated by

18  FDA imports due to not having matching product code between the

19  exporting manufacturer (shipping) and the Initial Importer (receiving)."

20  (k)  "I requested to see the raw data in support of the clinical study

21  documented online []. The firm [Defendant ADBI] had no raw data

22  available for regulatory review. "

23  90.  The intrepid FDA Investigator comes across as surprised to find herself

24  in the position of having to be the one to educate Defendants' representatives

25  regarding their basic responsibilities and duties owed to customers and society at

26  large. Her detailed depictions of some of Defendants' confused and unprepared

27  employees, desperately claiming ignorance, earnestly turning over empty report

28

- 42 -

1   files, etc. might even be humorous, had so many customers not been so badly

2   injured by their irresponsibility and incompetence. The Investigator seems almost

3   incredulous about being thrust into the role of chastising federal schoolmarm:

4    Specifically, your firm, ADB Interests LLC, has no MDR procedure or
 internal system in place[] to provide for the timely and effective

5    identification, communication and evaluation of events that may be

6    subject to medical device reporting requirements. ¶ ADB Interests LLC

7    is registered with the FDA as a Specification Developer of Class I
 finished medical devices: manual, therapeutic massagers. Your firm

8    also acts as the Initial Importer. *As such, you are responsible for*

9    *maintaining, evaluating and investigating, when necessary, all*

10   *complaints that may allege serious injury or malfunction by your*

11   *medical device, FasciaBlaster.*

12  (Emphasis added.) In sum, from the date of its entry into commerce until July 18,

13  2017, if not more recently or indeed currently, Defendant ADBI was grossly

14  noncompliant with FDA regulations, and at best oblivious, if not willfully

15  dismissive, of its obligation to society to refrain from selling a dangerous product.

16  **Defamation and Cyber-Bullying**

17   91. On information and belief, for Defendants' marketing purposes they

18  did and do rely most heavily on social media forums, e.g. discussion groups and

19  Defendant Black's and other company profile pages' comments sections on

20  Facebook. In these forums Defendants did and do e.g. tout FasciaBlaster's putative

21  beauty and health benefits, encourage purchases of different device models and

22  accessories, and cheerlead, motivate, and aggressively endeavor to foster a feeling

23  of community among 'blasters,' e.g. referring to their number as "Blaster Sisters".

24   92. One consequence of the foregoing is that this 'community' has many if

25  not all the hallmarks of a religious cult: (i) a charismatic, (ii) self-assured, (iii) self-

26  designated 'visionary' leader, with (iv) dubious credentials, who (v) makes lofty and

27  (vi) scientifically-unproven promises with (vii) absolute certainty, which (viii) her

28  would-be acolytes must take on faith subject, for good measure, to either (ix)

- 43 -

1  choreographed and (x) overly-enthusiastic cheerleading and praise for their loyal

2  commitment to the leader's 'vision', or else (xi) vindictive retaliatory punishment of

3  any dissent, including banishment from discussion groups, social media

4  'unfriending,' and coordinated campaigns of libel, character-attack, intimidation,

5  tortious interference, and other harassment orchestrated, on information and belief,

6  by Black herself. Multiple Plaintiffs, and others similarly situated, have experienced

7  all of the foregoing.

8       93.    Defendant Black, along with DOE(S) operating via social media and

9  other media at Black's behest, on information and belief (collectively, "cyberbully

10  Defendants"), did and do attempt to discredit anyone making any negative feedback

11  about FasciaBlaster. Black did and does undertake or encourage these acts (i) for the

12  plain commercial purpose of protecting her FasciaBlaster brand, if not also (ii) in a

13  cognitively dissonant effort to safeguard the lofty social position she believes she

14  has earned, which (subject to proof) has clearly instilled in her a personal animus

15  against the audacity of any dissension. As addressed *supra*, and in other ways

16  subject to proof, some Plaintiffs and others similarly situated have been *inter alia*

17  publicly disparaged, baselessly accused of crimes, and threatened e.g. with reprisals

18  against their personal businesses by the cyberbully Defendants.

19       94.    In addition to the wrongful acts which the cyberbully Defendants have

20  perpetrated in their own names, on information and belief one or more of the

21  cyberbully Defendants has created fake Facebook user accounts for the purpose of

22  defaming, harassing, intimidating, and bullying certain named Plaintiffs and others

23  who had honestly publicized negative experiences with FasciaBlaster. As addressed

24  *supra*, Plaintiffs have good cause to conclude that one of the cyberbully Defendants

25  manufactured "Sarah Minow" in order to undermine and attack dissatisfied

26  customers, including some of the named Plaintiffs, and to rally others to do so. On

27  information and belief, the same can be said of Facebook personae "Georgia Peach,"

28

- 44 -

1  "Brown Shuga," and "Nikki Kaviani" who likewise did and do habitually harass,

2  threaten, and bully anybody with the temerity to discuss negative 'blasting'

3  experiences on Facebook, including some of the named Plaintiffs.

4       95.    Since first being contacted by antagonistic Facebook discussion group

5  participants such as Ms. Minow, Ms. Peach, Ms. Shuga, and Ms. Kaviani, some

6  Plaintiffs have been targeted for defamation, harassment and bullying in other

7  arenas. For example, wholly fabricated criticisms about some Plaintiffs' personal

8  business enterprises have sprung up e.g. on Facebook, Yelp.com, and other crowd-

9  sourced commercial review websites/applications. On information and belief, said

10  professional defamation and attempted tortious interference is part and parcel of

11  Defendant Black's broader scheme—along with unwarranted, vindictive personal

12  attacks and bizarre threats—to silence her growing chorus of actual, human critics.

13       96.    The behavior of a particular group of Facebook personae (which might

14  be the same persona) operating on Defendants' behalf under the pseudonyms "Black

15  Ryno Security", "Ryno Black", "Ryno Brandt", and "Ryno Ulili" (collectively,

16  "Ryno") is of particular concern. Multiple Plaintiffs, and many others similarly

17  situated, have been made to feel anxious, exposed, unsafe, and afraid by Ryno's

18  conduct, including *inter alia*:

19          (a)    Ryno made numerous public comments on Facebook, as well as

20          in private messages, accusing Defendants' critics of various crimes and

21          deceptions, and vaguely threatening that e.g. women are "putting

22          themselves at risk" by their participation in one of the independent

23          Facebook groups which have been created by and for the many

24          dissatisfied FasciaBlaster users.

25          (b)    On July 8, 2017, Ryno posted a warning message on Facebook

26          listing 51 FasciaBlaster critics by name, and encouraging e.g. business

27          owners to block these critics from their Facebook pages in retaliation.

28

(c)     On information and Belief, Ryno did and does run background checks on Defendants' critics, having on at least three occasions publicized critics' having been arrested, e.g. for DUI; what any of that had to do with FasciaBlaster remains to be seen, but plainly it was intended to harass and intimidate.

(d)     Some FasciaBlaster critics have had their Facebook accounts hacked, finding earlier private messages from Defendant Black deleted by Ryno or someone associated with Ryno, on information and belief. Plaintiffs are informed and believe that these hacking victims may have used the same password to register with Defendants' online resources that they use for Facebook, thereby inadvertently providing Defendants with those passwords. Facebook tracks profile logins by geographical location, and some of these hacking victims, who do not live in Texas, received indication from Facebook that their accounts had been accessed by someone in Texas, the same state where Defendant ADBI is headquartered.

## FIRST CAUSE OF ACTION
## (FALSE ADVERTISING)
### Against Defendants Black, ADBIH, ADBI, and applicable DOES

97.     Paragraphs 1 through 96 are incorporated by reference as though fully set forth herein.

98.     All Defendants are subject to *respondeat superior* liability for the wrongful acts and omissions of any agent or employee of any of them, undertaken in the course of any conduct for the commercial benefit of Defendants, collectively or individually. Among the specified Defendants, individuals may also be jointly liable for their own acts subject to proof.

99.     Agents and/or employees of the Defendants—including Defendant

- 46 -

1   Black herself in both her personal capacity as a proud 'celebrity mogul' and in her

2   capacity as President and spokesperson for the corporate co-Defendants which bear

3   her name or initials—publicly disseminated untrue and/or misleading statements

4   with the intention to induce customers to purchase Defendants' commercial products

5   in reliance on said untrue and/or misleading statements.

