CRAIG L. WINTERMAN [SBN: 75220]
E-mail: *cwinterman@hrllp-law.com*
**HERZFELD & RUBIN, LLP**
10866 Wilshire Blvd., Suite 800
Los Angeles, CA 90024
Telephone: (310) 553-0451
Facsimile (310) 553-0648

Attorney for Defendant,
ADB INTERESTS LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY ELSON, STACY HAAVISTO, LORETTA OAKES, MICHELLE LANUM, JULIA LEFEBVRE, SUE GRLICKY, TILLY DORENKAMP, DINA SALAS, ARLENE RODRIGUEZ, JERRY GAINES, and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ASHLEY BLACK, an individual, ASHLEY DIANA BLACK INTERNATIONAL HOLDINGS, LLC, a Delaware Corporation, ADB INTERESTS LLC, a Texas Corporation, and DOES 1-100, <br><br> Defendants. | CASE NO: 2:18-cv-00116-ODW-RAOx <br><br> **ADB INTERESTS LLC's NOTICE OF MOTION AND MOTION TO STRIKE COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> *[Motion to Dismiss and [Proposed] Order filed concurrently herewith]* <br><br> Judge:     Hon. Otis D. Wright <br> Date:      February 26, 2018 <br> Time:      1:30 PM <br> Location:  5D |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

PLEASE TAKE NOTICE that on February 26, 2018 at 1:30 P.M., or as soon thereafter as this matter may be heard, in Courtroom 5D of the Central District Court of California, before the Honorable Otis D. Wright, Defendant ADB Interests LLC will, and hereby does, move the Court for an order striking Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(f).

This motion will be made pursuant to Federal Rule of Civil Procedure 12(f) on the grounds that (1) Plaintiffs' nationwide class allegations are improper for claims under the UCL and CLRA; (2) Individual questions of proof predominate over Plaintiffs' class claims; (3) Plaintiffs fail to allege facts establishing reliance on any of alleged false advertising prior to their purchase and (4) Plaintiffs' Complaint fails to allege sufficient facts to establish a claim for strict products liability-failure to warn.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 4, 2018.

Dated:  January 12, 2018          Respectfully submitted,

                                  HERZFELD & RUBIN LLP


                           By:   /s/ *Craig L. Winterman*
                                  Craig L. Winterman
                                  Attorneys for Defendant
                                  ADB INTERESTS LLC

---

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

## Table of Contents

I.   INTRODUCTION.................................................................5

   A.   Brief Background ........................................................5

   B.   Plaintiffs Class-Action Allegations Must Be Stricken As A Matter Of Law. 6

II.   ARGUMENT AND AUTHORITIES ..................................................8

   A.   Legal Standard For A Rule 12(F) Motion To Strike....................................8

   B.   Plaintiffs' Class Action Allegations Are Improper and Should Be Stricken Pursuant to Rule 12(f). ..................................................9

     1.   Plaintiffs' Nationwide Class Allegations Are Improper for Claims Under the UCL and CLRA. ..................................................9

     2.   Individual Questions of Proof Predominate over Plaintiffs' Class Claims. 10

     3.   Lack of Commonality and Typicality between Plaintiffs .......................12

   C.   The Complaint Fails To Allege Facts Sufficient To Establish Commonality And Typicality As To The Injuries Sustained By The Plaintiffs. ........................13

   D.   The Complaint Fails To Allege Facts Sufficient To Establish Commonality And Typicality As To Reliance On Representations Allegedly Made By Defendants. ..................................................18

   E.   The Complaint Fails To Allege Facts Sufficient To Establish Commonality And Typicality As To The Products They Purchased........................................20

   F.   The Complaint Fails To Allege Commonality And Typicality As To Plaintiffs' Defamation Cause Of Action. ...........................................22

**Table of Contents**

G.     Plaintiffs Fail To Allege Facts Establishing Reliance On Any Of The Allegedly False Advertising Statements Prior To Purchase. ...............................22

III.    Plaintiffs fail to allege facts establishing that they relied   on allegedly false advertising. ..................................................................................................24

H.     Plaintiffs' Complaint Fails to Allege Sufficient Facts to Establish a Claim for Strict Products Liability-Failure to Warn (Cause of Action No. 3). ..............24

IV.    CONCLUSION ...............................................................................................26

**Table of Contents**

# TABLE OF AUTHORITIES

## Federal Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..............................11

*Bishop v. Saab Auto. A.B.*, No. CV 95-0721 JGD (JRX), 1996 U.S. Dist. LEXIS 22890, at *10 (C.D. Cal. Feb.16, 1996) ...............................................11

*Bureerong v. Uvawas,* 922 F.Supp. 1450, 1478 (C.D. Cal. 1996) ..........................8

*Clark v. Group Hospitalization & Med. Services, Inc.,* 2010 WL 5093629 (S.D. Cal. 2010) ....................................................................8

*De Bremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970)..................................11

*Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977)..................11

*Endres v. Wells Fargo Bank,* No. C 06-7019 PJH, 2008 U.S. Dist. LEXIS 12159, at **1-4, *31 (N.D. Cal. Feb. 6, 2008) ...........................................11

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 S. Ct. 2364 (1982) ..8

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011)........................23

*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1027- 28 (N.D. Cal. 2007) ....................................................................10

*Jones v. ConAgra Foods, Inc.,* No. C 12-01633 CRB, 2014 U.S. Dist. LEXIS 81292, at *67 (N.D. Cal. June 13, 2014)..........................................22

*Kimoto v. McDonald's Corps.,* No. CV 06-3032 PSG, 2008 U.S. Dist. LEXIS 86203, *8 (C.D. Cal. Aug. 19, 2008) ....................................................11

*Kirts v. Green Bullion Fin. Servs.,* LLC, No. 10-20312-CIVSEITZ/O'SULLIVAN, 2010 U.S. Dist. LEXIS 92381, *20-21 (S.D. Fla. Aug. 2, 2010)........................12