6       100.   Cal. Civ. Code § 1770 (a)(2) deems it unlawful to "[m]isrepresent[] the

7   source, sponsorship, *approval, or certification* of goods and services." (Emphasis

8   added.) Defendants misrepresented the FDA's designation of FasciaBlaster as a

9   "Class 1 medical device (massager)"—i.e. with the same degree of regulation as

10  dental floss—as constituting the FDA's having bestowed its blessing on serious and

11  complex health claims and uses, far afield of the presumably modest benefits and

12  uses which someone at FDA once had in mind, regarding what had doubtless

13  seemed simply to be one of the market's many innocuous commercial implements

14  for gentle self-massage, on information and belief.

15      101.   Cal. Civ. Code § 1770 (a)(5) prohibits "[r]epresenting that goods or

16  services have sponsorship, approval, characteristics, ingredients, uses, benefits, or

17  quantities which they do not have or that a person has a sponsorship, approval,

18  status, affiliation, or connection which he or she does not have." Defendants'

19  marketing did and does contravene this provision in numerous ways, including *inter*

20  *alia*: false representations of FDA approval of FasciaBlaster's marketed techniques

21  for use; claims that it has been subject to "double-blind" testing, which it was not;

22  guarantees that it "cures" cellulite, improves muscle tone, rejuvenates skin, etcetera,

23  all of which the Plaintiffs have found to be far from the truth; and strenuous denials

24  regarding its dangerous effect on estrogen and other hormone levels, even while

25  Defendants were aware of, and attempting to squelch, reports to the contrary.

26      102.   Defendants further violated Cal. Civ. Code § 1770 (a)(5) by their false

27  assertions of the medical and/or academic qualifications of individuals associated

28

- 47 -

with FasciaBlaster, including, *inter alia*:

(a)    representations that Defendant Black is a "scientist" and Licensed Massage Therapist, when on information and belief she has no such license and no formal scientific education;

(b)    repeated references in promotional materials (videos and podcasts), by Black, to former FasciaBlaster spokesperson, Dari Samia, as "Doctor Dari," when in fact Mr. Samia is a nurse, not a doctor;

(c)    references to putative researcher Ms. Stross as a "neuroscientist," though she is in fact a massage therapist who, on information and belief, has no such academic background; and

(d)    references to putative researcher Jameson as "Doctor Bart," though he is in fact an athletic trainer who, on information and belief, has no medical or scientific qualifications of any kind.

103.    The foregoing misleading and/or false designations of medical/academic authority are/were evinced, and exacerbated, when on multiple occasions Black, Samia, Stross, Jameson, and others did and do purport to be qualified to dispense, and did and do dispense, advice on issues of a medical nature, including *inter alia* regarding:

(a)    'blasting' while pregnant (e.g. that it is "perfectly safe"[15]);

(b)    serious post-partum considerations such as Diastasis Recti, separation of the large abdominal muscles (e.g. that 'blasting' fixes it);

(c)    stroke (i.e. that it is not a risk);

---

[15] The "Terms & Conditions" section of Defendants' AshleyBlackGuru.com webpage *currently* offers a lengthy warning against certain uses of FasciaBlaster, e.g. while pregnant, over varicose veins. On information and belief, this disclaimer was added on or around May 22, 2017, prior to which Defendants—Defendant Black most enthusiastically—expressly made exactly opposite assertions of safety and usefulness, as described herein.

1    (d)    Multiple Sclerosis (e.g. that 'blasting' can cure it);

2    (e)    Parkinson's Disease (e.g. that 'blasting' helps with symptoms)

3    (f)    brain injury;

4    (g)    vertigo;

5    (h)    peripheral neuropathy;

6    (i)    Fibromyalgia:

7    (j)    Sciatica;

8    (k)    varicose veins (e.g. "you can use FasciaBlaster to ERASE your

9    varicose veins!"); and

10    (l)    other delicate medical topics, subject to proof.

11    104.   The FDA Inspection Report, for its part, presents eight unapproved and

12    illegal medical claims by Defendants, out of many more on information and belief.

13    (See Para. 89(h), supra.) The FDA Inspection Report further notes that Defendant

14    ADBI "had no raw data for regulatory review[]" from the putative clinical trial[16]

15    which Defendants tout authoritatively for marketing purposes. (See Para. 89(k),

16    supra.). In light of the foregoing, Plaintiffs allege on information and belief that

17    Defendants did or do fabricate the data, or direct or solicit DOE Defendant(s) to do

18    so, in order to falsely advertise the benefits of 'blasting'.

19    105.   Further, the FDA Inspection Report evinces Defendants' willful

20    blindness to the relationship between FasciaBlaster and the many injuries its users

21    have informed Defendants about. (See Para. 89(e), supra.) Since first entering

22    commerce in (on information and belief) 2015, through at least July 18, 2017,

23    Defendants were and may still be violating FDA regulations by their lack of

24    ─────────────────────────

25    [16] This presumably refers only to the putative clinical trial that actually
26    occurred, to the degree it did, as opposed to one of the scientific studies which, on
      information and belief, Defendants have falsely claimed to have performed.  (See
27    Para. 84(b), supra.)

28

- 49 -

1 reporting (MDR) or remedying (CAPA) procedures. Plaintiffs allege on information

2 and belief that these failures were the obvious and natural result of the reckless

3 indifference demonstrated by Defendants' failure to meaningfully investigate the

4 connection between 'blasting' and the numerous serious injuries reported to

5 Defendants during that long time span. On information and belief, Defendants

6 reasoned that they had more to gain by turning a blind eye. Defendants knew of

7 injurious side effects, thus the failure to investigate their connection to FasciaBlaster

8 ought reasonably to impute knowledge thereof to Defendants. On information and

9 belief, while touting a nigh-miraculous laundry list of health benefits from

10 'blasting', Defendants simultaneously, intentionally withheld actual and/or imputed

11 knowledge of serious dangers from the buying public.

12    106.    Accordingly, Plaintiffs and others similarly situated have been directly

13 and proximately harmed by acts and omissions of Defendants. As such, the

14 Plaintiffs, in their personal capacities and on behalf of all others similarly situated

15 pursuant to Cal. Civ. Code §§ 1781 and 1782(d), hereby seek injunctive relief to

16 curtail and, to the degree possible, reverse all of Defendants' deceptive marketing

17 practices before Plaintiffs, Class members, and other vulnerable people might be

18 further harmed thereby. Plaintiffs hereby request that the Court enjoin Defendants to

19 immediately undertake the following remedial commercial actions, to the degree

20 possible, in or on every medium Defendants did or do use for any marketing

21 purpose, including prominently and permanently on the 'Home' page of every

22 website and social media profile controlled by Defendant:

23        (a)    publicly and specifically retract all false health claims pertaining

24             to FasciaBlaster that Defendants have previously made;

25        (b)    cease and refrain from henceforth making any definitive health

26             claims pertaining to FasciaBlaster which are not specifically approved

27             by an accredited health-related institution, to be approved by the

28

- 50 -

Plaintiffs;

(c)      supplement Defendant's existing "Terms & Conditions" disclosure of possible side effects to include *all* side effects for which Plaintiff-approved health professionals suspect a connection to 'blasting' subject to proof, including *inter alia* anxiety, dizziness, heart palpitations, bruise staining, sagging skin, crêpe skin, worsened cellulite, etc.

(d)      include in all future promotional material—and to the extent possible, amend any existing promotional material to include—the statement "Ashley Black is Not a Medical Professional. Consult Your Doctor Before Use" in writing no more than one font-size smaller than the biggest font-size appearing anywhere else in the advertisement if the advertisement is in print, or at the beginning and end of every promotional video or audio recording, at the same or louder speaking volume as the rest of the recording;

(e)      redesign and manufacture FasciaBlaster without BPA, and amend any existing promotional material to include the statement "WARNING: FasciaBlasters Sold Before [DATE] May Contain BPA And Should Not Be Used In High Temperature Conditions".

(f)      institute MDR and CAPA procedures assiduously compliant with all FDA regulations, AMA guidelines, etc.

(g)      publicize offer for full refund of any FasciaBlaster device or accessory, no questions asked, with no expiration date; and

(h)      record and publicly display a video online wherein Black apologizes by name to each individual who will have provided formal notice of having been unfairly maligned or intimidated online by one of the Defendants or by any third party on behalf of any Defendant.