*Laster v. T-Mobile USA, Inc.*  407 F.Supp.2d 1181 (S.D. Cal. 2005) ....................24

*Mirkin v. Wasserman*, 858 P.2d 568, 573 (Cal. 1993)..........................................23

*Morgan v. Harmonix Music Sys., Inc.*, WL 2031765, *2 (N.D. Cal. 2009)............10

*Oom v. Michaels Cos.* (W.D.Mich. July 19, 2017, No. 1:16-cv-257) 2017 U.S.Dist.LEXIS 112113 ....................................................................8

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821-22, 105 S. Ct. 2965 (1985)....9, 10

*RDF Media Ltd. v. Fox Broadcasting Co.,* 372 F. Supp. 2d 556 (C.D. Cal. 2005) ...8

*Sanders v. Apple Inc.,* 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).........................8

*Thompson v. Merck & Co.,* 2004 WL 62710, *5 (E.D. Pa. 2004)...........................8

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011) .....................................12

## Statutes

California Business and Professions Code § 17500 ......................................... 7, 18

California Business and Professions Code § 17200 ..................................................7

California Civil Code § 1781(b) ......................................................................... 7, 11

California Code of Civil Procedure § 382 ...............................................................7

Fed. R. Civ. P. 12(f) .................................................................................................8

Fed. R. Civ. P. 23 ....................................................................................................7

Fed. R. Civ. P. Rule 23(a)(2) ................................................................................12

## State Cases

*Basurco v. 21st Century Ins. Co.,* 108 Cal. App. 4th 110, 118 (2003).....................7

*Caro v. Procter & Gamble Co.,* 18 Cal. App. 4th 644, 668 (1993) .......................23

*City of San Jose v. Superior Court* 12 Cal.3d 447 (1974) .................................. 6, 22

*Durell v. Sharp Healthcare,* 183 Cal. App. 4th 1350  (2010) ...............................24

*In re Tobacco II Cases,* 46 Cal. 4th 298 (2009) ....................................................23

*Jolly v. Eli Lilly & Co.,* 44 Cal. 3d 1103, 1123 (1988)...........................................12

*Norwest Mortgage, Inc. v. Superior Court,* 72 Cal. App. 4th 214 (1999)................9

*Rose v. Medtronics, Inc.,* 107 Cal. App. 3d 150, 155 (Ct. App. 1980)....................7

*See  L.A. Fire & Police Protective League v. Rodgers,* 7 Cal. App. 3d 419, 425 (1970).....................................................................................................................22

*Vasquez v. Superior Court,* 4 Cal. 3d 800 (1971)..................................................23

# I.    INTRODUCTION

## A.    Brief Background

This putative class action has been brought by nine women and one man, some of whom had pre-existing medical conditions, who claim to have incurred more than 141 different injuries, diseases and ailments ranging from skin discoloration to the failure to cure multiple sclerosis as a result of using massage products, shown below, that are sold by Defendant Ashley Black Interests LLC ("ADBI")[1].

**The FasciaBlaster**      **The MasterBlaster**      **The FaceBlaster**

  

**The Mini 1**      **The Mini 2**      **The Nugget.**

  

These handheld massage products are applied at the user's discretion to different areas of the body. The amount of pressure applied by the massage product

_____

[1]    ADBI was served with the Summons & Complaint on December 7, 2017.   Defendants Ashley Black and Ashley Diana Black International Holdings, LLC have not been served with process.

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

is also entirely at the discretion and control of the user.  The use of these products is similar to what one experiences at health spas that provide body massages or the use of foam gym rollers that are designed for physical therapy.

### B.   Plaintiffs Class-Action Allegations Must Be Stricken As A Matter Of Law.

The heart of Plaintiffs' Complaint is a wildly divergent set of personal injury claims, cast as a putative "class action."  Plaintiffs allege that purchasing and using ADBI's massage wands on the external surface of the skin has caused or exacerbated 141 different medical conditions, diseases or ailments. Plaintiffs contend that "blasting" (e.g. using the FasciaBlaster) allegedly resulted in the occurrence of broadly divergent conditions ranging from constipation to "violent diarrhea"; from weight gain to weight loss; neck pain to hip pain; tinnitus (ringing the ears) to sleep deprivation; from the reactivation of the herpes virus, to the reactivation of the Epstein-Barr Virus (a/k/a Mononucleosis or "Mono"); From "compromised fertility," to increased susceptibility to Parkinson's Disease.  One named putative class-representative asserts that the FasciaBlaster caused or exacerbated up to 31 distinct diseases, injuries or health conditions (e.g. Stacy Haavisto- Complaint ¶17-21)[2].  The Complaint reflects no unified causal nexus between ADBI's advertising, the use of ADBI's Products nor the 141 injuries, diseases and ailments allegedly sustained by the Plaintiffs.    These incurable flaws in the Complaint warrant that the putative class action allegations be stricken and that the complaint be dismissed.

"[A] class action cannot be maintained where each member's right to recover depends on facts peculiar to his case...." [3]   Common issues of fact do not predominate amongst the Plaintiffs and any putative class, because there is no unified facts,  injury, pathology, or causation pled.  Class actions will not be permitted "where there are diverse factual issues to be resolved, even though there

---

[2] All references are to Plaintiffs' complaint unless otherwise indicated.
[3] *City of San Jose v. Superior Court,* 12 Cal.3d 447, 459 (1974).

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

may be many common questions of law."[4]   This is particularly true when the claim involves personal injuries.  The reasons behind the reluctance to process alleged mass torts as class actions are twofold: first, the great importance of tort claims for personal injuries to the claimants themselves and the consequent desire of claimants to be represented by counsel of their own choosing rather than by a stranger and, second, the wide disparity in damages that ordinarily arise from such claims.[5]

Here the class allegations do not set forth an ascertainable class and well-defined community of interest as required under California Code of Civil Procedure § 382, California Civil Code § 1781(b), California Business and Professions Code § 17200 et. seq. and California Business and Professions Code § 17500 et. seq., nor as require by Federal Rules of Civil Procedure 23.