- 51 -

Plaintiffs further request that the Court enjoin Defendants to immediately:

(i)    cease and refrain from all promotion and sales of FasciaBlaster worldwide until Defendants have verifiably undertaken all of the remedial commercial actions specified *supra* at subsections (a-h) of this paragraph;

(j)    provide every participant from Defendant's putative clinical trial with her own full medical file i.e. all medical information gathered about the participant during the ASPI study;

(k)    after all private medical information has been provided to the participants, Defendant will verifiably destroy any remnant or record of any of the foregoing information still in its possession; and

(l)    for any future effort at a scientific study regarding FasciaBlaster, Defendant will adhere to all FDA and American Medical Association ("AMA") regulations and guidelines, including IRB supervision.

Plaintiffs also seek attorney's fees and costs of suit incurred herein.

## SECOND CAUSE OF ACTION

### (STRICT PRODUCTS LIABILITY—DESIGN DEFECT)

### Against Defendants Black, ADBIH, ADBI, and applicable DOES

107.    Paragraphs 1 through 106 are incorporated by reference as though fully set forth herein.

108.    The specified Defendants are subject to *respondeat superior* liability for the wrongful acts and omissions of any agent or employee of any of them, undertaken in the course of any conduct for the commercial benefit of Defendants, collectively or individually. Among the specified Defendants, individuals may also be jointly liable for their own acts subject to proof.

109.    The specified Defendants are/were responsible for and/or perform(ed) the manufacture, testing, marketing, distribution, and/or sale of FasciaBlaster.

- 52 -

110.   As described herein *supra*, and on other occasions subject to proof, FasciaBlaster did not and routinely does not perform as safely as an ordinary consumer would expect it to perform when used or misused in an intended or reasonably foreseeable way.

111.   As described herein *supra*, and in other ways subject to proof, the gravity of the potential harm resulting from the use of FasciaBlaster is extremely high.

112.   As described herein *supra*, and in other ways subject to proof, the named Plaintiffs, and many others similarly situated, were harmed by their use of FasciaBlasters.

113.   FasciaBlaster's failure to perform safely was a substantial factor in causing harm to the named Plaintiffs, and to many others similarly situated.

114.   On information and belief, the entire premise of achieving health benefits from 'blasting' one's fascia, which premise underlies FasciaBlaster's design, is unfounded and dangerous. On information and belief, no product designed to 'blast' fascia could or would be medically sound if used for that purpose.

115.   The benefit of FasciaBlaster's design, if any, is significantly outweighed by the gravity of the potential harm resulting from the use of FasciaBlaster, which is very high as described herein *supra*, and in other ways subject to proof.

116.   The benefit of FasciaBlaster's design, if any, is significantly outweighed by the likelihood that harm will occur from FasciaBlaster use, which is very high as described herein *supra*, and in other ways subject to proof.

117.   FasciaBlaster is fundamentally dangerous, likely to cause unexpected harm(s) to its users, and irredeemable by any putative benefit. As such, the design of FasciaBlaster—including all versions of devices marketed under that or a similar name for similar use—is defective under both the 'customer expectation' and 'risk-

- 53 -

1  benefit' tests. The foregoing is the direct and proximate cause of harms suffered by

2  the Plaintiffs and others similarly situated, to whom the specified Defendants are

3  therefore strictly liable for all damages associated with FasciaBlaster.

4  ### THIRD CAUSE OF ACTION

5  ### (STRICT PRODUCTS LIABILITY—FAILURE TO WARN)

6  ### Against Defendants Black, ADBIH, ADBI, and applicable DOES

7  118.   Paragraphs 1 through 117 are incorporated by reference as though fully

8  set forth herein.

9  119.   The specified Defendants are subject to *respondeat superior* liability

10  for the wrongful acts and omissions of any agent or employee of any of them,

11  undertaken in the course of any conduct for the commercial benefit of Defendants,

12  collectively or individually. Among the specified Defendants, individuals may also

13  be jointly liable for their own acts subject to proof.

14  120.   The specified Defendants are/were responsible for and/or perform(ed)

15  the manufacture, testing, marketing, distribution, and/or sale of FasciaBlaster.

16  121.   As described herein *supra*, and in other ways subject to proof,

17  FasciaBlaster use carries with it potential risks and/or side effects that were known

18  to the specified Defendants, and/or knowable in light of medical knowledge

19  generally accepted in the scientific community, at all relevant times herein. Such

20  knowledge may appropriately be imputed to the Defendants due to, *inter alia*:

21  (a)   the significant volume of customer complaints which any

22  Defendant, or agent or employee thereof, caused to be erased from

23  Facebook discussion groups and elsewhere;

24  (b)   70 or more customer complaints lodged directly with a

25  Defendant or agent or employee thereof prior to July 18, 2017, at least,

26  which Defendants intentionally or recklessly neglected to meaningfully

27  investigate, on information and belief (see e.g. Para. 89(a-e), *supra*);

- 54 -

(c)     data from the putative clinical trial undertaken by Defendants which, on information and belief—based on, *inter alia*, Defendants' refusal to disclose said data to the participants, notwithstanding promises and privacy obligations to do so, and inability to provide it to the FDA Investigator, notwithstanding regulatory obligation to do so— support Plaintiffs' allegations herein of risks and side effects, if not also of additional risks and side effects subject to proof; and

(d)     the fact that, on information and belief—based on, *inter alia*, photographic evidence—Defendant Ashley Black herself has suffered or is suffering from undisclosed risks and side effects of 'blasting,' including *inter alia* severely resurgent cellulite on her own legs, which is regrettable and would not merit mentioning except under the circumstances giving rise to this action.

122.    As described herein *supra*, and in other ways subject to proof, FasciaBlaster's potential risks and/or side effects did and do present a substantial danger when FasciaBlaster is used or misused in an intended or reasonably foreseeable way.

123.    As described herein *supra*, and for other reasons subject to proof, ordinary customers such as the named Plaintiffs, and others similarly situated, did not, do not, and would not recognize the potential risks and/or side effects of FasciaBlaster use, particularly in light of Defendants' aggressive wide-scale marketing.

124.    As described herein *supra*, and in other ways subject to proof, the specified Defendants failed to adequately warn the public about the potential risks and side effects of FasciaBlaster use, and failed to adequately instruct the public on ways, if any exist, that the potential risks and side effects of FasciaBlaster use might be avoided.

Doc# 1 Page# 56 - Doc ID = 1714516271 - Doc Type = OTHER

1    125.   The specified Defendants' failures to provide the public with either

2 sufficient warnings about FasciaBlaster, or instructions for its safe use (if any safe

3 use is possible), was a substantial factor in causing the harms described herein, and

4 any other harms subject to proof,  suffered by the Plaintiffs and any others similarly

5 situated.

6    126.   At all relevant times herein, the specified Defendants could, can, and

7 should, but did and do fail to, warn customers and potential customers of serious

8 risks and/or side effects from FasciaBlaster use. The foregoing acts and omissions

9 by Defendants were the direct and proximate cause of harms suffered by Plaintiffs

10 and others similarly situated, to whom the specified Defendants are therefore strictly

11 liable for all damages associated with FasciaBlaster.

12                     **FOURTH CAUSE OF ACTION**

13                          **(NEGLIGENCE)**

14      **Against Defendants Black, ADBIH, ADBI, and applicable DOES**

15    127.   Paragraphs 1 through 126 are incorporated by reference as though fully

16 set forth herein.

17    128.   The specified Defendants are subject to *respondeat superior* liability

18 for the wrongful acts and omissions of any agent or employee of any of them,

19 undertaken in the course of any conduct for the commercial benefit of Defendants,

20 collectively or individually. Among the specified Defendants, individuals may also

21 be jointly liable for their own acts subject to proof.

22    129.   The specified Defendants did or do perform, supervise, and/or were or

23 are otherwise responsible for the manufacture, testing, marketing, distribution,

24 and/or sale of FasciaBlaster.

25    130.   The specified Defendants knew or reasonably should have known that

26 FasciaBlaster was dangerous or likely to be dangerous when used or misused in a

27 reasonably foreseeable manner.

28

- 56 -

131. The specified Defendants knew or reasonably should have known that customers and potential customers would not be aware of the potential danger(s) of FasciaBlaster use.