In addition to problems with lack of commonality and typicality, Plaintiffs' class action allegations must be stricken because claims against a non-California defendant for violations of the Business & Professions Code 17200 the Unfair Competition Law ("UCL") and Civil Code §1750 the Consumer Legal Remedies Act ("CLRA")  may not be brought on behalf of a nationwide class. Courts have identified two fundamental reasons for this: First, that neither of these state laws indicate any intention on behalf of the California Legislature to try to impose California law on non-California residents for conduct by a non-California defendant occurring outside of California; and (2) that it would be a violation of due process to impose California law on non-California residents for non-California conduct.  Accordingly, for this reason as well as the lack of commonality, typically and predominance, all of which are apparent on the face of the Complaint, the Court should strike Plaintiffs' class action allegations as improper pursuant to Rule 12(f).

---

[4] *Basurco v. 21st Century Ins. Co.,* 108 Cal. App. 4th 110, 118 (2003), as modified (Apr. 23, 2003). *Citing Brown v. Regents of University of California* 151 Cal.App.3d 982, 988–989, (Cal. App. 1984).
[5] *Rose v. Medtronics, Inc.,* 107 Cal. App. 3d 150, 155 (Ct. App. 1980).

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

## II.    ARGUMENT AND AUTHORITIES

### A.    Legal Standard For A Rule 12(F) Motion To Strike.

Pursuant to Rule 12(f), the Court is authorized to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In granting a motion to strike, "the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *Sanders v. Apple Inc.,* 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citing *RDF Media Ltd. v. Fox Broadcasting Co.,* 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005)). A Rule 12(f) motion to strike allows the parties and the Court "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1478 (C.D. Cal. 1996).

With respect to improper class action allegations at the pleading stage, as the Supreme Court has noted, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364 (1982). Thus, when the complaint itself demonstrates that a class action cannot be maintained on the facts alleged, a motion to strike the class allegations is proper. *See Thompson v. Merck & Co.,* 2004 WL 62710, *5 (E.D. Pa. 2004); *Sanders*, 672 F. Supp. 2d at 990-91 (rejecting argument that Rule 12(f) motion to strike class allegations was premature); *Clark v. Group Hospitalization & Med. Services, Inc.,* 2010 WL 5093629 (S.D. Cal. 2010) (granting motion to strike improper class allegations); *Oom v. Michaels Cos.* (W.D.Mich. July 19, 2017, No. 1:16-cv-257) 2017 U.S.Dist.LEXIS 112113, at *6-7 (courts may strike class action allegation before a motion for class-certification if the complaint demonstrates that the discovery or factual development would not alter the central defects in the class claim) (internal citations omitted for clarity).

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

**B. Plaintiffs' Class Action Allegations Are Improper and Should Be Stricken Pursuant to Rule 12(f).**

Plaintiffs propose a class defined to include "all persons who have purchased and/or used FasciaBlaster, or who will have done so at some point prior to resolution of the Plaintiffs' claims herein." (Complaint ¶73). This definition is impermissibly broad for purposes of the claims asserted by Plaintiffs, and as such Plaintiffs' class action allegations are improper and should be stricken.

**1. Plaintiffs' Nationwide Class Allegations Are Improper for Claims Under the UCL and CLRA.**

Plaintiffs whom reside in 5 different states[6] and who allegedly received and/or purchased and used the massage products outside of the State of California seek to bring their California statutory claims for violations of the UCL and CLRA as a nationwide class action despite the fact that ADBI is a non-California defendant. This is improper. As the Supreme Court has held, in order for a nationwide class to invoke the law of a particular state, the chosen state's law must both (1) not conflict with the law of another jurisdiction that has an interest in the case, and (2) have a significant contact or significant aggregation of contacts to claims asserted by each member of the plaintiff class to ensure that the choice of the forum state's law is not arbitrary or unfair. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821-22, 105 S. Ct. 2965 (1985). Under this standard, numerous courts have found that claims for violations of the UCL and CLRA simply cannot be brought as nationwide class actions against defendants that are not California citizens.

The seminal case in this regard is *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999). There, the California Court of Appeal applied *Shutts* to an attempted nationwide class action for alleged violations of the UCL. The court first noted that the UCL "contains no express declaration that it was designed or intended to regulate claims of non-residents arising from conduct occurring

---

[6] Plaintiffs Elston, Haavisto and Rodriguez reside in California –¶¶11, 16 & 63; Oaks and Salas reside in Nevada (Complaint ¶¶24 & 56; Lanum, Dorenkamp and Gaines reside in Florida –¶¶28, 48 and 71; Lefebvre resides in Maine –¶36; and, Grlicky resides in Ohio –¶42.

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

entirely outside of California." *Id*. at 222-23. Because one of the subcategories of the proposed class would have resulted in UCL liability "for injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California," that subclass was improper. *Id.* at 224-25.

Turning more specifically to the *Shutts* standard, the court held that because the defendant's headquarters and principal place of business were outside California, and because the injury-producing conduct also occurred outside of California, "application of the UCL to the claims of [the subclass] would be arbitrary and unfair and transgress due process limitations." *Id*. at 226-27; *see also In re Graphics Processing Units Antitrust Litig*., 527 F. Supp. 2d 1011, 1027- 28 (N.D. Cal. 2007) (granting motion to strike allegations of nationwide class for UCL claim, and noting that "[i]t is hard to see why the laws of other states should be tossed overboard and their residents remitted to California law for transactions that, for individual consumers, are local in nature"); *Morgan v. Harmonix Music Sys., Inc.*, WL 2031765, *2 (N.D. Cal. 2009) (dismissing CLRA claim and noting that "California courts have extended state-created remedies to out-of state parties harmed by wrongful conduct only when that conduct occurs in California") (emphasis added).