132. As described herein *supra*, and in other ways subject to proof, the specified Defendants failed to adequately warn the public about the potential dangers of FasciaBlaster use. Further, the specified Defendants failed to adequately instruct the public on ways, if any exist, that the potential dangers of FasciaBlaster use might be avoided. Even if and to the degree any specified Defendant(s) learned about any foreseeable danger from FasciaBlaster use after any sale(s) had already been made, the specified Defendant(s) nevertheless failed to issue a recall.

133. A reasonable manufacturer, tester, marketer, distributor, or seller under the same or similar circumstances as the specified Defendants', knowing that a device he/she/it manufactures/tests/markets/distributes/sells is foreseeably dangerous, would warn the public about that danger and/or instruct the public on safe use of the device, if any safe use exists, or upon learning of such danger after sale(s) would issue a recall of the device. Such reasonable actor would do the foregoing not only as a matter of obvious business diligence, but hopefully per the basic care and consideration for the general wellbeing of other people on which civilized society relies.

134. Because the specified Defendants knew or reasonably should have known that FasciaBlaster is foreseeably dangerous, yet failed to so warn or instruct the public, or issue a recall, notwithstanding that such is what reasonably careful actors under the same or similar circumstances would do, the specified Defendants were and are negligent in supervising and/or conducting the manufacture, testing, marketing, distribution, and/or sale of FasciaBlaster. Such negligence was the direct and proximate cause of harms suffered by the Plaintiffs and others similarly situated, to whom the specified Defendants are therefore liable for all damages

1   associated with FasciaBlaster.

2   135.   Each Plaintiff, and many others similarly situated, suffered serious

3   emotional distress, including one or more of suffering, anguish, fright, horror,

4   nervousness, anxiety, grief, worry, shock, humiliation, and shame.

5   136.   The specified Defendants' negligence was a substantial factor in

6   causing the serious emotional distress of Plaintiffs and many others similarly

7   situated.

8   137.   In light of the foregoing, the specified Defendants are liable for general

9   damages from negligent infliction of emotional distress upon the Plaintiffs and

10   others similarly situated.

## FIFTH CAUSE OF ACTION

### (NEGLIGENCE PER SE)

**Against Defendants Black, ADBIH, ADBI, and applicable DOES**

14   138.   Paragraphs 1 through 137 are incorporated by reference as though fully

15   set forth herein.

16   139.   The specified Defendants are subject to *respondeat superior* liability

17   for the wrongful acts and omissions of any agent or employee of any of them,

18   undertaken in the course of any conduct for the commercial benefit of Defendants,

19   collectively or individually. Among the specified Defendants, individuals may also

20   be jointly liable for their own acts subject to proof.

21   140.   The specified Defendants are/were responsible for and/or perform(ed)

22   the manufacture, marketing, distribution, and/or sale of FasciaBlaster.

23   141.   The specified Defendants are and/or were negligent in supervising

24   and/or conducting the manufacture, testing, marketing, distribution, and/or sale of

25   FasciaBlaster.

26   142.   Personal health information ("PHI") pertaining to Plaintiffs Lanum,

27   Dorenkamp, and others similarly situated (e.g. more than 30 other participants in

28

- 58 -

Doc# 1 Page# 59 - Doc ID = 1714516271 - Doc Type = OTHER

any putatively scientific testing undertaken and/or commissioned by the specified Defendants, on information and belief) is subject to strict protections by statutes and regulations, including *inter alia* Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Health Information Technology for Economic and Clinical Health Act ("HITECH Act"), DHHS's 'HIPAA Omnibus Rule,' and California's Confidentiality of Medical Information Act [Cal. Civ. Code §§ 56-56.37] ("CMIA").

143.   Acts and omissions by the specified Defendants caused, contributed to, facilitated, or incited third parties to engage in unlawful disclosure(s) and/or other misuse(s) of PHI pertaining to Plaintiffs Lanum, Dorenkamp, and others similarly situated, including *inter alia* commercial use of Lanum's, Dorenkamp's, and others' PHI for such improper purposes and effects as:

> (a)   advertising FasciaBlaster in various media;
>
> (b)   to shame, embarrass, and discredit Lanum, Dorenkamp, and others via social media in retaliation for honest negative feedback;
>
> (c)   failing and/or refusing to provide Lanum, Dorenkamp, and others with their own PHI upon request; and
>
> (d)   in other ways subject to proof.

144.   As described herein *supra*, and in other ways subject to proof, the specified Defendants' unlawful disclosure(s) and other misuse(s) of PHI was/is a substantial factor in causing harm to Plaintiffs, and others similarly situated, including *inter alia* injury to personal and professional reputation, and emotional distresses such as suffering, anguish, fright, horror, nervousness, anxiety, grief, worry, shock, humiliation, and shame.

145.   In light of the foregoing, the specified Defendants are strictly liable for special and general damages, including for emotional distress, upon the Plaintiffs and others similarly situated.

- 59 -

## SIXTH CAUSE OF ACTION

## (GROSS NEGLIGENCE)

**Against Defendants Black, ADBIH, ADBI, and applicable DOES**

146.    Paragraphs 1 through 145 are incorporated by reference as though fully set forth herein.

147.    The specified Defendants are subject to *respondeat superior* liability for the wrongful acts and omissions of any agent or employee of any of them, undertaken in the course of any conduct for the commercial benefit of Defendants, collectively or individually. Among the specified Defendants, individuals may also be jointly liable for their own acts subject to proof.

148.    The specified Defendants are/were responsible for and/or perform(ed) the manufacture, testing, marketing, distribution, and/or sale of FasciaBlaster.

149.    As described herein *supra*, and in other ways subject to proof, certain acts and omissions by the specified Defendants are/were so severely careless that they constitute(d) an extreme departure from the ordinary standard of conduct. Such acts and omissions include, *inter alia*:

(a)    unscientific and improper execution of Defendants' putative FasciaBlaster clinical trial falling far short of ordinary scientific practice both procedurally and administratively, including in the violation of HIPAA and other rights of participants both during and after the study;

(b)    unabating aggressive marketing of FasciaBlaster, including with unfounded medical claims, notwithstanding Defendants' receipt of, on information and belief, over 70 direct customer complaints regarding serious side effects as of July 18, 2017, at least;

(c)    failure to meaningfully investigate over 70 direct customer complaints regarding serious side effects; and

- 60 -

(d)    unabating aggressive marketing of FasciaBlaster, including with unfounded medical claims, in conjunction with the wide-scale summary deletion of any negative customer feedback posted in putatively open and honest social media forums controlled by Defendants.

150.  Putting aside statutes and regulations against conducting a merely methodologically-flawed scientific study, it is a *far* more extreme deviation from ordinary standards of care when that study also e.g.: (i) lacks IRB oversight, or (ii) any guidance from a genuine medical doctor for that matter, while promotional materials make both subtle and overt misrepresentations regarding (iii) procedures (e.g. "double-blind") and (iv) academic and medical credentials (e.g. "Dr. Bart"), including with respect to putative researchers who (v) take participants' medical and privacy rights far more lightly than required by FDA regulations, and (vi) fail to produce study data upon request by participants and (vii) an FDA Investigator.

151.  On information and belief, the foregoing precise scenario took place, *inter alia*, causing harms suffered by Plaintiffs Lanum and Dorenkamp, more than 30 other participants in Defendants' putative clinical trial, and thereafter every subsequent FasciaBlaster user who reasonably relied on, at best, willfully ignorant assertions about the putative clinical trial's legitimacy according to the Defendants.

152.  Multiple acts and omissions by the specified Defendants require(d) such extreme departures from ordinary standards of care that they constitute(d) gross negligence, constituting the direct and proximate cause of harms suffered by the Plaintiffs, and others similarly situated, to whom the Defendants are therefore liable for damages associated with FasciaBlaster e.g. after pertinent customer feedback was ignored or censored, after the putative clinical trial, etc.

153.  Each Plaintiff and many others similarly situated suffered serious emotional distress, including one or more of suffering, anguish, fright, horror, nervousness, anxiety, grief, worry, shock, humiliation, and shame.

- 61 -

1    154.   The specified Defendants' gross negligence was a substantial factor in

2    causing the serious emotional distress of Plaintiffs and many others similarly

3    situated.

4    155.   In light of the foregoing, the specified Defendants are liable for actual

5    and general damages, including from infliction of emotional distress, upon the

6    Plaintiffs and others similarly situated.

## SEVENTH CAUSE OF ACTION
## (RECKLESS MISCONDUCT)
### Against Defendants Black, ADBIH, ADBI, and applicable DOES

10    156.   Paragraphs 1 through 155 are incorporated by reference as though fully

11    set forth herein.