*Norwest* is dispositive here. ADBI is a Texas limited liability company headquartered in Pearland, Texas.  (Complaint¶ 8) Yet Plaintiffs seeks to bring claims under the UCL and CLRA, against a non-California defendant, on behalf of a class that is defined to include non-California members who made purchases and used the products outside of California. (Complaint ¶74) Such a class is facially improper under *Norwest*. Because the improper nature of the class is apparent, the Court should grant ADBI's motion and strike the class allegations now. *See Sanders,* 672 F. Supp. 2d at 991; *Thompson*, 2004 WL 62710 at *5.

### 2. Individual Questions of Proof Predominate over Plaintiffs' Class Claims.

In order for a class to be certified, the class must be ascertainable by reasonable means. *Bishop v. Saab Auto. A.B.*, No. CV 95-0721 JGD (JRX), 1996 U.S. Dist. LEXIS 22890, at *10 (C.D. Cal. Feb.16, 1996) (citing *De Bremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). A plaintiff seeking to bring a class action has the burden of showing that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977).

In addition to carrying the burden of demonstrating the foregoing requirement have been satisfied, the plaintiff must show "that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Rule 23(b)(3) requires that Plaintiffs "satisfy a more stringent standard by showing that 'the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.'" *Kimoto v. McDonald's Corps.*, No. CV 06-3032 PSG, 2008 U.S. Dist. LEXIS 86203, *8 (C.D. Cal. Aug. 19, 2008) ("Plaintiff's failure to comply with Rule 23(c)(1)(A) in and of itself warrants denying class certification. . . .").

The requirement of an individualized inspection to determine whether a person is a class member or not, as well as a requirement that each class member individually prove damage, is routinely held to be fatal to class certification. *See Endres v. Wells Fargo Bank*, No. C 06-7019 PJH, 2008 U.S. Dist. LEXIS 12159, at **1-4, *31 (N.D. Cal. Feb. 6, 2008) (denying motion for class certification re fees on a credit card after finding that "plaintiffs' claims would require individualized inquiries into the circumstances of each member of the class, and those individual inquiries would predominate over common questions of law and fact."); *Kirts v. Green Bullion Fin. Servs.*, LLC, No. 10-20312-CIVSEITZ/O'SULLIVAN, 2010 U.S. Dist. LEXIS 92381, *20-21 (S.D. Fla. Aug.

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

2, 2010) (denying class certification in a jewelry-mishandling and under-appraisal case where the court would be required to make individual determinations of whether an individual owned the jewelry, whether the jewelry was sent to the defendant and whether the defendant committed misconduct with respect to that individuals' jewelry).

Plaintiffs do not meet the class-action criteria for any cause of action set forth in the Complaint. Plaintiffs' Complaint does not allege sufficient allegations to establish questions of fact or law common to the putative class that are substantially similar or that predominate over questions affecting individual members of the putative class.  Each of the named Plaintiffs assert dissimilar allegations as to the circumstances leading to their purchase or obtaining of the massage products;[7] the duration of use; and the types of injuries, diseases and ailments allegedly sustained from the use of different products.  These divergent factual allegations establish that Plaintiffs have not and cannot show the existence of an ascertainable class or that class treatment is superior to other forms of litigation.

### 3.  Lack of Commonality and Typicality between Plaintiffs

Plaintiffs must show that there are "questions of law or fact common to the issue." Fed. R. Civ. P. Rule 23(a)(2). The common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). However,  "mass-tort actions for personal injury are most often <u>not appropriate for class certification</u>." *Jolly v. Eli Lilly & Co*., 44 Cal. 3d 1103, 1123 (1988) (Emphasis added). "The major elements in tort actions for personal injury -- liability, causation, and damages -- may vary widely from claim to claim, creating

---

[7] As reflected above there are 6 different massage products,  Plaintiffs fail to alleged that they all used the same massage product; the complaint reveals that they use whatever product they had to different areas of their bodies and for different lengths of time with varying degrees of force and pressure.

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

a wide disparity in claimants' damages and issues of defendant liability, proximate cause, liability of skilled intermediaries, comparative fault, informed consent, assumption of the risk and periods of limitation. *Id.* **T**he injuries, diseases and ailments alleged are unique to each of the ten Plaintiffs.  Moreover, even the damages that would pertain to the defamation claims (Complaint ¶196-208) as well as those that would pertain to the claim of Intentional infliction of emotional distress (Complaint ¶ 209-215) are unique to each plaintiff.

**C.   The Complaint Fails To Allege Facts Sufficient To Establish Commonality And Typicality As To The Injuries Sustained By The Plaintiffs.**

Plaintiffs allege that their use of a FasciaBlaster either caused or exacerbated 141 different injuries, medical conditions or ailments.   For example, one named putative class-representative asserts that the FasciaBlaster caused or worsened up to 31 distinct diseases, injuries and ailments (e.g. Haavisto), whereas  Jerry Gaines asserts a single health condition allegedly connected to the use of an ADBI product.  The stark differences as to each Plaintiff's alleged injuries are readily apparent from the Complaint.  In particular:

| Named Plaintiff | Alleged Injuries |
| --- | --- |
| **Emily Elson** | "…she experienced an abrupt, aggressive and painful flare up of **Epstein-Barr** virus symptoms" *Complaint, pg.* 8. [*preexisting condition*] |
|  | "…began to experience intense **menstrual and other unusual hormonal side-effects**…" *Id.* at 8. |
|  | "…her **FSH and LH levels had roughly doubled while her Progesterone level dropped**…" *Id.* at 9. |
|  | "Her **Estrogen levels swung wildly**…" *Id.* at 9. |
|  | "…her **AMH level had plummeted** well below expectations, suddenly indicating "**compromised fertility**." *Id.* at 9. |
|  | "…appearance of **cellulite** which she had sought to reduce instead became-and remains-significantly more conspicuous." *Id.* at 10. |
|  | [*10 ailments or conditions alleged*] |