12    157.   The specified Defendants are subject to *respondeat superior* liability

13    for the wrongful acts and omissions of any agent or employee of any of them,

14    undertaken in the course of any conduct for the commercial benefit of Defendants,

15    collectively or individually. Among the specified Defendants, individuals may also

16    be jointly liable for their own acts subject to proof.

17    158.   The specified Defendants are/were responsible for and/or perform(ed)

18    the manufacture, testing, marketing, distribution, and/or sale of FasciaBlaster.

19    159.   As described herein *supra*, and in other ways subject to proof, certain

20    acts and omissions by the specified Defendants did and do evince deliberate

21    disregard for the rights and safety of every FasciaBlaster user and potential user,

22    which disregard did and does subject Plaintiffs and others similarly situated to a

23    high probability of the array of injuries described herein, if not more subject to

24    proof. For example, when any Defendant, or officer, employee, or agent thereof,

25    summarily deletes from putatively open Internet discussion forums any negative

26    user feedback in the nature of e.g. 'blasting is messing with my hormone levels,'

27    then banishes the commenter from the forum and threatens to or does retaliate due to

28

1    that honest feedback, such deletion, banishment and threats/retaliation, in order to

2    chill honest feedback, demonstrate willful and conscious disregard for the health of

3    every contemporaneous or future FasciaBlaster user who e.g. might be reviewing

4    the putatively open forum in an effort to determine whether *her own* early symptoms

5    of hormone imbalance might be attributable to her recently undertaken 'blasting'

6    regimen. Such interference, with plainly germane third-party warnings, for purely

7    commercial reasons at best, brazenly disregards the safety of all FasciaBlaster users.

8    On information and belief, the specified Defendants perpetrated the foregoing

9    scenario on many occasions.

10    160.   Moreover, the specified Defendants, officer(s), director(s), and/or

11    manager(s) thereof, did and/or[17] do fail to make substantial changes e.g. to product

12    design, instructions for product use, or marketing language or strategy. Said failures,

13    along with Defendants' willfully ignoring potentially important feedback from

14    hundreds of consumers—e.g. by their censorship and retaliatory defamation

15    described above, by their failure to develop, maintain, or implement MDR and

16    CAPA procedures pursuant to FDA regulations (see Para. 89(a-e), *supra*), by their

17    conducting a putative clinical trial and then hiding and ignoring the results, on

18    information and belief—taken together constitute a pattern of deliberate disregard

19    for the health and safety of others in favor of keeping sales numbers as high as

20    possible.

21    161.   The foregoing is far more egregious than mere mistake or

22    incompetence: it is recklessness, and the direct and proximate cause of harms

23    suffered by Plaintiffs, and all others similarly situated, to whom the specified

24

25

26    [17] On information and belief, Defendants updated the "Terms & Conditions"
section of the AshleyBlackGuru.com webpage on May 22, 2017 (see FN.13, *supra*),
27    but any effect thereof on their larger marketing approach is subject to proof.

28

- 63 -

Defendants are therefore liable for general and special damages associated with FasciaBlaster, and for punitive damages pursuant to Cal. Civ. Code § 3294, exemplifying the important public policy interest in deterring other commercial actors from displaying the same level of disregard for societal health and wellbeing that Defendants did and do amply display.

## EIGHTH CAUSE OF ACTION
## (BREACH OF EXPRESS WARRANTY)
### Against Defendants Black, ADBIH, ADBI, and applicable DOES

162. Paragraphs 1 through 161 are incorporated by reference as though fully set forth herein.

163. The specified Defendants are subject to *respondeat superior* liability for the wrongful acts and omissions of any agent or employee of any of them, undertaken in the course of any commercial conduct for the benefit of Defendants, collectively or individually. Among the specified Defendants, individuals may also be jointly liable for their own acts subject to proof.

164. The specified Defendants are/were responsible for and/or perform(ed) the manufacture, testing, marketing, distribution, and/or sale of FasciaBlaster.

165. As described herein *supra*, and in other ways subject to proof, the specified Defendants were responsible for, personally made, and/or publicized statements of purported fact, to Plaintiffs and others similarly situated, pertaining to e.g. the use of FasciaBlaster, including *inter alia* that it eliminates the appearance of cellulite (e.g. "this will absolutely work for everyone"), improves skin tone and muscle definition, does not interfere with hormone levels, is a treatment for MS, Parkinson's disease, and other neurological conditions, can fix *inter alia* frozen shoulder, rotator cuff injury, tendonitis, shin splints, Iliotibial band syndrome, Plantar Fasciitis, and posture, and many other such assertions reflected herein.

166. As described herein *supra*, and in other ways subject to proof, multiple

- 64 -

1  statements of purported fact which Defendants made and/or publicized, or induced

2  others to make and/or publicize, were presented as more than mere opinions or

3  personal recommendations, but rather in the nature of performance guarantees,

4  including with the express and implied weight of authority conferred by *inter alia*

5  medical and academic credentials falsely asserted by Defendants, and factual

6  misrepresentations by Defendants as to putative clinical trial procedures and results.

7      167.   As described herein *supra*, and in other ways subject to proof,

8  FasciaBlaster did and does fail to perform as guaranteed by Defendants, as evinced

9  in numerous respects including, *inter alia* and most demonstrably, the fact that many

10  Plaintiffs and others similarly situated—including, on information and belief,

11  Defendant Black herself—currently exhibit e.g. a more pronounced appearance of

12  cellulite than they did before using FasciaBlaster.

13      168.   Some Plaintiffs and many others similarly situated have informed

14  Defendants that FasciaBlaster's design is defective for purposes of achieving the

15  myriad benefits promised by Defendants.

16      169.   Defendants did and do fail to repair, redesign, or reengineer

17  FasciaBlaster in order to make it perform as expressly represented by Defendants.

18  Further, Defendants did and do fail to notify the public, including Plaintiffs and

19  others similarly situated, that FasciaBlaster's design is defective for purposes of the

20  myriad benefits promised by Defendants.

21      170.   FasciaBlasters' failure to perform as represented was and is a

22  substantial factor in causing harm to Plaintiffs and others similarly situated.

23      171.   In light of the foregoing, the specified Defendants are liable to

24  Plaintiffs and others similarly situated for breach of Defendants' express warranties

25  pertaining to FasciaBlaster's abilities to provide health and aesthetic benefits.

26  \\\

27  \\\

28

- 65 -

## NINTH CAUSE OF ACTION

## (BREACH OF IMPLIED WARRANTY – FITNESS FOR PARTICULAR PURPOSE)

### Against Defendants Black, ADBIH, ADBI, and applicable DOES

172.   Paragraphs 1 through 171are incorporated by reference as though fully set forth herein.

173.   The specified Defendants are subject to *respondeat superior* liability for the wrongful acts and omissions of any agent or employee of any of them, undertaken in the course of any commercial conduct for the benefit of Defendants, collectively or individually. Among the specified Defendants, individuals may also be jointly liable for their own acts subject to proof.

174.   The specified Defendants are/were responsible for and/or perform(ed) the manufacture, testing, marketing, distribution, and/or sale of FasciaBlaster. The Plaintiffs and others similarly situated purchased FasciaBlasters from the Defendants, and the latter did and do know or have reason to know that every purchaser did or does intend to use the device for the purpose of achieving one or more results which Defendants did or do assert that 'blasting' achieves.

175.   The specified Defendants know or have reason to know that Plaintiffs and others similarly situated did, or will, rely on Defendants' skill, judgment, and/or putative medical or academic authority to design, fabricate, test, market, and sell a product suitable for the purposes eagerly promoted by Defendants. Plaintiffs and others similarly situated did and do justifiably rely on Defendants' skill, judgment, and/or putative medical or academic authority, and will continue to do so as long as the Defendants continue in their course of commercial conduct at issue, barring e.g. injunctive relief.

176.   As described herein *supra*, and in other ways subject to proof, FasciaBlaster was not, is not, and will not be suitable for some if not all of the

- 66 -

1  purposes for which Plaintiffs and other similarly situated did or will purchase it. As
2  described herein *supra*, and in other ways subject to proof, some Plaintiffs and many
3  others similarly situated have taken reasonable steps, within a reasonable time, to
4  notify the Defendants that FasciaBlaster is not suitable for some if not all of the
5  purposes for which Plaintiffs and others similarly situated did or will purchase it.