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

| | |
|---|---|
| **Stacy Haavisto** | "'blasting' would cause Haavisto to feel **foggy-headed**, **lethargic**, and physically **fatigued**. She grew more and more ill, suffering **constipatio**n, **Irritable Bowel Syndrome**, **gas pains**, **heart palpitation**s, **insomnia**, **anxiety**, **difficulty concentrating**, **blurred vision**, **vertigo**, and **severe headaches...** caused her to **gain 13 pounds**,…unsightly **rake marks**" *Id.* at 10. |
| | "…severe **hormonal fluctuation**, including **hair loss** and **loss of collagen** in her face." *Id.* at 10. |
| | "…diagnosis of **Adrenal Fatigue**…" *Id.* at 10. |
| | The sustained ramifications of Haavisto's 'blasting' include **Oxidative Stress**, a severely dangerous condition affecting the body's ability to remove toxins and repair cell damage which studies have connected to an array of terrible ailments, including inter alia **Parkinson's Disease**, **Alzheimer's Disease**, **heart failure**, **chronic fatigue syndrome** and depression…now suffers **Metabolic Syndrome** attributable to 'blasting,' increasing her risk of **heart disease**, **stroke**, and **diabetes**. She also continues to chronically suffer **brain fog**, **insomnia, stiff neck**, and headaches." *Id.* at 11 [*31 ailments or conditions alleged*]. |
| **Loretta Oakes** | "…exacerbating a **peripheral neuropathy condition** such that she then suffered near constant **tingling in her feet** and sometimes too much pain to walk, including as recently as within the last month. She was bedridden from November 2016 through January 2017." *Id.* at 13. [*preexisting condition*] |
| | "'blasting' caused severe **bruising** which has lingered as **hemosiderin staining** on her legs…" *Id.* |
| | "On information and belief, other harms attributable to 'blasting' which Oakes has suffered include **depression** (with suicidal ideation), **anxiety**, **nausea**, **panic attacks**, and **lightheadednes**s, at least one incident of which caused her to lose consciousness |

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

| | |
|---|---|
| | and collapse. *Id.* [*9 ailments or conditions alleged*] |
| **Michelle Lanum** | "Her symptoms included **nausea**, **vomiting**, **migraine**s, **neck and shoulder pain**, **dizziness**, and **severe gastrointestinal distress** alternating between prolonged and **painful constipation** to **violent diarrhea**. Lanum quickly **lost 16 pounds**, then three more pounds." *Id.* at 14. [*compare to Haavisto, who allegedly gained weight as a result of her use of the FasciaBlaster.*] "'blasting' brought out **severe varicose** and **spider veins**…increase in the appearance of **cellulite**… **rake marks**, and **crepey skin**… **tinnitus, sciatica, knee problems**, and **nerve pain**" *Id.* at 15. 'Blasting' caused Lanum to personally **re-experience prior trauma** [e.g. **PTSD**]. *Id.* at 16. [*preexisting condition*] "she may ultimately require costly **plastic surgery**…" *Id.* [*20 ailments or conditions alleged*] |
| **Julia LeFebvre** | "…her thighs, stomach, back and arms began to show severe **bruising**…appearance of **cellulite** on her thighs had significantly worsened." *id.* at 17. "…severe **dizziness**, her field of **vision narrowed**, and her **hearing muffled**;" *Id.* at 18. "…overheating and overstimulating her vagus nerve, i.e. **Vasovagal Syncope**…**panic attacks**" *Id.* at 18. [*preexisting condition*] "…**rapid aging** in her face, including dramatic **deepening of the so-called 'marionette lines**…" *Id.* at 19. "…**hemosiderin stains**, unsightly **rake marks**, and worse cellulite…" *Id.* [*11 ailments or conditions alleged*] |
| **Sue Grlicky** | "…Spring of 2017she was suffering from **lower back pain**…" [*preexisting condition*]. *Id.* at 19. |

15

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

| | |
|---|---|
| | "…first week of 'blasting' Grlicky began to experience severe **nause**a, **headaches**, **body aches**, **fatigu**e, and **depression**." *Id.* at 20. |
| | "…**neck and shoulder pain**….**pinched nerve**…" *Id.* at 20. |
| | "…on July 17, Grlicky felt a sudden mild **pain in her hip**…" *Id.* at 21. [*three months after ceasing use of product.*] |
| | "…**burst blood vessel** had caused a massive **hematoma** and **internal bleeding** in her pelvic region… extreme **anxiety**" *Id.* at 21. |
| | [*14 ailments or conditions alleged*] |
| **Tilly Dorenkamp** | "…severe **nerve pain in her legs and knees**; worsened the **Restless Leg Syndrome ("RLS")** [*preexisting*]" *Id.* at 22. |
| | "…**anxiety** condition which Dorenkamp had previously managed for years-with anti-anxiety medication …suddenly worsened and developed into deep **depression**,…" [*preexisting*] *Id.* at 22. |
| | "…double her Clonazepam dosage extra half-dose of an additional anti-anxiety medication, Zoloft…was prescribed yet another anti-anxiety medication, Buspirone" *Id.* at 22-23. |
| | "…severe **thunderclap headache**, and **elevated her resting heart rate**…" *Id.* at 23. |
| | "Dorenkamp had managed a **Tachycardia condition** [preexisting] for years with 50mg prescription of Atenolol. Following this ER visit, her cardiologist doubled her Atenolol dosage…" *Id.* at 23. |
| | "…worsened **heart palpitations**, **elevated pulse**, and **mitral valve prolapse diagnoses**…" *Id.* at 23. |
| | **Increased cellulite**, "**skin now sags** off of her legs, there is a **conspicuous dent in her thigh**, and her **calf muscle atrophied**…**sagging skin**… **accelerating the appearance of aging**," *Id.* at 23. |
| | Increased pain related to "**fibromyalgia and arthritis**…" *Id.* at 23 |
| | "…disrupting her **sleep cycles**…" *Id.* at 24. |