6      177.  As described herein *supra*, and in other ways subject to proof,
7  FasciaBlaster's unsuitability for some if not all of the purposes for which Plaintiffs
8  and other similarly situated did or will purchase it was, is, or will be a substantial
9  factor in causing harm to Plaintiffs and others similarly situated.

10      178.  In light of the foregoing, the specified Defendants are liable to
11  Plaintiffs and others similarly situated for breach of implied warranties of
12  FasciaBlaster's fitness for particular purpose, i.e. to provide the health and aesthetic
13  benefits advertised by Defendants, as relied upon by Plaintiffs.

14                             **TENTH CAUSE OF ACTION**
15              **(BREACH OF IMPLIED WARRANTY – MERCHANTIBILITY)**
16                **Against Defendants Black, ADBIH, ADBI, and applicable DOES**

17      179.  Paragraphs 1 through 178 are incorporated by reference as though fully
18  set forth herein.

19      180.  The specified Defendants are subject to *respondeat superior* liability
20  for the wrongful acts and omissions of any agent or employee of any of them,
21  undertaken in the course of any commercial conduct for the benefit of Defendants,
22  collectively or individually. Among the specified Defendants, individuals may also
23  be jointly liable for their own acts subject to proof.

24      181.  The specified Defendants are/were responsible for and/or perform(ed)
25  the manufacture, marketing, distribution, and/or sale of FasciaBlaster. The Plaintiffs
26  and others similarly situated purchased FasciaBlasters from the Defendants in
27  reliance on *inter alia* the specified Defendants' holding themselves and one another
28

- 67 -

1 out as having special scientific knowledge or skill regarding the realm of health and

2 aesthetic benefits which, Defendants convinced Plaintiffs, FasciaBlaster purportedly

3 confers.

4   182. As described herein *supra*, and in other ways subject to proof,

5 FasciaBlaster was not and is not fit for even the most ordinary among the many

6 wide-ranging purposes which Defendants did or do promote, particularly given the

7 techniques they instruct. For example, on information and belief, FasciaBlaster's

8 high BPA content renders it below the standard quality expected of a purported

9 medical implement safe for use in a hot bathtub, shower or sauna, yet Defendants

10 did and do instruct precisely such use.

11   183. As described herein *supra*, and in other ways subject to proof, some

12 Plaintiffs and many others similarly situated have taken reasonable steps, within a

13 reasonable time, to notify the Defendants that FasciaBlaster did or does not have the

14 expected quality.

15   184. As described herein *supra*, and in other ways subject to proof,

16 FasciaBlaster's failure to have the expected quality was, is, or will be a substantial

17 factor in causing harm to Plaintiffs and others similarly situated.

18   185. In light of the foregoing, the specified Defendants are liable to

19 Plaintiffs and others similarly situated for breach of implied warranties of

20 merchantability.

21      **ELEVENTH CAUSE OF ACTION**

22      **(DECEIT/INTENTIONAL FRAUD)**

23   **Against Defendants Black, ADBIH, ADBI, and applicable DOES**

24   186. Paragraphs 1 through 185 are incorporated by reference as though fully

25 set forth herein.

26   187. The specified Defendants are subject to *respondeat superior* liability

27 for the wrongful acts and omissions of any agent or employee of any of them,

28

- 68 -

1  undertaken in the course of any conduct for the commercial benefit of Defendants,

2  collectively or individually. Among the specified Defendants, individuals may also

3  be jointly liable for their own acts subject to proof.

4       188.   The specified Defendants are or were responsible for and/or

5  perform(ed) the manufacture, testing, marketing, distribution, and/or sale of

6  FasciaBlaster.

7       189.   As described herein *supra*, and in other ways subject to proof, the

8  specified Defendants did or do publicize, and/or solicit others to publicize, false

9  statements pertaining to, *inter alia*: FasciaBlaster's efficacy in achieving certain

10  aesthetic and health results; that FasciaBlaster is 100% safe to use; that

11  FasciaBlaster does not cause weight gain; academic and medical qualifications of

12  certain Defendants and agents/employees thereof; scientific legitimacy of

13  Defendants' putative clinical trial; etc.

14       190.   As described herein *supra*, and in other ways subject to proof, the

15  specified Defendants

16          (a) knew that their representations were false when they made them,

17          (b) suppressed fact(s) which they had/have obligation(s) to disclose,

18          including *inter alia* by

19          (c) publicizing other information likely to mislead for want of

20          communication of the facts suppressed,

21          (d) made promises regarding the performance of FasciaBlaster and

22          accessories without any reasonable knowledge that FasciaBlaster or

23          accessories would perform every promise, and/or

24          (e) made false representations recklessly and without regard for their

25          truth.

26  For the purposes of this and other causes of action, full knowledge of facts to which

27  Defendants were indifferent, if any, ought properly to be imputed to them. "False

28

1   representations made recklessly and without regard for their truth in order to induce

2   action by another are the equivalent of misrepresentations knowingly and

3   intentionally uttered." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951,

4   974 (1997), <u>quoting</u> *Yellow Creek Logging Corp. v. Dare*, 216 Cal.App.2d 50, 55

5   (1963).

6       191.   As described herein *supra*, and in other ways subject to proof, the

7   specified Defendants intended that Plaintiffs and others similarly situated would rely

8   on their false representations e.g. in deciding to purchase and use FasciaBlaster.

9       192.   As described herein *supra*, and in other ways subject to proof, the

10  Plaintiffs and others similarly situated reasonably relied on the specified

11  Defendants' false representations, e.g. in purchasing FasciaBlaster and in using it as

12  directed by the Defendants.

13      193.   As described herein *supra*, and in other ways subject to proof, the

14  Plaintiffs and others similarly situated were harmed by their use of FasciaBlaster,

15  including endocrine, cardiovascular, digestive, neurological, psychological,

16  aesthetic, and other physical harms.

17      194.   As described herein *supra*, and in other ways subject to proof, the

18  Plaintiffs and others similarly situated were also harmed by their use of

19  FasciaBlaster inasmuch as many if not all of them did or do suffer serious emotional

20  distress, e.g. one or more of suffering, anguish, fright, horror, nervousness, anxiety,

21  grief, worry, shock, humiliation, and shame.

22      195.   The reliance by Plaintiffs and others similarly situated on the false

23  representations by the specified Defendants was a substantial factor in causing the

24  specified and further harms suffered by Plaintiffs and others similarly situated. As

25  such, the specified Defendants' intentional and/or reckless misrepresentations of fact

26  constitute fraudulent deceit pursuant to *inter alia* Cal. Civ. Code §§ 1572, 1709, and

27  1710, and at common law, giving rise to the specified Defendants' liability to the

28

- 70 -

1  Plaintiffs and others similarly situated for special and general damages, including

2  *inter alia* for intentional infliction of emotional distress, as well as punitive

3  damages, which Plaintiffs hereby request pursuant to *inter alia* Cal. Civ. Code §

4  3294.

## TWELFTH CAUSE OF ACTION

## (DEFAMATION)

### Against Defendants Black, ADBIH, ADBI, and applicable DOES

8  196.   Paragraphs 1 through 195 are incorporated by reference as though fully

9  set forth herein.

10  197.   The specified Defendants are subject to *respondeat superior* liability

11  for the wrongful acts and omissions of any agent or employee of any of them,

12  undertaken in the course of any conduct for the commercial benefit of Defendants,

13  collectively or individually. Among the specified Defendants, individuals may also

14  be jointly liable for their own acts subject to proof.

15  198.   The specified Defendants are/were responsible for and/or perform(ed)

16  the manufacture, testing, marketing, distribution, and/or sale of FasciaBlaster.

17  199.   As described herein *supra*, and in other ways subject to proof, the

18  specified Defendants did and do publicize, and/or solicit, encourage, and permit

19  others to publicize, false and injurious statements about some of the Plaintiffs and

20  others similarly situated, including within public (social) media forums, e.g.