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

| | [*20 ailments or conditions alleged*] |
|---|---|
| **Dina Salas** | "…has Multiple Sclerosis ("MS")…" *Id.* at 24. "…**bruis**ing…" *Id.* at 25. **severe itchiness**…" *Id.* at 26. "…**chronic Pruritis**…" *Id.* at 26. **Nerve pain** and **sleep deprivation**. *Id.* at 26. "…'blasting' **did not cure Salas's MS**" *Id.* at 26. [*preexisting*] Worsening **cellulit**e, **spider veins**. *Id.* at 26. "…oral **Herpes** outbreaks repeatedly…" *Id.* at 26. [*preexisting*] "…**gained 20 pounds**…" *Id.* at 26. "…**disrupted her hormonal levels**, all of which combined to throw her into **severe depression**". *Id.* at 27. [*12 ailments or conditions alleged*] |
| **Arlene Rodriguez** | "**nause**a, **dizziness** and **lightheadedness**…**headache**s… **body aches**…" *id.* at 27. **Worsened Cellulite**. *Id.* at 27-28. **Mood swings**, **anxiety**. *Id.* at 28 prescribed Zoloft. *Id.* at 28. "Between a week and 10 days after Rodriguez ceased 'blasting,' she developed the beginnings of a strange **rash**…" *Id.* at 29. "…was given a prescription for anti-fungal medication Terbinafine…" *Id.* at 29. (e.g. a **fungal infection**). "…**chronic superficial perivascular dermatitis**…" *Id.* at 29. **Rake marks, spider veins**. *Id.* at 30. [*13 ailments or conditions alleged*] |
| **Jerry Gaines** | "(**Stroke**)…suffered damage to cranial nerve no. 7, adversely affecting his speech and causing severe |

expressive aphasia…" *Id.* at 31.
Told doctor about *online testimonials* about the
products "tendency to release blood clots." *Id.* at 31.

[*1 ailment or condition alleged*]

The foregoing establishes that Plaintiffs' claims that "blasting" (e.g. using the FasciaBlaster) allegedly resulted in the occurrence of broadly divergent conditions ranging from constipation to "violent diarrhea"; from weight gain to weight loss; neck pain to hip pain; from tinnitus to stroke. Salas alleges that the FasciaBlaster caused the reactivation of the herpes virus[8]. Elson states that the product caused the reactivation of the Epstein-Barr Virus[9] (a/k/a Mononucleosis or "Mono"). One named Plaintiff states that her claims partially derive from the fact that the FasciaBlaster failed to improve or cure her Multiple Sclerosis (e.g. Salas). Elson blames a ADBI product for her "compromised fertility". Haavisto asserts that an ADBI product makes her more susceptible to Parkinson's Disease, but does not allege that she has Parkinson's Disease. The widely dissimilar injuries, diseases and ailments, including the fact that many of the Plaintiffs had pre-existing medical conditions, establish that each plaintiff is suffering from a unique set of injuries and will therefore have unique damages. Accordingly there is no commonality with respect to the injuries and damages being sought in this matter. Such claims are not the proper subject of a class action.

**D.    The Complaint Fails To Allege Facts Sufficient To Establish Commonality And Typicality As To Reliance On Representations Allegedly Made By Defendants.**

Plaintiffs cannot maintain a class-action for their causes of action pertaining to California Business & Professions Code § 17500 ("False Advertising), the

---

[8]John Hopkins Medicine Health Library, *Oral Herpes: What you Need to Know,* https://www.hopkinsmedicine.org/healthlibrary/conditions/adult/infectious_diseases/Oral_Herpes_22,OralHerpes

[9] National Center for Immunization and Respiratory Disease, *About Epstein-Barr Virus (EB*V), https://www.cdc.gov/epstein-barr/about-ebv.html (2016)

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

CLRA and/or the UCL.  Specifically, the Complaint reflects that Plaintiffs were not uniformly exposed to the same marketing and/or representations about any of ADBI's Products.

Multiple named Plaintiffs do not allege any exposure or reliance on advertisements or promotional materials distributed by the Defendants.  For example, Salas asserts that she was convinced to purchase the product when "her cousin told her about FasciaBlaster." (Complaint  ¶56). Gaines received his FasciaBlaster as a gift from Lanum, another named-Plaintiff. (Complaint  ¶71). Lanum was told about the device by "an acquaintance" and purchased "multiple FasciaBlaster devices" because she thought the product would be a "perfect subject for study in connection with her degree."  (Complaint ¶28).  Dorenkamp purchased the FasciaBlaster "on the recommendation of a friend."  (Complaint ¶48).   Oakes purchased the device after conducting unspecified "research about cellulite reduction." (Complaint ¶24).

LeFebvre, Haavisto and Elson purchased a FasciaBlaster after allegedly seeing an online advertisement via social media. (Complaint ¶ 36, 11, 16). LeFebvre, Haavisto and Elson fail to allege specific details identifying the advertisements or the representations made therein.  They fail to allege that they were exposed to or relied upon the same advertisements or representations.  The Complaint establishes that their exposure to the same advertisement is highly unlikely as it alleges widely different dates they viewed the advertisements.  To wit, Elson allegedly "saw advertising-on social media website Facebook "in or around March 2017." (Complaint ¶11).  Haavisto was allegedly exposed to a FasciaBlaster ad "in or around April 2016." (Complaint ¶16). LeFebvre allegedly viewed the Facebook advertisements in "September 2016." (Complaint ¶36). Their alleged exposure to FasciaBlaster advertisements on Facebook took place 5 months, 6 months and 11 months apart.