21  Facebook discussion groups over which the specified Defendants unilaterally

22  exercise editorial control. Within such media forums, the specified Defendants have

23  the power to, and do, delete, overwhelm, or otherwise counter any statement they do

24  not like—on numerous occasions, some or all of the specified Defendants have

25  deleted public comments by Plaintiffs and others e.g. in social media forums

26  controlled by Defendants—yet the Defendants did and do also contemporaneously

27  cause or permit false and disparaging comments pertaining to some Plaintiffs and

28

- 71 -

1   others similarly situated to remain on public display, to be viewed by hundreds of

2   thousands of people or more. Defendants further did and do falsely disparage

3   Plaintiffs and others similarly situated between one another or with third parties in

4   more private conversations, online messaging (e.g. Facebook Messenger), and other

5   media. This conduct is nevertheless defamatory as well.

6       200.   False and disparaging statements which the specified Defendants did

7   and do publicize and/or solicit, encourage, or permit others to publicize, include

8   *inter alia*:

9           (a)   "A GoFundMe account was set up by Julie Day Lefebvre under

10          the pretenses of raising money to 'help anyone who has been Slapped

11          by Ashley Black' and to take Ashley Black to court in a civil suit. …

12          This is fraud, and we encourage you not to associate with this crime"

13          (b)   "[W]hat credible journalist would write a story based on some bs

14          some woman who steals money from gullible women and then uses it

15          for her own advantage. Julie Day Lefebvre….are you sleeping with this

16          man [the journalist]??? … isn't it odd that she avoids the fact that she's

17          a con artist?"

18          (c)   "Julie has multiple GO FUND ME accounts to raise money for

19          Ashley Black's ex husband … The only problem, the money goes to

20          Julie."

21          (d)   "[Plaintiffs] Michelle [Lanum] and Tilly [Dorenkamp] were

22          100% happy at the end of the study … I don't know why people join

23          hate groups but Michelle and Tilly are blocked because they decided to

24          lie and slander[.]"

25          (e)   "Both parties [Lanum and Dorenkamp] had an NDA, so when

26          we saw them posting lies but we were unable to respond…"

27   On information and belief, numerous Class members possess evidence of further

28

- 72 -

1   defamatory statements by the specified Defendants; Plaintiffs expect that their
2   initiating the instant action will encourage more cooperation from other victims who
3   may be too nervous to be publicly identified until this litigation is formally
4   underway. Plaintiffs may seek leave of Court to amend this Complaint as and when
5   further defamatory conduct by the specified Defendants comes to light.

6       201.   None of the Plaintiffs or others subject to the specified Defendants'
7   conduct at issue in this cause of action is a public figure.

8       202.   Any e.g. Facebook user who was following the activity of Defendants
9   and their more vocal critics, including some of the Plaintiffs herein, upon reading
10  the disparaging comments by Defendants would reasonably understand whom they
11  referred to.

12      203.   Any e.g. Facebook user who was following the activity of Defendants
13  and their more vocal critics, including some of the Plaintiffs herein, upon reading
14  the disparaging comments by Defendants would reasonably understand the
15  statements to convey that the disparaged parties are e.g. a collection of mentally
16  deranged  liars and criminals.

17      204.   The specified Defendants knew of the falsity of the disparaging
18  statements, or failed to use reasonable care to determine the truth or falsity of the
19  statements. Notably, on information and belief, every time the specified Defendants
20  did and do first disparage any given individual, it is in retaliation for a true statement
21  or question from that individual. As such, the specified Defendants know or have
22  reason to know that, at the very least, their first retaliatory libel directed at any given
23  target is false.

24      205.   The above-specified and other false and disparaging statements by the
25  specified Defendants, pertaining to certain Plaintiffs and others similarly situated,
26  were substantial factors in causing harms to those Plaintiffs and others similarly
27  situated. For example, Plaintiff Lefebvre and others similarly situated have been
28

- 73 -

1  harmed in their personal and professional reputations by the false and disparaging

2  statements by the specified Defendants. Lefebvre received false negative feedback

3  on her personal business's Yelp.com customer review page, from people who had

4  not been her customers, whom the specified Defendants had incited to disparage

5  Lefebvre.

6      206    The Plaintiffs and others similarly situated who have been defamed by

7  the specified Defendants have suffered emotional distress, including *inter alia* fear,

8  anxiety, anger, mortification, depression, shame, and hurt feelings, as a direct and

9  proximate result of said defamation. The Plaintiffs who have been disparaged were

10 driven in part thereby to retain the Law Offices of Perrin F. Disner to prosecute this

11 claim, and to suffer all the burdens that accrue from the prosecution of this case,

12 including *inter alia* requiring them to put private personal information in the public

13 record because this is the only way to adequately defend themselves and their

14 reputations against the specified Defendants' harmful lies about them, shouted from

15 Defendants' bully pulpit and, often, echoed by an obedient chorus of acolytes, many

16 of whom are paid or fake.

17     207.   In light of the foregoing, the specified Defendants' defamations are

18 direct and proximate causes of harms suffered by certain Plaintiffs and others

19 similarly situated, to whom specified Defendants are therefore liable for any general

20 and special damages attributable thereto. The injunctive relief requested at Para.

21 106(a-l), *supra* is also warranted, and hereby requested.

22     208.   Moreover, the Plaintiffs will demonstrate by clear and convincing

23 evidence that the specified Defendants undertook the defamatory conduct

24 maliciously and with knowledge of their statements' falsity or reasonable grounds to

25 doubt their veracity, justifying an award of punitive damages to Plaintiffs and others

26 similarly situated.

27 \\\

28

- 74 -

## THIRTEENTH CAUSE OF ACTION

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

### Against Defendants Black, ADBIH, ADBI, and applicable DOES

209. Paragraphs 1 through 208 are incorporated by reference as though fully set forth herein.

210. The specified Defendants are subject to *respondeat superior* liability for the wrongful acts and omissions of any agent or employee of any of them, undertaken in the course of any conduct for the commercial benefit of Defendants, collectively or individually. Among the specified Defendants, individuals may also be jointly liable for their own acts subject to proof.

211. The specified Defendants are/were responsible for and/or perform(ed) the manufacture, testing, marketing, distribution, and/or sale of FasciaBlaster.

212. As described herein *supra*, and in other ways subject to proof, in spite of legal and moral obligations to the contrary, the specified Defendants did and do engage in extreme and outrageous conduct, including, *inter alia*:

    (a)    marketing FasciaBlaster with false promises of miraculous benefits, knowing or recklessly disregarding the fact that such promises are not based on any sound scientific evidence;

    (b)    conducting a putative clinical trial without IRB oversight or the supervision of a medical doctor(s), knowing or recklessly disregarding the danger such failures posed to the trusting participants;

    (c)    asserting that their putative clinical trial was scientifically undertaken and definitively vindicated their promises, knowing or recklessly disregarding the falsity of those assertions;

    (d)    failing to undertake a single meaningful investigation—at least as of July 18, 2017 if not more recently—after receiving numerous reports of a wide variety of serious injuries from FasciaBlaster use,

- 75 -

knowing or recklessly disregarding serious dangers to public health that investigation would reveal;

(e)    failing to remove the product from market or to meaningfully change instructions for its use—at least as of May 22, 2017 if not more recently—knowing or recklessly disregarding the many undisclosed dangerous side effects which many users were reporting since 2016 if not earlier;

(f)    deleting feedback from, blocking social media participation by, and denigrating honest people who had had bad experiences with FasciaBlaster, knowing or recklessly disregarding the fact that such feedback might prevent serious harm to thousands of other people;

(g)    publicly using the likenesses and protected private medical information of private individuals—including to ridicule and attempt to discredit the individual—for commercial purposes, knowing or recklessly disregarding the individuals' failure to authorize such use;

(h)    publicizing, and soliciting, encouraging, and permitting others to publicize, false and injurious statements about private individuals who have suffered physically and emotionally scarring injuries, knowing or recklessly disregarding the additional injurious effect of such conduct.

213.   The specified Defendants undertook the foregoing and other extreme and outrageous acts and omissions intending to cause emotional distress to some of the Plaintiffs, and others similarly situated, or with reckless disregard for the likelihood that all Plaintiffs, and others similarly situated, would suffer emotional distress as a result of the Defendants' acts or omissions, many of which were malicious (e.g. retaliatory defamation) or oppressive (e.g. preying on a woman's insecurity about her legs to sell her an expensive device and accessories which, ample customer feedback indicated, are as likely as not to significantly worsen her

- 76 -

1  appearance and mental state, thus making her more susceptible to further marketing

2  claims and accessory sales in her desperation for the promised "better" after the

3  "worse"[18]).