Grlicky allegedly joined a Facebook discussion group, reviewed product reviews, read Ashley Black's book and watched promotional materials prior to her

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

purchase in "April of 2017." (Complaint ¶42).  Grlicky does not allege any concrete or particularized facts about the nature of the advertisements or representations made by ADBI.  Further, Grlicky fails to allege that Defendant had any control over the content of posts made by FasciaBlaster's purchasers on a social media group or in product reviews.  She also fails to allege with particularity any statements made in Ashley Black's book or the content in Defendant's promotional materials that she relied upon.

The foregoing establishes that Plaintiffs are not proper class-representatives for causes of action related to misrepresentation and/or false advertising because their allegations reflect that they did not rely on the same marketing and/or materials from ADBI.  Plaintiffs' causes of action for alleged violations of the FAL, CLRA, and UCL should therefore be stricken under FRCP 12 (f).

**E.      The Complaint Fails To Allege Facts Sufficient To Establish Commonality And Typicality As To The Products They Purchased.**

The Complaint reflects that the named-Plaintiffs purchased and/or used different products.  As reflected above, ADBI sells 6 different massage products: the FasciaBlaster, the MasterBlaster, the FaceBlaster, the Mini 1, the Mini 2 and the Nugget.   See www.FasciaBlaster.com/Products.  Plaintiff Oakes and Rodriguez allege that their injuries arose after their purchase of the Mini 2. (Complaint ¶24, 65).  Lanum simply asserts she "purchased multiple FasciaBlaster devices" without specifying which ones and which allegedly caused her injuries. (Complaint ¶28).  Lanum allegedly gave Gaines one of the "multiple FasciaBlaster devices" she purchased, but fails to specify the FasciaBlaster model Gaines was provided.  (Complaint ¶71). The remainder of the Plaintiffs assert only that they purchased or used a FasciaBlaster device without indicating the model. Plaintiffs cannot assert that they share common issues of fact and/or typical claims where their alleged injuries are not related to the same product.  Plaintiffs' class action allegation should be stricken pursuant to F.R.C.P. 12 (f).

The Complaint Fails To Allege Facts Sufficient To Establish Commonality

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

And Typicality As To The Times Of Purchase And Duration Of Use.

The Plaintiffs had dissimilar dates of purchase and duration of use:

- Elson alleges that she purchased "a FasciaBlaster device in or around March of 2017" and used the massager for 4 or 5 weeks. (Complaint ¶11).

- Haavisto allegedly purchased her "first FasciaBlaster in or around April 2016" and the used the massager for 11 or 12 months.  (Complaint ¶16).

- Oakes purchased her Mini 2 "in or around November of 2016" and used the massager for about 4 months. (Complaint ¶ 24).

- Lanum purchased "multiple [unspecified] FasciaBlaster devices" in November 2016 and use the massager for about 4 months.  (Complaint ¶28).

- LeFebrvre purchased an unspecified FasciaBlaster in September 2016 and used the massager for about 9 months.  (Complaint ¶36).

- Grlicky purchased her unspecified "device and accessories" in April 2017 and used it for about 3 weeks.  (Complaint ¶42).

- Dorenkamp purchased her unspecified FasciaBlaster model in October 2016 and used the massager for about 7 months.  (Complaint ¶48).

- Salas began using her unspecified FasciaBlaster model in "October or November 2016" and used it for 1 or 2 months then stopped and started using it again in early 2017 for about 4 or 5 months later.  (Complaint ¶56).

- Rodriguez purchased an unspecified FasciaBlaster model in November 2017 and a "Mini 2" in February 2017 and stopped using both massagers in May 2017.  (Complaint ¶63).

- Gaines received his FasciaBlaster as a gift from Lanum in November 2016 and stopped using the massager in June 2017.  (Complaint ¶71).

Plaintiffs cannot assert that they share common issues of fact and/or typical claims when they purchased and/or began using ADBI's various products at different times and for different durations.   Plaintiffs fail to allege that they were exposed to the same marketing/promotional materials, advertisements, and/or the same terms and conditions when they purchased different products at different

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

1   times. Therefore Plaintiffs cannot maintain claims under California's UCL, FAL or

2   CLRA statutes. See, *True v Am. Honda Motor Co.,* 520 F. Supp. 2d 1175, 1182

3   (C.D. Cal. 2007)

4        Based upon the foregoing, Plaintiffs' putative class action should be stricken

5   under FRCP 12(f). *See Jones v. ConAgra Foods, Inc.,* No. C 12-01633 CRB, 2014

6   U.S. Dist. LEXIS 81292, at *67 (N.D. Cal. June 13, 2014) (ruling that there was a

7   lack of cohesion between class members because consumers were expose to label

8   statements that "changed over time, at different times, from product to product"

9   and there was no way to determine "whether class member ever bought a product

10  with a challenged statement on it.)

## F.   The Complaint Fails To Allege Commonality And Typicality As To Plaintiffs' Defamation Cause Of Action.

11

12       The allegations in the Complaint also do not support standing for a

13  nationwide class-action for defamation.  Of the ten Plaintiffs, only four allege facts

14  suggesting defamation.   The four Plaintiffs asserting defamation do not allege that

15  they were subject to the same or similar defamatory statements. Moreover,

16  California has recognized that a class a

17  ction is not an appropriate vehicle for defamation litigation. *See  L.A. Fire &*

18  *Police Protective League v. Rodgers*, 7 Cal. App. 3d 419, 425 (1970).

19       "[A] class action cannot be maintained where each member's right to

20  recover depends on facts peculiar to his case." *City of San Jose v. Superior Court*

21  12 Cal.3d 447, 459 (1974).  The Complaint reflects that there is not a single

22  common injury shared by the named Plaintiffs.  The Complaint fails to

23  demonstrate that Plaintiffs were exposed to the same representations, products, or

24  duration of use.  The Complaint reflects that the Plaintiffs cannot assert the same

25  claims or causes of action.

## G.   Plaintiffs Fail To Allege Facts Establishing Reliance On Any Of The Allegedly False Advertising Statements Prior To Purchase.