4       214.    The Plaintiffs, and others similarly situated, did and do suffer severe

5  emotional distress as a result of their experiences with FasciaBlaster.

6       215.    The extreme and outrageous acts and omissions by the specified

7  Defendants—some of which were malicious or oppressive rather than merely willful

8  or reckless—were substantial factors in causing severe emotional distress to each

9  Plaintiff and others similarly situated, to whom the specified Defendants are

10  therefore liable for general, special, and exemplary damages.

### FOURTEENTH CAUSE OF ACTION

### (UNFAIR BUSINESS PRACTICES – Cal. Bus. & Prof. Code § 17200 *et seq.*)

### Against Defendants Black, ADBIH, ADBI, and applicable DOES

14       216.    Paragraphs 1 through 215 are incorporated by reference as though fully

15  set forth herein.

16       217.    The specified Defendants are subject to *respondeat superior* liability

17  for the wrongful acts and omissions of any agent or employee of any of them,

18  undertaken in the course of any conduct for the commercial benefit of Defendants,

19  collectively or individually. Among the specified Defendants, individuals may also

20  be jointly liable for their own acts subject to proof.

21       218.    The specified Defendants are/were responsible for and/or perform(ed)

22  the manufacture, testing, marketing, distribution, and/or sale of FasciaBlaster.

23       219.    California's Unfair Competition Law, Business and Professions Code

---

[18] "Worse before better!" is a common marketing refrain of Defendant Black's. <u>See</u> Paras. 37, 38, 64, 84(h), *supra*. The plain effect of such a slogan is to incite injured users to continue injuring themselves, and to buy more products and accessories if necessary, for promises of e.g. smooth thighs just over the horizon.

Doc# 1 Page# 78 - Doc ID = 1714516271 - Doc Type = OTHER

1  § 17200, defines "unfair competition" to include "any unlawful, unfair or fraudulent

2  business act or practice[.]" Cal. Bus. & Prof. Code § 17203 allows a person who has

3  lost money or property as a result of unfair competition to bring an action for

4  restitution of money or property acquired from him or her by means of unfair

5  competition.

6      220.   As described herein *supra*, and in other ways subject to proof, the

7  conduct that Plaintiffs herein allege Defendants, and each of them, have undertaken,

8  are still undertaking, and/or will continue to undertake absent e.g. injunctive relief,

9  was and is unfair, unlawful, and/or fraudulent, many of which acts and omissions

10  did and do constitute unfair, deceptive, untrue, or misleading advertising.

11      221.   As a result of the specified Defendants' above-alleged unlawful

12  business practices and deceptive advertising, Plaintiffs have suffered in jury in fact

13  and lost moneys and property.

14      222.   Pursuant to Cal. Bus. & Prof. Code §§ 17200 and 17203, Plaintiffs seek

15  an order of restitution for all moneys and property that Defendants have acquired

16  from Plaintiffs by means of unfair competition as set forth above in amounts subject

17  to proof. As part of said relief,

18      223.   Plaintiffs further request that the Court enjoin Defendants to

19  immediately undertake all of the actions sought at Para. 106(a-l), *supra*.

20      224.   Pursuant to Cal. Bus. & Prof. Code § 17206 Plaintiffs seek civil

21  penalties for unfair competition perpetrated against senior citizens and disabled

22  persons.

23      225.   Pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq.* Plaintiffs seek an

24  award of attorney's fees and costs of suit incurred herein.

25  \\\

26  \\\

27  \\\

28

- 78 -

# FIFTEENTH CAUSE OF ACTION

## (FALSE ADVERTISING – Cal. Bus. & Prof. Code § 17500 *et seq.*)

### Against Defendants Black, ADBIH, ADBI, and applicable DOES

226. Paragraphs 1 through 225 are incorporated by reference as though fully set forth herein.

227. The specified Defendants are subject to *respondeat superior* liability for the wrongful acts and omissions of any agent or employee of any of them, undertaken in the course of any conduct for the commercial benefit of Defendants, collectively or individually. Among the specified Defendants, individuals may also be jointly liable for their own acts subject to proof.

228. The specified Defendants are/were responsible for and/or perform(ed) the manufacture, testing, marketing, distribution, and/or sale of FasciaBlaster.

229. Cal. Bus. & Prof. Code § 17500 states:

It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated

- 79 -

therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

230. As described herein *supra*, and in other ways subject to proof, Defendants did and do disseminate, or cause to be disseminated, a wide variety of untrue or misleading statements concerning FasciaBlaster and accessories.

231. As described herein *supra*, and in other ways subject to proof, Defendants knew, or by the exercise of reasonable care would have known, that their many of their promotional statements concerning FasciaBlaster were untrue or misleading.

232. Cal. Bus. & Prof. Code § 17508(a) states:
It shall be unlawful for any person doing business in California and advertising to consumers in California to make any false or misleading advertising claim, including claims that (1) purport to be based on factual, objective, or clinical evidence, (2) compare the product's effectiveness or safety to that of other brands or products, or (3) purport to be based on any fact.

233. As described herein *supra*, and in other ways subject to proof, Defendants did and do advertise to California consumers with false or misleading claims purporting to be based on fact and, especially, clinical evidence. Defendants also falsely or misleadingly compare FasciaBlaster's effectiveness to that of e.g. Cool Sculpting and liposuction, claiming that FasciaBlaster is the superior approach to getting rid of cellulite, an utter falsehood.

234. As described herein *supra*, and in other ways subject to proof, Plaintiffs have been, are, and absent adequate relief will continue to suffer an array of harms from FasciaBlaster use. Defendants' untrue and misleading advertising was and is a direct and proximate cause of some of the harms suffered by Plaintiffs, to whom the specified Defendants are therefore liable for civil penalties in the amount of $2,500 for every instance of an untrue or misleading statement made by the specified

- 80 -

1  Defendants in the course of promoting FasciaBlaster at any point prior to the

2  injuries suffered by Plaintiffs as a result thereof.

3      235.   In addition to civil penalties, the foregoing acts and omissions by

4  Defendants are misdemeanors. Pursuant to Cal. Bus. & Prof. Code § 17500, each

5  untrue or misleading statement Defendants did or do make in promoting

6  FasciaBlaster is punishable by imprisonment in Los Angeles County Jail for up to

7  six months.

8                                    **PRAYER**

9  WHEREFORE, Plaintiffs pray for relief as follows:

10  1.      For general damages, according to proof;

11  2.      For special damages, according to proof;

12  3.      For punitive damages in amounts which the Court deems protective of public

13  policy's interest in deterring the acts and omissions giving rise to this case;

14  4.      For statutory damages;

15  5.      For restitution, subject to proof;

16  6.      For speculative damages accounting for future medical and aesthetic

17  remedies, subject to proof;

18  7.      For damages for lost income, subject to proof;

19  8.      For pre-judgment interest on all damages;

20  9.      That appropriate injunctive relief be entered, including *inter alia* requiring

21  Defendants to immediately undertake all of the actions specified herein at Para.

22  106(a-l), *supra*.

23  10.     For reasonable attorney fees and costs of suit, to be determined according to

24  pertinent case law authority; and

25  11.     For incentive awards to the named Plaintiffs for their effort and courage.

26  \\\

27  \\\

28

- 81 -

1    12.    Such other and further relief as the Court may deem just and proper.

2

3    DATE:  October 19, 2017            **LAW OFFICES OF PERRIN F. DISNER**

4

5

6                                       By: _____
                                             Perrin F. Disner
7                                       Attorneys for Plaintiffs
                                        Emily Elson, Stacy Haavisto, Loretta Oakes,
8                                       Michelle Lanum, Julia Lefebvre, Sue Grlicky,
                                        Tilly Dorenkamp, Dina Salas, Arlene
9                                       Rodriguez, and Jerry Gaines, and all others
                                        similarly situated
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 82 -

## TRIAL BY JURY

Please take notice that a trial by jury is hereby requested.

DATE:  October 19, 2017

LAW OFFICES OF PERRIN F. DISNER

By: _____

Perrin F. Disner
Attorneys for Plaintiffs
Emily Elson, Stacy Haavisto, Loretta Oakes,
Michelle Lanum, Julia Lefebvre, Sue Grlicky,
Tilly Dorenkamp, Dina Salas, Arlene
Rodriguez, and Jerry Gaines, and all others
similarly situated

- 83 -