26

27

28

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

To establish standing under the CLRA, UCL and FAL, Plaintiffs must allege actual reliance on a material misrepresentation. *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009). A plaintiff demonstrates actual reliance on a material representation where he/she proves "that without the misrepresentation, the plaintiff would not have acted as he did." *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993). Plaintiffs' Complaint fails to establish reliance of any of the alleged misrepresentations or omissions to support their claims for false advertising under the CLRA, UCL and FAL. Plaintiff's Complaint is also rife with conclusory allegations, as well as vague and ambiguous factual assertions that it is impossible for Defendants to meaningfully respond to the Plaintiffs' false advertising claims.

It is well-settled that a plaintiff bringing claims for misrepresentation cannot state a claim based upon statements or advertisements they were not exposed to or did not read. *Mirkin v. Wasserman*, 858 P.2d 568, 573 (Cal. 1993). Plaintiffs cannot establish reliance because they fail to allege that they were uniformly exposed to any of the alleged misrepresentations made by the Defendants.

Further, Plaintiffs cannot establish that reliance arises as to the entire putative class as to any of the alleged misrepresentations because they failed to establish that any of the alleged misrepresentations were communicated to every named-Plaintiff, much less to the entire putative class.   A class-action complaint must allege that "*the same material misrepresentations have actually been communicated to each member of a class*" in order to create a sufficient inference of reliance that arises as to the entire putative class. *Mirkin,* 858 P.2d at 575 (*citing Vasquez v. Superior Court*, 4 Cal. 3d 800, 814, 484 P.2d 964, 972 (1971). Here, Plaintiffs fail to allege a single alleged misrepresentation that was communicated and relied upon by each of the named-Plaintiffs.

Plaintiffs cannot therefore, as matter of law, state a claim for false or deceptive advertising based on statements Plaintiffs never viewed. *See In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011) (UCL plaintiffs lacked

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

standing to sue over website claims where they failed to allege they viewed the website before making their purchase decision) *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (no reliance where second amended complaint "did not allege [plaintiff] ever visited [defendant's] Web site.").

### III.   PLAINTIFFS FAIL TO ALLEGE FACTS ESTABLISHING THAT THEY RELIED   ON ALLEGEDLY FALSE ADVERTISING.

Dismissal of claims under the UCL and FAL is proper where plaintiffs fail to assert that they "relied on Defendant's advertisements in entering into the transaction." *Laster v. T-Mobile USA, Inc.*  407 F.Supp.2d 1181, 1194 (S.D. Cal. 2005).  In *Laster*, the court opined that "while [p]laintiffs meticulously describe the allegedly misleading advertisements (as later described in Plaintiffs' pleadings, a "bait-and-switch" leading to a "fleece"), none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they entered into the transaction as a result of those advertisements." *Id.*

Similar to the *Laster* case, Plaintiffs' Complaint does not allege that each named-Plaintiff *saw, read or relied* on any specific representation made by the Defendants.  Plaintiffs' failure to allege the requisite exposure and reliance necessitates the prompt dismissal of their class-action Complaint.

### H.   Plaintiffs' Complaint Fails to Allege Sufficient Facts to Establish a Claim for Strict Products Liability-Failure to Warn (Cause of Action No. 3).

Plaintiffs' Complaint repeatedly references ADBI's Terms and Conditions to support its contentions, but fails to quote the actual content of the Terms and Conditions.  ADBI's Terms and Conditions explicitly warn consumers that they may experience:

> "rashes, bumps, redness, irritation, itching, nausea, emotional reactions, vomiting, hormone changes, increased sensitivity, headaches, acute inflammation, changes in cycle, reoccurrence of pre-existing condition, weight gain and other toxicity-associated symptoms."

24

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

*Exhibit A*. Further, the Terms and Conditions inform potential users not to use the Product on certain areas of the body, if they have suffered from or are being treated for multiple medical conditions, including, but not limited to, application to carotid arteries, blood clots, blood thinner prescriptions, and if the user is pregnant. The Terms and Conditions advise potential purchasers to "[a]lways seek medical advice from your medical professional, or other trusted specialist, before beginning any beauty regime or exercise program."

Plaintiffs' Complaint fails to allege any particular risks that Defendants should have known and warned against. Plaintiffs do not assert that they reviewed and considered the warnings provided in the Terms and Conditions prior to purchase and use of the product. Moreover, Plaintiffs do not allege that Defendants' failure to warn was the proximate cause of their injuries. Based upon the foregoing, this Court should dismiss the Third Cause of Action for Strict Products Liability- Failure to Warn pursuant to F.R.C.P 12(b)(6).

///

///

///

///

///

///

///

///

///

///

///

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**

## IV.    CONCLUSION

Plaintiffs are inadequate class representatives because they fail to assert any allegations establishing that common questions of law or fact predominate (e.g. "commonality").  Plaintiffs fail to assert concrete allegations that show typicality exists as to their claims. The Complaint alleges that the Plaintiffs were exposed to different marketing materials (if at all); dates of purchase; products; durations of use and injuries.  These differences dispel the possibility that any of the named Plaintiffs or the putative class can or should assert the same or similar facts; claims; or conclusions of law.  Moreover, Plaintiffs have failed to establish amongst themselves, much less a putative class, that they are entitled to the same or similar rights to recovery or damages.  They are also not entitled to assert California law to their alleged nationwide putative class. Based upon the foregoing, ADB Interests LLC's Rule 12(f) Motion to Strike Plaintiffs' Class Action Allegations from the Complaint Plaintiffs' class-action Complaint should be granted in its entirety.


Dated:  January 12, 2018                    Respectfully submitted,

                                            HERZFELD & RUBIN LLP


                                            By:    /s/ *Craig L. Winterman*
                                                   Craig L. Winterman
                                                   Attorneys for Defendant
                                                   ADB INTERESTS LLC

**ADB INTEREST LLC'S MOTION TO STRIKE PLAINTIFFS' COMPLAINT**