**LAW OFFICES OF PERRIN F. DISNER**
Perrin F. Disner, Esq. (SBN 257586)
4630 Sepulveda Boulevard, Suite 105
Sherman Oaks, CA 91403
Tel: (310) 742-7944
Fax: (888) 544-5154
pdisner@disnerlaw.com

Attorneys for Plaintiffs
(additional  counsel on signature page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

EMILY ELSON, STACY HAAVISTO,
LORETTA OAKES, MICHELLE LANUM,
SUE GRLICKY, TILLY DORENKAMP,
DINA SALAS, ARLENE RODRIGUEZ,
SHARON DALTON, ALLYSON
MCCARTHY, SHEILA SMITH, MARY
DENNIS, KELLI FREDERICK, JOEY
CAMPBELL, CAROL RICHTER, AND
BROOKE NEUFELD, on behalf of
themselves and all others similarly situated,

Plaintiffs,

vs.

ASHLEY BLACK COMPANY, ASHLEY
BLACK, ADB INNOVATIONS, LLC,
ASHLEY BLACK GURU, ASHLEY
DIANA BLACK INTERNATIONAL
HOLDINGS, LLC, ASHLEY BLACK
FASCIOLOGY LLC, ADB INTERESTS,
LLC, and DOES 1-100,

Defendants.

Case No.  2:18-cv-00116-ODW-RAO

**CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

1

Plaintiffs Emily Elson, Stacy Haavisto, Loretta Oakes, Michelle Lanum, Sue Grlicky, Tilly Dorenkamp, Dina Salas, Arlene Rodriguez, Sharon Dalton, Allyson McCarthy, Sheila Smith, Mary Dennis, Kelli Frederick, Joey Campbell, Carol Richter, and Brooke Neufeld, individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This consumer class action seeks to remedy the false and deceptive business practices of Ashley Black Company, ADB Interests, LLC and other related entities ("Defendants") with respect to the marketing and sales of the "FasciaBlaster" product throughout the United States.

2.      The base model FasciaBlaster is essentially a two-foot stick with hard prongs attached to it, which sells for $89.00:



3.      Purchasers are instructed by Defendants to grind the FasciaBlaster's

2

prongs into their bodies to the point of bruising to achieve numerous miraculous health benefits including the "elimination of cellulite," "better nerve function" and "chronic pain relief."

4.      The following statement features prominently on the website at checkout:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

(emphasis in original)

5.      These claims are repeated, in different forms, throughout the website.

6.      All these claims are baseless and false.

7.      Defendants also sell different versions of the FasciaBlaster (e.g. "Mini 2" and "FaceBlaster") and topical skin creams and oils for use in connection therewith, including a numbing cream to help alleviate the inevitable pain and bruising caused by its use.

8.      Defendants' conduct violates, among others, state consumer protection statutes and warranty law.  Plaintiffs bring claims under the laws of their home states as well as seeking to represent a national class of consumers.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving thousands of class members; (2) Plaintiffs are citizens of the States of California, Florida, Nevada, Arizona, Louisiana, Mississippi, New York and Ohio; Defendants are citizen of the States of Texas and California; and on information and belief more

than two-thirds of class members reside outside of California; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

10.     This Court has personal jurisdiction over Defendants because Plaintiffs Emily Elson, Sharon Dalton, Stacy Haavisto and Arlene Rodriguez are residents of the State of California, Defendant Ashley Black is a resident of California, Defendants conduct and transact business in the State of California, contract to supply goods within the State of California, and supply goods within the State of California.  In addition, Ms. Black, a California resident, is the central figure in this widespread deception and the conduct complained of herein originated with her.

11.     Venue is proper because Plaintiff Ms. Elson, Ms. Dalton, Ms. Haavisto Ms. Rodriguez, Defendant Ms. Black, and many Class Members reside in this District, and throughout the State of California. A substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

**Plaintiffs**

12.     **Emily Elson** is an individual consumer who, at all times material hereto, was a resident of California.

13.     In or around March of 2017 she purchased a FasciaBlaster through Defendants' website.

14.     Ms. Elson read the statements on the website, including the paragraph: The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

4

15.     Ms. Elson relied on these representations in making her purchase decision.

16.     Ms. Elson used the FasciaBlaster as directed, but received none of the claimed benefits.

17.     Ms. Elson suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster.

18.     Had Ms. Elson known the truth about the FasciaBlaster, *i.e.* that it does not work and is incapable of conferring the promised benefits, she would not have purchased it.

19.      Ms. Elson does not know if the representations made on the Ashley Black website will be true or not in the future.

20.     Ms. Elson suffered injury in fact and lost money as a result of Defendants' improper conduct.

21.     **Sharon Dalton** is an individual consumer who, at all times material hereto, was a citizen of California.

22.     In early 2016 she purchased two FasciaBlasters through Defendants' website.

23.     Ms. Dalton read the statements on the website, including the paragraph: The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

24.     Ms. Dalton relied on these representations in making her purchase decision.

25.     Ms. Dalton purchased two FasciaBlasters because at the time of her purchase she saw a video which advised consumers to cut a FasciaBlaster in half to form two smaller FasciaBlasters.

26.     Ms. Dalton used the FasciaBlasters as directed, but received none of the claimed benefits.

27.     Ms. Dalton suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlasters.

28.     Had Ms. Dalton known the truth about the Fasciablasters, she would not have purchased them.

29.     Ms. Dalton does not know if the representations made on the Ashley Black website will be true or not in the future.

30.     Ms. Dalton suffered injury in fact and lost money as a result of Defendants' improper conduct.

31.     **Allyson McCarthy** is an individual consumer who, at all times material hereto, was a citizen of Nevada.

32.     In January of 2017 Ms. McCarthy purchased the FasciaBlaster through Defendants' website.

33.     Ms. McCarthy read the statements on the website, including the paragraph:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

34.     Ms. McCarthy relied on these representations in making her purchase decision.

35.     Ms. McCarthy used the FasciaBlaster as directed for over two months, but received none of the claimed benefits.

36.     Ms. McCarthy suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster.

37.     Had Ms. McCarthy known the truth about the FasciaBlaster, she would not have purchased it.

38.     Ms. McCarthy does not know if the representations made on the Ashley Black website will be true or not in the future.

39.     Ms. McCarthy suffered injury in fact and lost money as a result of Defendants' improper conduct.

40.     **Kelli Frederick** is an individual consumer who, at all times material hereto, was a citizen of Louisiana.

41.     In the Summer of 2016, Ms. Frederick purchased the FasciaBlaster through Defendants' website.

42.     In November of 2016, Ms. Frederick purchased a different product, the "Faceblaster."

43.     In 2017, Ms. Frederick purchased the "MiniBlaster."

44.     Ms. Frederick read the statements on the website, including the paragraph:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

45.     Ms. Frederick relied on these representations in making her purchase decisions.

46.     Ms. Frederick used the FasciaBlaster and the other products as directed for many months, but received none of the claimed benefits.

47.     Ms. Frederick suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster and the other products.

48.     Had Ms. Frederick known the truth about the FasciaBlaster and the other products, she would not have purchased them.

49.     Ms. Frederick does not know if the representations made on the Ashley Black website will be true or not in the future.

50.     Ms. Frederick was injured in fact and lost money as a result of Defendants' improper conduct.

51.      **Sheila Smith** is an individual consumer who, at all times material hereto, was a citizen of Florida.

52.     In 2015 Ms. Smith purchased a FasciaBlaster through Defendants' website.

53.     Ms. Smith read the statements on the website, including the paragraph: The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

54.     Ms. Smith relied on these representations in making her purchase decision.

55.     Ms. Smith used the FasciaBlaster as directed, but received none of the claimed benefits.

56.     Ms. Smith suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster.

57.    Had Ms. Smith known the truth about the Fasciablaster, she would not have purchased it.

58.    Ms. Smith does not know if the representations made on the Ashley Black website will be true or not in the future.

59.    Ms. Smith was injured in fact and lost money as a result of Defendants' improper conduct.

60.    **Mary Dennis** is an individual consumer who, at all times material hereto, was a citizen of Mississippi.

61.    In 2016 Ms. Dennis purchased a FasciaBlaster through Defendants' website.

62.    Ms. Dennis read the statements on the website, including the paragraph:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

63.    Ms. Dennis relied on these representations in making her purchase decision.

64.    Ms. Dennis used the FasciaBlaster as directed on her thighs and abdomen, but received none of the claimed benefits.

65.    Ms. Dennis suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster.

66.    Had Ms. Dennis known the truth about the Fasciablaster, she would not have purchased it.

67.     Ms. Dennis does not know if the representations made on the Ashley Black website will be true or not in the future.

68.     Ms. Dennis was injured in fact and lost money as a result of Defendants' improper conduct.

69.     **Joey Campbell** is an individual consumer who, at all times material hereto, was a citizen of Arizona.

70.     In 2016 Ms. Campbell purchased three FasciaBlasters through Defendants' website.

71.     Ms. Campbell read the statements on the website, including the paragraph:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

72.     Ms. Campbell relied on these representations in making her purchase decision.

73.     Ms. Campbell used the FasciaBlasters, including on her legs, but received none of the claimed benefits.

74.     Ms. Campbell suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlasters.

75.     Had Ms. Campbell known the truth about the FasciaBlaster, she would not have purchased them.

76.     Ms. Campbell does not know if the representations made on the Ashley Black website will be true or not in the future.

77.     Ms. Campbell was injured in fact and lost money as a result of Defendants' improper conduct.

78.     **Stacy Haavisto** is an individual consumer who, at all times material hereto, was a resident of California.

79.     In or around April of 2016 she purchased a FasciaBlaster through Defendants' website, then over the next few months she purchased an additional FasciaBlaster to cut in half (as the Defendants were then encouraging people to do online), followed by the "FaceBlaster" package, including the smaller FaceBlaster device and various oils and cleansers.

80.     Ms. Haavisto read the statements on the website, including the paragraph:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

81.     Ms. Haavisto relied on these representations in making her purchase decision.

82.     Ms. Haavisto used the FasciaBlaster as directed, but received none of the claimed benefits.

83.     Ms. Haavisto suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster.

84.     Ms. Haavisto wrote about her negative experiences in a public FasciaBlaster discussion group controlled by the Defendants on Facebook. Defendants promptly removed her comments, kicked her out of the group, and retaliated against her by harassing, intimidating, cyber-bullying and defaming her,

and on information and belief, by soliciting third parties to harass, intimidate, cyber-bully and defame her, as well. The latter conduct included *inter alia* overtly encouraging Defendants' more loyal Facebook followers to attack Ms. Haavisto e.g. by leaving false negative reviews of her own businesses' Facebook pages, and by targeting her with groundless accusations to the authorities, as exemplified by a public Facebook post on September 7, 2017, to wit:

> Everyone. Let's report Dari, Julie D L, Veronica Verona, Stacy Havisto [*sic*], Danielle Reins, Tammy Wike, and everyone else in their hate group to the FTC, FDA, FBI, the DEA, and their local Police Stations. Let's look up their businesses and leave 1 star reviews.
>
> Let's make sure everyone knows the truth about how hateful they are and all of the shadiness.
>
> You don't have to have been personally injured by them. If you know anyone who has spent anytime [*sic*] reading their lies then you have been injured (permanently). You can't get that part of your life back.
>
> I'll make it easy for everyone. I'll create a copy/paste list of things they have done:
>
> -Harrassment [*sic*]
> -Cyber Bullying
> -Extortion
> -Tortuous [*sic*] Interference
> -Defamation
> -Product Libel
> -Hate Crimes
> -Defrauding the Government (abuse of gov systems)
>
> You can do it anonymously. Just crop out your face. Don't worry about negative repercussions. There is nothing they can do. We need to do this in order to get the truth out and take them down.
>
> Come on everyone, let's do this!!!!!!
>
> I will send separate e-mails to everyone with guidance from "you know who"

The foregoing was posted publicly by a supposed Facebook user named Sarah Minow, although Ms. Minow's personal Facebook page appears to be fake[1]. On information and belief, Defendant Ashley Black herself created this ʹshillʹ Facebook profile in order to post the foregoing ʹcall to arms,ʹ and the allusion therein to "you know who" refers to Defendant Ashley Black.

85.     Had Ms. Haavisto known the truth about the FasciaBlaster, *i.e.* that it does not work and is incapable of conferring the promised benefits, she would not have purchased it.

86.     Ms. Haavisto does not know if the representations made on the Ashley Black website will be true or not in the future.

87.     Ms. Haavisto suffered injury in fact and lost money as a result of Defendants' improper conduct.

88.     **Loretta Oakes** is an individual consumer who, at all times material hereto, was a resident of Nevada.

89.     In or around September of 2016 she purchased a FasciaBlaster through Defendants' website.  In or around November of 2016, she purchased another version of the FasciaBlaster, the "Mini 2."  In February of 2017 she purchased the "Faceblaster" package, including the smaller Faceblaster version of the FasciaBlaster that Defendants market for use on the face, and a skin cream (notably lacking a list of ingredients on its packaging).

90.     Ms. Oakes read the statements on the website, including the paragraph: The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by

---

[1] Ms. Minow's Facebook page displays no photos, no friends, no posts, and no information of any kind, save for two telling details: (i) under the heading "Groups" Ms. Minow discloses only that she is a member of "FasciaBlasters Official Open Forum", and (ii) under the heading "Contact Information" the sole entry—"http://facebook.com/sarah.minnows"—wherein Ms. Minow mysteriously seems to have misspelled her own name.

anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

91.     Ms. Oakes relied on these representations in making her purchase decision.

92.     Ms. Oakes used the FasciaBlaster, Mini 2, and FaceBlaster as directed, but received none of the claimed benefits.

93.     Ms. Oakes suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster, Mini 2 and Faceblaster.

94.     Had Ms. Oakes known the truth about the FasciaBlaster, Mini 2 and Faceblaster, *i.e.* that they do not work and are incapable of conferring the promised benefits, she would not have purchased them.

95.      Ms. Oakes does not know if the representations made on the Ashley Black website will be true or not in the future.

96.     Ms. Oakes suffered injury in fact and lost money as a result of Defendants' improper conduct.

97.     **Michelle Lanum** is an individual consumer who, at all times material hereto, was a resident of Florida.

98.     In or around September of 2016, through Defendants' website, she purchased a FasciaBlaster and the smaller "Mini 2" device, and then in November of 2016 she purchased two "Black Friday Special" packages online, each comprising a black version of the FasciaBlaster device called the "LumpBuster" along with a FaceBlaster (i.e. two devices purchased in September and four devices purchased in November of 2016).

99.     Ms. Lanum read the statements on the website, including the paragraph:

14

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

100.   Ms. Lanum relied on these representations in making her purchase decision.

101.   When it came to her attention that Defendants were supposedly conducting a "clinical trial" of the FasciaBlaster at the Applied Science & Performance Institute ("ASPI") right in her own neighborhood, Lanum jumped at the opportunity to be able to observe the study for academic purposes, and to participate for her own aesthetic reasons. She participated in ASPI's putative clinical trial of the FasciaBlaster from December 10, 2016 through March 10, 2017.

102.   Upon achieving some negative results during the ASPI study, Ms. Lanum regularly communicated same to putative clinical trial "researcher" Kathleen Stross, who repeatedly asserted that any notions of a connection between Lanum's symptoms and the 'blasting' were refuted by Lanum's regular blood testing results and other data the putative study was purportedly gathering. On information and belief, the foregoing was an outright falsehood, and contrary to Defendants' repeated promises to return study participants' medical test results to them, Defendants and the putative researchers have still not done so, ignoring multiple requests by Lanum and others.

103.   In Ms. Lanum's judgment based on her personal academic background and experience, she found the putative researchers' behaviors to be highly erratic, their methods unprofessional, and the putative clinical trial to be unscientific and improper. Further, Ms. Lanum learned that Bart Jameson—one of the putative

researchers whom Defendants referred to as "Doctor Bart" in various media—is, in fact, not a doctor. When Lanum would ask procedural questions of the putative researchers, e.g. for the benefit of her own research, their replies revealed shocking unfamiliarity with the scientific process, generally. In one notable instance, Lanum found that she had to explain to Jameson what a "hypothesis" is, and that it ordinarily comes before an experiment, not after.

104.    When Ms. Lanum questioned Ms. Stross about Institutional Review Board ("IRB") oversight, Ms. Stross provided no answer, and eventually stopped responding to Ms. Lanum's voicemails, emails, and Facebook messages. On information and belief, the putative clinical trial was in fact never supervised by any IRB, in violation of FDA regulations for any study with human participants, along with such further administrative flaws and abuses as Plaintiffs may discover in the course of litigation, at which time they may seek leave to amend this pleading to reflect same.

105.    Ms. Lanum used the FasciaBlaster as directed, but received none of the claimed benefits.

106.    Ms. Lanum suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster.

107.    Had Ms. Lanum known the truth about the FasciaBlaster, *i.e.* that it does not work and is incapable of conferring the promised benefits, she would not have purchased it.

108.     Ms. Lanum does not know if the representations made on the Ashley Black website will be true or not in the future.

109.    Ms. Lanum suffered injury in fact and lost money as a result of Defendants' improper conduct.

110.    **Sue Grlicky** is an individual consumer who, at all times material hereto, was a resident of Ohio.

111.   In or around April of 2017 she purchased a FasciaBlaster through Defendants' website.

112.   Ms. Grlicky read the statements on the website, including the paragraph:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

113.   Ms. Grlicky relied on these representations in making her purchase decision.

114.   Ms. Grlicky had also assiduously researched FasciaBlaster by other means—she joined the "Ashley Black Guru" Facebook discussion group, reviewed over a hundred product reviews therein, watched numerous promotional and instructional videos, and purchased and read Defendant Ashley Black's book, The Cellulite Myth: It's Not Fat, It's Fascia, cover to cover—before purchasing the device and accessories in April of 2017.

115.   Ms. Grlicky used the FasciaBlaster as directed, but received none of the claimed benefits.

116.   Ms. Grlicky suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster.

117.   Ms. Grlicky wrote to Black about her negative FasciaBlaster experiences via Facebook, to which the latter responded that "detox can really be rough … [it's] no fun but it's a necessary, TEMPORARY evil that is needed to release all the gunk that's keeping your body from functioning at 100%."

118.   Had Ms. Grlicky known the truth about the FasciaBlaster, *i.e.* that it does not work and is incapable of conferring the promised benefits, she would not have purchased it.

119.   Ms. Grlicky does not know if the representations made on the Ashley Black website will be true or not in the future.

120.   Ms. Grlicky suffered injury in fact and lost money as a result of Defendants' improper conduct.

121.   **Carol Richter** is an individual consumer who, at all times material hereto, was a resident of Ohio.

122.   In or around August of 2016 she purchased a FasciaBlaster through Defendants' website.

123.   Ms. Richter read the statements on the website, including the paragraph:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

124.   Ms. Richter relied on these representations in making her purchase decision.

125.   Ms. Richter used the FasciaBlaster as directed, but received none of the claimed benefits.

126.   Ms. Richter suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster.

127.   Had Ms. Richter known the truth about the FasciaBlaster, *i.e.* that it does not work and is incapable of conferring the promised benefits, she would not have purchased it.

128.   Ms. Richter does not know if the representations made on the Ashley Black website will be true or not in the future.

129.   Ms. Richter suffered injury in fact and lost money as a result of Defendants' improper conduct.

130.   **Tilly Dorenkamp** is an individual consumer who, at all times material hereto, was a resident of Florida.

131.   In October 2016 she purchased a FasciaBlaster through Defendants' website.

132.   Ms. Dorenkamp read the statements on the website, including the paragraph:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

133.   Ms. Dorenkamp relied on these representations in making her purchase decision.

134.   Ms. Dorenkamp also participated in the putative clinical trial at ASPI from Dec. 2016 – Mar. 2017 (*see* ¶¶ 101-104, *supra*).

135.   Ms. Dorenkamp used the FasciaBlaster as directed, but received none of the claimed benefits.

136.   Ms. Dorenkamp suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster.

137.   Had Ms. Dorenkamp known the truth about the FasciaBlaster, *i.e.* that it does not work and is incapable of conferring the promised benefits, she would not have purchased it.

138.   Ms. Dorenkamp does not know if the representations made on the Ashley Black website will be true or not in the future.

139.   Ms. Dorenkamp has been subject to harassment, intimidation, cyber-bullying, and defamation, constituting intentional infliction of emotional distress by Defendants, and others on their behalf, in retaliation for her having honestly relayed her negative experiences in e.g. the "Ashley Black Guru" group discussion page on Facebook. At Defendants' behest and direction on information and belief, individuals[2] supporting Defendants have sought to harass, embarrass, and intimidate Ms. Dorenkamp on Facebook by the unauthorized public posting of unflattering photos of her, and health-related records which, on information and belief, Defendants publicized or permitted others to publicize (in violation of e.g. HIPAA).

140.   Ms. Dorenkamp suffered injury in fact and lost money as a result of Defendants' improper conduct.

141.   **Dina Salas** is an individual consumer who, at all times material hereto, was a resident of Nevada.

---

[2] Particularly in light of recent headlines' revealing the ease with which bad actors have been able to misuse Facebook lately, Plaintiffs are informed and believe that the cyber-bullies at issue here are merely false personae secretly operated by Defendants themselves, or by hired third parties on Defendants' behalf; on information and belief, Defendants created fake Facebook user accounts for the purpose of attacking people who honestly publicize negative experiences with FasciaBlaster, e.g. there is evidence that Defendants manufactured "Sarah Minow" in order to undermine and intimidate dissatisfied customers, including some of the named Plaintiffs, and to rally others to do so. *See* ¶ 84 *supra*. On information and belief, the same can be said of Facebook personae "Georgia Peach," "Brown Shuga," "Nikki Kaviani," and "Black Ryno/Ryno Black/Ryno Brandt/Ryno Ulili" who likewise routinely censored, harassed, threatened, and/or bullied anybody mentioning negative FasciaBlaster experiences online, including some named Plaintiffs.

142.   In or around June of 2016 she purchased a FasciaBlaster through Defendants' website.

143.   Ms. Salas read the statements on the website, including the paragraph: The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

144.   Ms. Salas relied on these representations in making her purchase decision.

145.   Ms. Salas used the FasciaBlaster as directed, but received none of the claimed benefits.

146.   Ms. Salas suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster.

147.   Had Ms. Salas known the truth about the FasciaBlaster, *i.e.* that it does not work and is incapable of conferring the promised benefits, she would not have purchased it.

148.    Ms. Salas does not know if the representations made on the Ashley Black website will be true or not in the future.

149.   Ms. Salas suffered injury in fact and lost money as a result of Defendants' improper conduct.

150.   **Arlene Rodriguez** is an individual consumer who, at all times material hereto, was a resident of California.

151.   In November of 2016 she purchased a FasciaBlaster through Defendants' website.

152.   Ms. Rodriguez read the statements on the website, including the paragraph:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

153.   Ms. Rodriguez relied on these representations in making her purchase decision.

154.   Ms. Rodriguez used the FasciaBlaster as directed, but received none of the claimed benefits.

155.   Ms. Rodriguez suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster.

156.   Had Ms. Rodriguez known the truth about the FasciaBlaster, *i.e.* that it does not work and is incapable of conferring the promised benefits, she would not have purchased it.

157.    Ms. Rodriguez does not know if the representations made on the Ashley Black website will be true or not in the future.

158.   Ms. Rodriguez suffered injury in fact and lost money as a result of Defendants' improper conduct.

159.   **Brooke Neufeld** is an individual consumer who, at all times material hereto, was a resident of the State of New York.

160.   In July of 2016 she purchased a FasciaBlaster through Defendants' website.  In February of 2017 she purchased other products including a "FaceBlaster" and a smaller FasciaBlaster.

161.   Ms. Neufeld read the statements on the website, including the paragraph:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

162.   Ms. Neufeld relied on these representations in making her purchase decision.

163.   Ms. Neufeld used the FasciaBlaster and FaceBlaster as directed, but did not receive the claimed benefits.

164.   Ms. Neufeld suffered pain and bruising, among other injuries and unwanted side effects, as a result of using the FasciaBlaster.

165.   Had Ms. Neufeld known the truth about the FasciaBlaster, *i.e.* that it does not work and is incapable of conferring the promised benefits, she would not have purchased it.

166.    Ms. Neufeld does not know if the representations made on the Ashley Black website will be true or not in the future.

167.   Ms. Neufeld suffered injury in fact and lost money as a result of Defendants' improper conduct.

**Defendants**

168.   **Ashley Black** is an individual who is the founder and principal owner of the corporate entity defendants and is the person primarily responsible for the wrongdoing alleged herein.  Ms. Black resides in California in this District.  Ms. Black features prominently on the Ashley Black website and is the main

spokesperson touting the benefits of the FasciaBlaster on the website, social media, and other outlets.

**Defendant Corporate Entities Controlled By Ashley Black**

169.   The following corporate entities are owned and controlled by defendant Ashley Black.  The precise role of each of the corporate entity defendants in the wrongdoing alleged herein is unknown.  All of these entities, however, are controlled by Ashley Black and as a practical matter have little, if any, independent corporate existence.  The corporate structure, ownership, holdings and operations of these entities will be the subject of discovery.

170.   **Defendant Ashley Black Company** is a corporation with its principal place of business in Texas.  On information and belief, Ashley Black Company was jointly responsible for the manufacture, marketing, advertising and distribution of the FasciaBlaster throughout the United States.  Ashley Black Company created and/or authorized the false, misleading and deceptive statements about the FasciaBlaster.

171.   **Defendant ADB Interests, LLC** is a Texas company based, on information and belief, in Pearlman, Texas.  ADB Interests LLC is identified as the owner of the Ashley Black website that carries the misrepresentations.

172.   **Defendant ADB Innovations, LLC** identifies itself in corporate literature as the source of some of the Ashley Black products and is the source of one of the disclaimers about the products.

173.   **Defendant Ashley Black Guru** is located at 5205 Broadway St., Pearland, Texas.  This entity identifies itself as a copyright holder on certain corporate literature and on the Ashley Black website.

174.   **Defendant Ashley Diana Black International Holdings, LLC** is a Delaware corporation, based, on information and belief, in Pearland, Texas.   Ashley

Diana Black International Holdings, LLC is based in Pearlman, Texas and is the holder of certain intellectual property concerning the FasciaBlaster.

175.   **Defendant Ashley Black Fasciology, LLC** is another corporate entity controlled by Ashley Black.  Its precise role in the marketing and sale of the FasciaBlaster is unknown.

176.   **Defendants DOES 1-100** are sued through this fictitious designation until their identities come to light.

177.   Unless indicated otherwise, and until the precise role in the conduct alleged herein is established, the defendants will be referred to collectively as "Defendants."

### **FACTS**

**The Device**

178.   The base-model FaciaBlaster is a rod with handles on each end and rounded claws protruding in the middle.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15      1´

16  he

17  Fasci

18

19  aBlaster is sold through Defendants' website, www.ashleyblackguru.com.

20
21
22
23
24
25
26
27
28

26



**The Misrepresentations**

180.   Defendants' website states at the checkout page:

The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

*See* https://ashleyblackguru.com/product/fasciablaster/5938157638/

(emphasis in original).

181.   The front page of the website states that use of the FasciaBlaster "Lessens the look of cellulite" "Improves blood flow" "Helps reduce pain" and "accelerates muscle recovery."

182.   Similar claims are made throughout the website.

183.   The defendants also tout a study of their own design to theorize that use of the FasciaBlaster "mimics" diet and exercise by pushing fat into the bloodstream where, it is asserted, it may be used as energy or excreted naturally:

> **The levels of fat in the blood were safe and consistent with diet and exercise.** Take a look at this graph below.  This shows for the 35 women in the study, the mean level of free fatty acids in the blood increased after their initial FasciaBlasting session.  This is exciting because it supports the idea that the FasciaBlaster ® "mimics" exercise or dieting by mobilizing fat into the bloodstream to be either used as energy or excreted naturally.  By the next day, the mean levels of fat in the bloodstream returned to low normal levels.  Of course, using the FasciaBlaster® is not a substitute for a healthy diet and exercise, but it is encouraging to see results that support the positive effect of FasciaBlasting® on fat cells.

*See* https://ashleyblackguru.com/findings/ (emphasis in original):

184.   This claim is also false.  Use of the FasciaBlaster does not "mobilize fat into the bloodstream to be either used as energy or excreted naturally."

185.   The FasciaBlaster sells for $89.00.





FASCIABLASTER ®

$89.00

−  1  +     ADD TO CART

The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

Click here for instructions

Click here for FasciaBlaster® tutorials!

*See* https://www.fasciablaster.com/collections/all/products/fasciablaster

186.    Defendants' health claims are false and unsupportable.

187.    There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can eliminate, or even reduce, cellulite.

188.    There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can reduce chronic pain.

189.    There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve flexibility.

190.    There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve joint function.

191.    There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve circulation.

192.    There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve muscle definition.

193.    There is no competent and reliable scientific evidence supporting the

claim that the FasciaBlaster can improve muscle performance.

194.   There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve nerve activity.

195.   There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve beauty.

196.   There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve posture.

**The Fasciablaster's Instructions For Use And Resulting Harm**

197.   However, use of the FasciaBlaster does have one undeniable effect: pain and potential serious bodily harm. To use the FasciaBlaster, users are instructed to forcefully rub the claws into their bodies after "Getting Hot!!!" and slathering themselves with oil.

198.   Users are also advised not to concern themselves with the pain they are experiencing.  The website states:

> FasciaBlasting can be a little painful at first, so you'll want to start off light and brisk to open up those initial layers of fascia.  Once you've been FasciaBlasting frequently for a few weeks (at least 10 sessions in each area) you can start going a bit deeper and work your way up to a little more pressure.  On a pain scale from 1-10, you should stay at a 2-4.  Never go harder than a 7, and be sure to ease into treatment!
>
> …
>
> If you've never manipulated your fascia before, you may not know what to expect. It's understandable that you might "freak out" about some of the ways your body reacts to the treatment. We want you to know what is common and normal in the aftermath of a FasciaBlasting session.

199.   Essentially, users are instructed to grind the claws into themselves until they bruise. The pictures below are from the Ashley Black website and apparently intended to show what normal use of the FasciaBlaster will cause.



*See* https://ashleyblackguru.com/bruise/



200.   Defendants state that bruising is nothing to be concerned about and that once users "understand the science behind the bruises associated with FasciaBlasting" any concerns will be assuaged:

> **Bruises** – Bruising after FasciaBlasting is a TOTALLY normal, healthy part of the restorative process and means it's working! Be sure to read the News on the Bruise so you fully understand the science behind the bruises associated with FasciaBlasting and learn what to do for recovery. Don't worry, the bruises will fade in a few days and in a few months, once your fascia is restored, bruising will be reduced to a minimum.
>
> …
>
> While bruising IS normal, you also don't want to overdo it! If you see some extremely dark, ugly bruises the following day, you might want to go a little lighter next time and see how your body reacts. Like I said, you'll eventually work up to blasting harder, but you should ease into treatment and open up one layer of fascia at a time.

201.   Then, after recovery, users are instructed to dig the claws deeper to reach new, previously unaffected layers of fascia, to cause yet more bruising. Bruising, Defendants claim, is a sign of "restoring" unhealthy fascia:

> There is no exact time frame and everyone's fascia is in a different stage.  There are so many factors that contribute, but I can make a generalization here to give you an idea.  Bruising, as explained above, happens when you're breaking up fascial adhesions and restoring the fascia, and is part of the inflammation process, so it will always be possible as long as you're alive.
>
> There is generally a 2-3 month restoration phase where you'll initially bruise after using the FasciaBlaster.  Once the surface layers of fascia are fully restored, you won't bruise as much unless the fascia adheres or becomes distorted again.  However, over time as you reach new layers that hadn't been previously restored, you can continue to see bruising!  Does that make sense?

*See* https://ashleyblackguru.com/bruise/

32

202.   Bruises, also known as contusions, are caused when blood vessels are damaged or ruptured by force against the skin.  The appearance of the bruise results from blood leaking out of blood vessels into surrounding tissue.

203.   Bruising is not a sign of restoring supposedly infirm fascia to health.

204.   Defendants also advise users to "learn what to do for recovery" after they bruise themselves.

205.   Then Defendants offer to sell consumers "After Blaster" lotion, which defendants promise will "help accelerate recovery and reduce the look of bruising and inflammation after FasciaBlasting."

206.   Indeed, the FasciaBlaster is so painful to use as directed that Defendants' aftercare lotion contains a "numbing agent:"

the After Blaster lotion is AMAZING for recovery — it has a high-quality Arnica to promote faster healing as well as skin tightening and numbing agents to help reduce swelling/inflammation and pain after blasting!

207.   The After Blaster lotion and the pre-use spray are sold for $35.00.

33

*See* https://ashleyblackguru.com/product/blaster-oil-and-after-blaster/9011237260/



HOME  >  PRODUCTS  >  BLASTER OIL AND AFTER BLASTER

BLASTER OIL AND AFTER BLASTER

$35.00

−  1  +    ADD TO CART

The Blaster Oil was specifically designed to enhance the effects of the FasciaBlaster®. The oil streams out of a spray bottle so you can apply it to target areas without getting your hands oily, which is perfect for gripping the FasciaBlaster®. The density and consistency allow the FasciaBlaster® to glide smoothly over the skin to stimulate blood flow as well as loosen and release fascial adhesions. The Blaster Oil is compounded with 3 algaes that have shown to burn stored fat which helps with the visible reduction of cellulite. It also smells like an ocean day!

The After Blaster lotion contains high-quality Arnica to help accelerate recovery and reduce the look of bruising and inflammation after FasciaBlasting. It also has a skin tightening ingredient that is sure to give you an extra boost!

This fantastic combo is the perfect compliment to your FasciaBlasting routine and will take your results to a whole new level.

Click here to see a list of ingredients and read the research behind these products!

## Fascia

208.   The term "fascia" refers mainly to the collagen wrappings around internal organs and muscles as well as the sheaths around nerves and blood vessels.

209.   Defendants state that use of the FasciaBlaster will "open the fascia at deeper layers" and "break up fascial adhesions."

210.   There is no competent or scientific evidence that "fascial adhesions" even exist, let alone that it would be beneficial to destroy them.

211.   In addition, the use of the FasciaBlaster is not precise.  Since fascia covers organs, muscles, and blood vessels, users are also grinding the spikes into (obviously) their skin, organs, nerves, muscles, blood vessels, and bones.

212.   Accordingly, in addition to the dangers of actually rupturing fascia,

users risk significant "collateral" damage to skin, organs, nerves, lymph glands, muscles, blood vessels, bones and other structures.

**Defendants' FDA Reporting**

213.   The FasciaBlaster touts itself as a medical device.  The website states:
>   The FasciaBlaster is a Class I medical device. Research and product claims have not been reviewed by the US Food and Drug Administration.

214.   Using the term "Class I medical device" in a statement preceding the standard FDA disclaimer would mislead a reasonable consumer into believing the FDA had a role in approving the device for use.

215.   The intent to convey the misleading impression of government approval is demonstrated by the fact that defendant Ashley Black, the company's founder, once stated on social media that the FaciaBlaster had been approved by the FDA.

**Other Misrepresentations**

216.   Defendants make numerous other unsupportable medical claims.

217.   The website also states that the use of the FasciaBlaster will:

- Reduce and minimize inflammation
- Instantly reduce pain
- Increase joint health
- Improve blood pressure
- Improve mental function
- Improve nerve function

218.   The website also states the FasciaBlaster can treat pain from fibromyalgia, a serious chronic pain condition.

219.   There is no competent and reliable scientific evidence supporting the claim that the use of the FasciaBlaster can confer any of these benefits.

220.   Defendants did/do create and operate shill (i.e. fake) Facebook profiles,

and surreptitiously contract with undercover third party ´motivators´ in order to present the false public impression that these are disinterested  parties as they broadcast glowing third-party feedback, and oppose, attack, and make every effort to undermine any negative third-party feedback.

221.   Defendants have made and/or continue to make false representations regarding the medical/academic qualifications of individuals associated with FasciaBlaster 'instructional' media and other marketing.

222.   Defendants' website and other marketing media claim that FasciaBlaster has been subjected to "clinical study" and "double-blind scientific research."

223.   In fact, the only putatively scientific research was the putative clinical trial undertaken at ASPI from mid-December 2016 through mid-March 2017, which was dubiously scientific, was conducted without IRB oversight, violated HIPAA and FDA protocols (*see* e.g. ¶¶ 101-104, *supra*), and was not "double-blind" because there was no 'control group versus test group' structure, but rather just 35 participants all doing the same thing and submitting their results.

224.   Defendants have claimed that FasciaBlaster is 100% safe; on May 18, 2017, Defendant Black stated in a promotional video that no woman had reported injuries to her; as recently as August 31, 2017, Black stated "[t]here are no serious injuries reports (*sic*) … [w]e investigate all claims."

225.   In fact, thousands of FasciaBlaster users experienced adverse effects therefrom. Defendants received numerous complaints dating back more than a year before Ms. Black claimed otherwise. An FDA Inspection Report specifies that at least 70 users reported injuries directly to Defendants, and were ignored. Many complaints were raised before May 18, 2017, and as explicitly noted in the FDA Report, prior to Ms. Black's assertion to the contrary on August 31, 2017 Defendants were indeed notified of numerous customer injuries serious enough to

require emergency hospitalization.

226.   Defendants' website and social media sites feature multiple sets of alleged 'before and after' photos purporting to demonstrate promising results of FasciaBlaster use.

227.   In fact, many of these photos are digitally altered; others were directly copied from various plastic surgery or liposuction websites; at least one pair of pictures was taken mere moments apart, but with different lighting giving them the appearance of improvement from one to the next; and at least one pair of photos feature a woman who was eight-months pregnant in the 'before' photo, then four or five months postpartum in the 'after,' which Defendants fail to disclose in presenting them merely as a standard example of positive results.

228.   In tiny gray print on a black background, at the bottom of the checkout page below the website copyright notice it reads:

> Legal Disclaimer: All claims and results within are based on years of anecdotal evidence. The company is currently studying claims for scientific validation.

229.   However, there is no "scientific validation" possible, since the directed use of the FasciaBlaster does not provide the claimed benefits.

## CLASS ALLEGATIONS

230.   Plaintiffs bring this matter on behalf of themselves and similarly situated consumers.  Defendants orchestrated deceptive marketing and advertising practices.  Defendants' customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this case is appropriate for classwide resolution.

231.   The Class is defined as all consumers who purchased the FasciaBlaster anywhere in the United States during the Class Period (the "Class").

232.   Plaintiffs also seeks certification, to the extent necessary or appropriate, of subclasses of consumers in the states in which they reside, California, Nevada, Louisiana, Arizona, Florida, Mississippi, Ohio and New York (the "Subclasses").

233.   The Class and Subclasses, except where indicated, shall be referred to collectively throughout the Complaint as the "Class."

234.   This action should be certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3).  It satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy.

235.   <u>Numerosity</u>: The members of the Class are so numerous that joinder is impracticable.  Plaintiffs believe that there are thousands of consumers who have been damaged by Defendants' deceptive and misleading practices.

236.   <u>Commonality</u>: The questions of law and fact common to the members of the Class predominate over any questions which may affect individuals and include, but are not limited to:

a.  Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can eliminate, or even reduce, cellulite.

b.  Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can reduce chronic pain.

c.  Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve flexibiity.

d.  Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve joint function.

e.  Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve circulation.

f.  Whether there is competent and reliable scientific

evidence supporting the claim that the FasciaBlaster can improve muscle definition.

g. Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve muscle performance.

h. Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve nerve activity.

i. Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve posture.

j. Whether Defendants' false and misleading statements concerning the FasciaBlaster were likely to deceive a reasonable consumer;

k. Whether the representations made by Defendants constitute actionable express warranties and whether Defendants have breached those warranties;

l. Whether an implied warranty of merchantability exists and whether Defendants have breached it;

m. Whether an implied warranty of fitness for a particular purpose exists and whether Defendants have breached it;

n. Whether defendants have been unjustly enriched;

o. Whether injunctive relief should be granted;

p. The amount of damages attributable to the Defendants' misrepresentations;

237. Typicality: Plaintiffs are members of the national class and of their respective state Subclasses.  Plaintiffs' claims are typical of the claims of the Class

and Subclasses because they were subjected to the same deceptive, misleading conduct and purchased the FasciaBlaster in reliance on the Defendants' misrepresentations.

238.  Adequacy: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class or Subclass Members they seek to represent; their consumer fraud claims are common to all members of the Class and Subclasses; they have a strong interest in vindicating their rights; and they have retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.

239.  Predominance: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and Subclasses.  The common issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and advertising practices and their objective impact on a reasonable consumer.

240.  Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.  The joinder of thousands of individual consumers is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.  The individual claims of the Class and Subclass Members are small compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c.  When Defendants' liability has been adjudicated, all Class and Subclass Members' claims can be determined by the Court and

administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  A class action will assure uniformity of decisions among Class and Subclass Members;

g.  The Class and Subclasses are readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  The interests of Class and Subclass Members in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in a single venue the litigation of all plaintiffs who were induced to purchase the FasciaBlaster by Defendants' uniform false advertising.

241.  Accordingly, this case is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## **INJUNCTIVE CLASS RELIEF**

242.  Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendants have made false and unsupported claims about the health benefits of the use of the FasciaBlaster.  Since

Defendants' conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a classwide basis is a viable and suitable solution to remedy Defendants' continuing misconduct. Plaintiffs do not know if the representations made by Defendants will be true or not in the future. Plaintiffs would use the FasciaBlaster again, and would purchase additional related products from Defendants, if Defendants' claims about the FasciaBlaster were true.

243. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

244. Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable. The FasciaBlaster been purchased by thousands of people throughout the United States;

245. Commonality: Questions of law and fact are common to members of the Class. Defendants' misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendants to stop their misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendants' misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

a. Resolution of the issues presented in the 23(b)(3) class;

b. Whether members of the Class will continue to risk suffer harm and risk of harm because of Defendants' deceptive product marketing; and

c. Whether, on equitable grounds, Defendants should be prevented from continuing to make false and unsupported health claims

about the FasciaBlaster.

246. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the injunctive Class because their claims arise from the same misrepresentations.  Plaintiffs are typical of the Class because, like all members of the injunctive Class, they purchased Defendants' Products which were sold unfairly and deceptively to consumers throughout the United States.

247. <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the injunctive Class.  Their consumer protection claims are common to all members of the injunctive Class and they have a strong interest in vindicating their rights.  In addition, Plaintiffs and the Class are represented by counsel who are competent and experienced in both consumer protection and class action litigation.

248. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiffs seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendants has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendants have marketed the FasciaBlaster by making the same misleading and deceptive claims to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class because Defendants would be prevented from continuing their misleading and deceptive practices. Plaintiffs do not know whether the representations made by Defendants in the future will be accurate.

**FIRST COUNT**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT – EXPRESS WARRANTY, 15 U.S.C. § 2301, *et seq*.**
**(On Behalf of All Plaintiffs and the National Class)**

249. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

250.   Plaintiffs bring this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

251.   The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

252.   The FasciaBlaster is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

253.   Plaintiffs and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

254.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

255.   Defendants represented that use of the FasciaBlaster could confer many health benefits, including "pain reduction," "improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty" and also the "virtual elimination of cellulite."

256.   These statements were made in connection with the sale of the FasciaBlaster and relate to the nature of the product and affirm and promise that the product is as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

257.   As alleged herein, Defendants breached the written warranty because the statements are false.

258.   The FasciaBlaster does not conform to the Defendants' written warranty and therefore violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

259.   Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**SECOND COUNT**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT-IMPLIED WARRANTY, 15 U.S.C. § 2301, *et seq.***

260.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

261.   Plaintiffs bring this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

262.   The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

263.   An implied warranty of merchantability arose in connection with the purchases of the Product by operation of state law under the Magnuson-Moss Warranty Act, 5 U.S.C. § 2301(7).

264.   Defendants breached the implied warranty of merchantability because the FasciaBlaster is not fit for its intended use and does not conform to the representations made by Defendants.

265.   Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial, along with attorneys' fees and costs.

\\\
\\\
\\\
\\\

## THIRD COUNT
## VIOLATION OF CAL. BUS. & PROF. CODE § 17200, ET SEQ.
### (On Behalf of Ms. Elson, Ms. Dalton, Ms. Haavisto, Ms. Rodriguez and the National Class)

266.   Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

267.   Plaintiffs have standing to pursue this claim under California's Unfair Competition Law ("UCL") because they suffered an injury-in-fact and lost money as a result of Defendants' unfair practices.  Specifically, they expended money that she otherwise would not have due to Defendant's misconduct.

268.   Advertising the spurious health benefits when, in fact, the FasciaBlaster does not convey those benefits constitutes a course of unfair conduct within the meaning of Cal. Civ. Code § 17200, et seq.

269.   The conduct of the Defendants harms the interests of consumers and market competition.  There is no valid justification for Defendants' conduct.

270.   Defendants engaged in unlawful business acts and practices by violating the Magnuson-Moss Warranty Act, breaching implied and express warranties, violating the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*., and violating the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

271.   Defendants engaged in fraudulent business practices by knowingly misrepresenting that use of the FasciaBlaster would confer certain health benefits when it would not.  Such practices are devoid of utility and outweighed by the gravity of harm to Plaintiffs and the Class who lost money by paying for the FasciaBlaster.

272.   Each of Defendants' unfair, unlawful and fraudulent practices was the direct and proximate cause of financial injury to Plaintiffs and the Class. Defendants have unjustly benefitted as a result of their wrongful conduct. Plaintiffs and the

46

Class are entitled to have Defendants disgorge and restore to Ms. Dalton and California Subclass members all monies wrongfully obtained by Defendants as a result of the conduct as alleged herein.

273.   Defendants should also be ordered to stop selling the FasciaBlaster correct the false and misleading representations concerning the health benefits of the use of the FasciaBlaster.

274.   Plaintiffs have no adequate remedy at law.

## FOURTH COUNT
## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, ET SEQ.
**(On behalf of Ms. Elson, Ms. Dalton, Ms. Haavisto, Ms. Rodriguez and the National Class)**

275.   Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

276.   The Consumers Legal Remedies Act ("CLRA") was enacted to protect consumers against unfair and deceptive business practices.  The CLRA applies to Defendants' acts and practices because the Act covers transactions involving the sale of goods to consumers.

277.   Plaintiffs and the members of the Class are "consumers" within the meaning of section 1761(d) of the California Civil Code, and they engaged in "transactions" within the meaning of sections 1761(e) and 1770 of the California Civil Code, including the purchases of the FasciaBlaster.

278.   The FasciaBlaster is a "good" under Cal. Civ. Code §1761(a).

279.   Defendants' unfair and deceptive business practices were intended to and did result in the sale of the FasciaBlaster.

280.   Defendants violated the CLRA by engaging in the following unfair and deceptive practices:

•Representing that the FasciaBlaster has characteristics, uses or benefits

that it does not have, in violation of section 1770(a)(5);

•Representing that the FasciaBlaster is of a particular standard, quality, or grade when it is not, in violation of section 1770(a)(7); and

•Advertising the FasciaBlaster with the intent not to sell it as advertised, in violation of section 1770(a)(9).

281.   If Plaintiffs and the members of the Class had known the truth about the FasciaBlaster, they would not have purchased the FasciaBlaster or purchased the FasciaBlaster at the prices they did.

282.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the members of the Class suffered injury and damages in an amount to be determined at trial.

283.   Pursuant to California Civil Code § 1782(a), on August 24, 2017, Ms. Dalton sent Defendants a CLRA notice letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

284.   On September 22, 2017 counsel for Defendants responded and advised Plaintiffs' counsel that as a result of Ms. Dalton's demand, the Defendants were expanding their return policy to permit returns of the FasciaBlaster going back three years.

285.   Defendants later stated that they had contacted over 50,000 class members and received 42 returns.  This notice was accompanied by a description of an alleged study which Defendants claimed supported the FasciaBlaster's effectiveness.

286.   Defendants' actions do not adequately address Ms. Dalton's allegations.

287.   On November 16, 2017, Ms. Elson sent Defendants a CLRA notice

letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

288.   Defendants responded on December 20, 2017 in a manner similar to the response to Ms. Dalton.

289.   On November 16, 2017 Ms. Rodriguez sent Defendants a CLRA notice letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

290.   Defendants responded on December 21, 2017 in a manner similar to the response to Ms. Dalton.

291.   On November 16, 2017 Ms. Haavisto sent Defendants a CLRA notice letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

292.   Defendants responded on December 21, 2017 in a manner similar to the response to Ms. Dalton.

293.   Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto now seek monetary damages under the CLRA for consumers whether or not they have returned their FasciaBlasters.

294.   Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto also seek an injunction prohibiting Defendants from making false claims about the health benefits of the use of the FasciaBlaster and prohibiting Defendants from selling any more FasciaBlasters.

295.   Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto also seek punitive damages because Defendants' conduct was reprehensible and conducted with conscious disregard of the rights of others. Many consumers were injured by

using the FasciaBlaster.  In addition, Defendants then tried to sell consumers a lotion to alleviate their pain.

296.   Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto also seek restitution, costs, attorneys' fees, and any other relief available under the CLRA.

**FIFTH COUNT**
**BREACH OF EXPRESS WARRANTY UNDER CALIFORNIA LAW, CAL. COM. CODE §§ 2313 and 10210**
**(On behalf of Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto and the California Subclass)**

297.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

298.   Defendants were at all relevant times "merchants" and "sellers" within the meaning of Cal. Com. Code §§ 2104(1), 10103(c) and § 2103 (1)(d).

299.   The FasciaBlasters, at all relevant times, were "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

300.   Defendants warranted that the use of the FasciaBlaster would confer certain health benefits, as described above.

301.   Defendants knowingly breached its warranty because the use of the FasciaBlaster does not confer the promised health benefits.

302.   As a result, Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto and the members of the California Subclass are entitled to damages in an amount to be determined at trial.

**SIXTH COUNT**
**BREACH OF IMPLIED WARRANTY UNDER CALIFORNIA LAW, CAL. COM. CODE §§ 2314 and 10212**
**(On behalf of Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto and the California Subclass)**

303.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

304.   Defendants were at all relevant times "merchants" and "sellers" within the meaning of Cal. Com. Code §§ 2104(1), 10103(c) and § 2103 (1)(d).

305.   The FasciaBlasters, at all relevant times, were "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

306.   A warranty that the FasciaBlasters were merchantable and fit for the ordinary purpose for which they are used is implied by California law.

307.   The purpose for which FasciaBlasters are used is to confer certain health benefits promised by Defendants.

308.   The FasciaBlasters, when sold, were not merchantable and not fit for the ordinary purpose for which they are used.  The FasciaBlasters are inherently defective because they do not confer the promised health benefits.

309.   Defendants were provided notice of these issues by the CLRA letters sent by Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto.

310.   As a direct and proximate result of the Defendants' breach of the implied warranty Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto and the other California Subclass members have been damaged in an amount to be proven at trial.

**SEVENTH COUNT**
**BREACH OF EXPRESS WARRANTY UNDER**
**THE SONG-BEVERLY WARRANTY ACT**
**(On behalf of Ms. Dalton and the California Subclass)**

311.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

312.   Defendants were at all relevant times, merchants, manufacturers, distributors, and/or sellers within the meaning of Cal. Civ. Code § 1791.

313.   The FasciaBlasters, at all relevant times, were "consumer goods" within the meaning of Cal. Civ. Code § 1791.

314.   Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto and the members of the California Subclass are "buyers" within the meaning of Cal. Civ. Code § 1791.

315.   Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto and the members of the California Subclass bought the FasciaBlasters for personal, household, or family purposes.

316.   Defendants warranted that the use of the FasciaBlaster would confer certain health benefits, as described above.

317.   Defendants' express warranty extended to Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto and the California Subclass because they are natural persons who could have been expected to use the products they purchased.

318.   Defendants knowingly breached their warranty because the use of the FasciaBlaster does not confer the promised health benefits.

319.   Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto notified the Defendants of their breach in their CLRA letters.

320.   As a result, Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto and the members of the California Subclass are entitled to damages in an amount to be determined at trial.

**EIGHTH COUNT**
**BREACH OF IMPLIED WARRANTY UNDER THE SONG-BEVERLY WARRANTY ACT (On behalf of Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto and the California Subclass)**

321.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

322.   As merchants of the FasciaBlasters, Defendants impliedly warranted that the FasciaBlasters were merchantable, would pass without objection in the trade, and were fit for the ordinary purpose for which they were used.

323. The ordinary purpose for which the FasciaBlaster would be used would be to obtain the health benefits promised by Defendants.

324. The FasciaBlasters, when sold, were not merchantable and not fit for the ordinary purpose for which they are used.

325. The FasciaBlasters are inherently defective because they do not confer the promised health benefits.

326. Defendants breached their implied warranty of merchantability under the Song-Beverly Warranty Act.

327. Defendants were provided notice of these issues by the CLRA letters sent by Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto.

328. As a direct and proximate result of the Defendants' breach of the implied warranty Ms. Dalton, Ms. Elson, Ms. Rodriguez and Ms. Haavisto and the other California Subclass members have been damaged in an amount to be proven at trial, together with reasonable attorney's fees and costs.

**NINTH COUNT**
**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT,**
**Nev. Rev. Stat. § 598.0903 et seq.**
**(On behalf of Ms. McCarthy, Ms. Oakes, Ms. Salas and the Nevada Subclass)**

329. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

330. The Nevada Deceptive Trade Practices Act prohibits:

(5) knowingly making a false representation as to the characteristics, uses, benefits, alternations, or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation, or connection or a person therewith;

(9) Advertises goods or services with intent not to sell or lease them as advertised; and

(15) knowingly makes any other false representation in a transaction.

331.   Defendants made false representations as to the health benefits conferred by the use of the FasciaBlaster as described above.

332.   Defendants advertised the FasciaBlasters as having the ability to confer those health benefits, but sold the FasciaBlasters to the public when they knew the FasciaBlaster did not have those health benefits.

333.   Defendants knew or should have known that their conduct violated the Nevada Deceptive Trade Practices Act.

334.   Defendants' violations present an ongoing risk to the public and affect the public interest.

335.   Ms. McCarthy, Ms. Oakes, Ms. Salas and the Nevada Subclass seek their actual damages, punitive damages, an order enjoining Defendants from making the misrepresentations about the health benefits of the FasciaBlaster and enjoining Defendants from selling any more FasciaBlasters, in addition to attorneys' fees and costs, and all other appropriate remedies under the Nevada Deceptive Trade Practices Act.

## TENTH COUNT
## BREACH OF EXPRESS WARRANTY UNDER NEVADA LAW, N.R.S. §§ 104.2313
## (On behalf of Ms. McCarthy, Ms. Oakes, Ms. Salas and the Nevada Subclass)

336.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

337.   Defendants were at all relevant times "merchants" and "sellers" of the FasciaBlasters under Nevada law.

338.   The FasciaBlasters, at all relevant times, were "goods" under Nevada law.

339.   Defendants expressly warranted that the use of the FasciaBlaster would confer certain health benefits, as described above, in connection with the sale of the

FasciaBlasters.

340.   Defendants knowingly breached its express warranty because the use of the FasciaBlaster does not confer the promised health benefits.

341.   The Defendants were notified of these issues by the CLRA letters and numerous complaints to the Defendants by consumers.

342.   In any case, giving the Defendants a reasonable opportunity to cure their breach would be unnecessary and futile here.  There is nothing Defendants can do to alter the FasciaBlasters that would change them into a device that could live up to Defendants' warranties.

343.   As a result, Ms. McCarthy, Ms. Oakes, Ms. Salas and the members of the Nevada Subclass seek all remedies allowed by law including the revocation of acceptance of the goods and the return to Plaintiffs and the other Nevada Class members of the purchase price of the FasciaBlasters.

**ELEVENTH COUNT**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**UNDER NEVADA LAW, N.R.S. §§ 104.2314 and 104A.2212**

344.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

345.   Defendants were at all relevant times "merchants" under Nevada law.

346.   The FasciaBlasters, at all relevant times, were "goods" under Nevada law.

347.   A warranty that the FasciaBlasters were merchantable and fit for the ordinary purpose for which they are used is implied by Nevada law.

348.   The purpose for which FasciaBlasters are used is to confer certain health benefits promised by Defendants.

349.   The FasciaBlasters, when sold, were not merchantable and not fit for the ordinary purpose for which they are used.  The FasciaBlasters are inherently

defective because they do not confer the promised health benefits.

350.   Defendants were provided notice of these issues by the CLRA letters and numerous complaints by consumers.

351.   As a direct and proximate result of the Defendants' breach of the implied warranty Ms. McCarthy, Ms. Oakes, Ms. Salas and the other Nevada Subclass members have been damaged in an amount to be proven at trial.

### TWELFTH COUNT
### BREACH OF ARIZONA'S CONSUMER FRAUD ACT
### Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.
### (brought by Ms. Campbell on behalf of the Arizona Subclass)

352.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

353.   The FasciaBlasters are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

354.   Ms. Campbell, the members of the Arizona Subclass, and the Defendants are all "persons" within the meaning of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521(6).

355.    The Arizona Consumer Fraud Act Ariz. Rev. Stat. § 44-1522(A) provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

356.    Defendants advertised the FasciaBlasters as having certain health benefits and sold them to the public when they knew the FasciaBlaster did not have those health benefits.

357.   Defendants intended that consumers would rely on the

misrepresentations concerning the health benefits of the FasciaBlasters.

358.   Defendants knew or should have known that their conduct violated the Arizona Consumer Fraud Act.

359.   Ms. Campbell and the Arizona Subclass suffered actual damages and an ascertainable loss as a direct and proximate result of Defendants' misrepresentations.

360.   Defendants' violations present an ongoing risk to the public and affect the public interest.

361.   Ms. Campbell and the Arizona Subclass seek their actual damages, punitive damages, an order enjoining Defendants from making the misrepresentations about the health benefits of the FasciaBlaster and enjoining them from selling any more FasciaBlasters, attorneys' fees and costs, and all other appropriate remedies under the Arizona Consumer Fraud Act.

**THIRTEENTH COUNT**
**Breach of Express Warranty Under Arizona Law**
**(Ariz. Rev. Stat. 47-2313 and 47-2A210)**
**(Brought by Ms. Campbell on Behalf of Arizona Subclass)**

362.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

363.   Defendants are and were at all relevant times "merchants" under Ariz. Rev. Stat. §§ 47-2104(A) and 47-2a103(c).

364.    The FasciaBlasters are goods under Ariz. Rev. Stat. §§ 47-2105(A) and 47-2a103(A)(8).

365.   In connection with the sale of the FasciaBlaster, Defendants expressly warranted that the FasciaBlaster would confer certain health benefits, as described above.

366.   Defendants knew at the time of sale that the FasciaBlasters did not live

1   up to their warranties.

2   367.   Ms. Campbell and the members of the Arizona Subclass have been

3   damaged by the Defendants' breach of warranty.

4   368.   Ms. Campbell and the members of the Arizona Subclass seek full

5   refunds and all other damages and remedies permitted by law.

6   **FOURTEENTH COUNT**
**Breach of Implied Warranty Under Arizona Law**

7   **(Ariz. Rev. Stat. 47-2314 and 47-2A212)**
**(Brought by Ms. Campbell on Behalf of Arizona Subclass)**

8

9   369.    Plaintiffs repeat and reallege each and every allegation contained in the

10   foregoing paragraphs as if fully set forth herein.

11   370.   Defendants are and were at all relevant times "merchants" under Ariz.

12   Rev. Stat. §§ 47-2104(A) and 47-2a103(c).

13   371.    The FasciaBlasters are goods under Ariz. Rev. Stat. §§ 47-2105(A)

14   and 47-2a103(A)(8).

15   372.   An implied warranty of merchantability arose with respect to the

16   Arizona Subclass members when they purchased the FasciaBlasters.

17   373.   Under the implied warranty of merchantability, goods must be fit for

18   the ordinary purpose for which they are used.

19   374.   The ordinary purpose for which the FasciaBlasters are used is to

20   achieve the health benefits promised by the Defendants.

21   375.   The Defendants have breached the implied warranty of merchantability

22   because the FasciaBlasters do not confer the health benefits promised by the

23   Defendants.

24   376.   Ms. Campbell and the members of the Arizona Subclass have been

25   damaged by Defendants' breach of the implied warranty of merchantability in an

26   amount to be determined at trial.

27   \\\

28

**FIFTEENTH COUNT**
**VIOLATION OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, FLA. STAT. § 501.201, *et seq*.**
**(on behalf of Ms. Smith, Ms. Lanum, Ms. Dorenkamp and the Florida Subclass)**

377.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

378.    Ms. Smith, Ms. Lanum and Ms. Dorenkamp are consumers under Fla. Stat. § 501.203(7).

379.    Defendants were engaged in commerce under Fla. Stat. § 501.203(8).

380.    The Florida Unfair and Deceptive Trade Practices Act at Fla. Stat. § 501.204(1) prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

381.    Defendants advertised the FasciaBlasters as having certain health benefits and sold them to the public when they knew the FasciaBlaster did not have those health benefits.

382.    These misrepresentations constitute "unfair or deceptive acts or practices."

383.    Ms. Smith, Ms. Lanum, Ms. Dorenkamp and the Florida Subclass members were deceived by this conduct and suffered ascertainable loss and actual damages as a direct and proximate result of these misrepresentations. Had Ms. Smith, Ms. Lanum, Ms. Dorenkamp or members of the Florida Subclass known the truth about the FasciaBlaster, they would not have purchased it or would not have paid as much as they did for it.

384.    Ms. Smith, Ms. Lanum, Ms. Dorenkamp and the Florida Subclass seek damages, attorneys' fees and all other appropriate relief under the Florida Deceptive Trade Practices Act.

\\\

59

## SIXTEENTH COUNT
## BREACH OF EXPRESS WARRANTY UNDER FLORIDA LAW, F.S.A. §§ 672.313 and 680.21
## (On behalf of Ms. Smith, Ms. Lanum, Ms. Dorekamp and the Florida Subclass)

385.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

386.   Defendants, at all relevant times, were "merchants" and "sellers."

387.   The FasciaBlasters, at all relevant times, were "goods."

388.   In connection with the sale of the FasciaBlasters, Defendants expressly warranted that the FasciaBlaster would confer certain health benefits, as described above.

389.   Defendants knowingly breached their express warranties because the FasciaBlasters do not convey the promised health benefits.

390.   Ms. Smith, Ms. Lanum and Ms. Dorenkamp provided notice of the breach by letter.

391.   As a result of Defendants breach of express warranty, Ms. Smith, Ms. Lanum and Ms. Dorenkamp and the members of the Florida Subclass are entitled to their damages in an amount to be determined at trial.

## SEVENTEENTH COUNT
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER FLORIDA LAW (Florida Stat. Ann. §§ 672.314 and 680.212)
## (On Behalf of Ms. Smith, Ms. Lanum and Ms. Dorenkamp and the Florida Subclass)

392.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

393.   Defendants, at all relevant times, were "merchants" and a "sellers" under Florida law.

394.   The FasciaBlasters, at all relevant times, were "goods."

60

395.   An implied warranty of merchantability arose with respect to the Florida Subclass members when they purchased the FasciaBlasters.

396.   Under the implied warranty of merchantability, goods must be fit for the ordinary purpose for which they are used.

397.   The ordinary purpose for which the FasciaBlasters are used is to achieve the health benefits promised by the Defendants.

398.   The Defendants have breached the implied warranty of merchantability because the FasciaBlasters do not confer the health benefits promised by the Defendants.

399.   Ms. Smith, Ms. Lanum and Ms. Dorenkamp provided notice of Defendants' breach by letter.

400.   Ms. Smith, Ms. Lanum and Ms. Dorenkamp and the Florida Subclass have been damaged by Defendants' breach in an amount to be proven at trial.

**EIGHTEENTH COUNT**
**VIOLATIONS OF MISSISSIPPI CONSUMER PROTECTION ACT**
**(Miss. Code. Ann. § 75-24-1, *et seq.*)**
**(Brought by Ms. Dennis on Behalf of the Mississippi Subclass)**

401.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

402.   The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code. Ann. § 75-24-5(1).

403.   Defendants violated the Mississippi Consumer Protection Act by:

> (a)   Representing that the FasciaBlaster has characteristics, uses or benefits that it does not have, in violation of § 75-24-5(1)(e);

> (b)   Representing that the FasciaBlaster is of a particular standard, quality, or grade when it is not, in violation of § 75-24-5(1)(g); and

(c)    Advertising the FasciaBlaster with the intent not to sell it as advertised, in violation of § 75-24-5(1)(i).

404.    Defendants intentionally misrepresented the health benefits concerning the use of the FasciaBlaster and knew or should have known that their conduct violated the Mississippi Consumer Protection Act.

405.    Ms. Dennis and the Mississippi Subclass have suffered actual damage as a result of Defendants' conduct in an amount to be determined at trial.

### NINETEENTH COUNT
### BREACH OF EXPRESS WARRANTY UNDER MISSISSIPPI LAW
### (Miss. Code §§ 75-2-313 and 75-2A-210)
### (Brought by Ms. Dennis on behalf of the Mississippi Subclass)

406.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

407.    At all times Defendants were "merchants" and "sellers" under Mississippi law.

408.    The FasciaBlasters are "goods" under Mississippi law.

409.    In connection with the sale of the FasciaBlaster, Defendants expressly warranted that the FasciaBlaster would confer certain health benefits, as described above.

410.    Defendants knew at the time of sale that the FasciaBlasters did not live up to their warranties.

411.    Ms. Dennis and the members of the Mississippi Subclass have been damaged by the Defendants' breach of warranty.

412.    Ms. Dennis and the members of the Mississippi Subclass seek full refunds and all other damages and remedies permitted by law.

\\\
\\\
\\\
\\\

**TWENTIETH COUNT**
**BREACH OF MISSISSIPPI'S IMPLIED WARRANTY OF**
**MERCHANTABILITY**
**(Miss. Code §§ 75-2-314 and 75-2A-212)**
**(Brought by Ms. Dennis on behalf of the Mississippi Subclass)**

413.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

414.   Defendants are "merchants" under Miss. Code § 75-2-104(1).

415.   The FasciaBlasters are "goods" under Miss. Code § 75-2-105(1).

416.   An implied warranty of merchantability arose with respect to the sale of the FasciaBlaster under Miss. Code §§ 75-2-314 and 75-2A-212.

417.   Under the implied warranty of merchantability, goods must be fit for the ordinary purpose for which they are used.

418.   The ordinary purpose for which the FasciaBlasters are used is to achieve the health benefits promised by the Defendants as described above.

419.   The Defendants have breached the implied warranty of merchantability because the FasciaBlasters do not confer the health benefits promised by the Defendants.

420.   As a result of the Defendants' breach of the implied warranty of merchantability Ms. Dennis and the Mississippi Subclass have been damaged in an amount to be proven at trial.

**TWENTY-FIRST COUNT**
**VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**
**(La. Rev. Stat. § 51:1401, *et seq*.)**
**Brought by Ms. Frederick on Behalf of the Louisiana Subclass)**

421.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

422.   Defendants, Plaintiffs, and the Louisiana Class are "persons" within

the meaning of La. Rev. Stat. § 51:1402(8).

423.   1652. Plaintiffs and the Louisiana Class are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1).

424.   Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

425.   The Louisiana Unfair Trade Practices and Consumer Protection Law makes unlawful "deceptive acts or practices in the conduct of any trade or commerce."  La. Rev. Stat. § 51:1405(A).

426.   Defendants engaged in "deceptive acts or practices" by representing that the use of the FasciaBlasters could confer the promised health benefits.

427.   Contrary to Defendants' representations, the FasciaBlaster cannot confer these health benefits.

428.   Defendants' misrepresentations were material to Plaintiffs' and Class Members' decision to purchase the FasciaBlaster and to pay the price they did for it.

429.   Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

430.   Plaintiffs seek actual damages in an amount to be determined at trial, treble damages, an order enjoining Defendants' deceptive conduct, attorneys fees and costs, and all other appropriate remedies.

**TWENTY-SECOND COUNT**
**BREACH OF WARRANTY AGAINST REDHIBITORY DEFECTS UNDER LOUISIANA LAW**
**(La. Civ. Code art. 2520)**
**(Brought by Ms. Frederick on Behalf of the Louisiana Subclass)**

431.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

432.   Louisiana Civil Code art. 2520 provides a warranty against redhibitory defects which render a consumer good partially or entirely useless.

433. Defendants are "sellers" under Louisiana Civil Code art. 2520.

434. Ms. Frederick and the members of the Louisiana Subclass are "buyers" under Louisiana Civil Code art. 2520.

435. The FasciaBlaster is entirely useless because it does not confer the health benefits described above.

436. In the alternative, the FasciaBlaster is partially useless because it does not confer the health benefits described above.

437. Defendants were provided notice of the uselessness of the FasciaBlaster through numerous consumer complaints and the notice letters of Plaintiffs.

438. Ms. Frederick and the Louisiana Subclass have been damaged in an amount to be proven at trial.

**TWENTY-THIRD COUNT**
**Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq.***
**(On Behalf of Plaintiffs Sue Grlicky and Carol Richter and the Ohio State Class Members)**

439. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

440. Ms. Grlicky and Ms. Richter assert this claim individually and on behalf of Ohio Class members.

441. Defendants, Ms. Grlicky, Ms. Richter, and the members of the Ohio Class are "persons" within the meaning of Ohio Rev. Code § 1345.01(B).

442. Defendants are "suppliers" as defined by Ohio Rev. Code § 1345.01(C).

443. Ms. Grlicky, Ms. Richter, and the Ohio Class are "consumers" as that term is defined in Ohio Rev.Code § 1345.01(D), and their purchase of the FasciaBlasters are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

444.   Ohio Rev. Code § 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  The Ohio CSPA prohibits a supplier from (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the product is not; and (iii) representing that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.

445.   In the course of its business, Defendants concealed and suppressed material facts concerning the FasciaBlasters.

446.   Defendants violated the  provisions of the Ohio CSPA, at a minimum by: (1) representing that the FasciaBlasters have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the FasciaBlasters are of a particular standard, quality, and grade when they are not; (3) advertising the FasciaBlasters with the intent not to sell them as advertised; (4) failing to disclose information concerning the FasciaBlasters with the intent to induce consumers to purchase the FasciaBlasters.

447.   In the course of its business, Defendants willfully failed to disclose and actively concealed the truth that that FasciaBlasters cannot confer the promised benefits and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the FasciaBlasters.

448.   Defendants intentionally and knowingly misrepresented material facts regarding the FasciaBlasters with intent to mislead Ms. Grlicky, Ms. Richter, and the Ohio Class.

449.   Defendants knew or should have known that their conduct violated the Ohio CSPA.

450.   The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Defendants in this complaint, including, but not limited to, the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a substantial defect, constitute deceptive sales practices in violation of the CSPA. These cases include, but are not limited to, the following:

- *Mason v. Mercedes Benz USA, LLC*
  (OPIF #10002382);
- *State ex rel. Betty D. Montgomery v. Ford Motor Co.*
  (OPIF #10002123);
- *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.*
  (OPIF #10002025);
- *Bellinger v. Hewlett-Packard Co.*,
  No. 20744 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);
- *Borror v. MarineMax of Ohio*,
  No. OT-06-010 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);
- *State ex rel. Jim Petro v. Craftmatic Organization, Inc.*
  (OPIF #10002347);
- *Cranford v. Joseph Airport Toyota, Inc.*
  (OPIF #10001586);
- *Brown v. Spears*
  (OPIF #10000403);
- *Brinkman v. Mazda Motor of America, Inc.*
  (OPIF #10001427);

- *Mosley v. Performance Mitsubishi aka Automanage*
  (OPIF #10001326); and
- *Walls v. Harry Williams dba Butch's Auto Sales*
  (OPIF #10001524).

451.   Defendant owed Ms. Grlicky, Ms. Richter, and the Ohio class a duty to disclose the truth about the FasciaBlasters because they:

a.     possessed exclusive knowledge that they were manufacturing, selling, and distributing FasciaBlasters that could not confer the promised benefits;

b.     intentionally concealed the foregoing from, Ms. Grlicky and the Ohio Class members.

452.   The ability of the FasciaBlaster to confer the promised benefits was material to Ms. Grlicky, Ms. Richter, and the Ohio Class members.

453.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Ms. Grlicky and Ms. Richter, about the ability of the FasciaBlasters to confer the promised benefits.

454.   Ms. Grlicky, Ms. Richter, and the Ohio Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant' misrepresentations and its concealment of and failure to disclose material information.  Plaintiff and the Ohio Class members who purchased the FasciaBlasters would not have purchased them at all if they knew the truth that the FasciaBlasters cannot confer the promised benefits.

455.   Defendant has an ongoing duty to all Defendants customers to refrain from unfair and deceptive practices under the Ohio CSPA. All owners of FasciaBlasters suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

456.   Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

457.   As a direct and proximate result of Defendant' violations of the Ohio CSPA, Ms. Grlicky, Ms. Richter, and the Ohio Class have suffered injury-in-fact and/or actual damage.

458.   Pursuant to Ohio Rev. Code § 1345.09, Ms. Grlicky, Ms. Richter, and the Ohio Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, actual damages - trebled, and fees, costs, and any other just and proper relief, to the extend available under the Ohio CSPA.

### TWENTY-FOURTH COUNT
### Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01, *et seq.*
### (On Behalf of Plaintiffs Sue Grlicky, Carol Richter and the Ohio Class Members)

459.   Ms. Grlicky, Ms. Richter, and the Ohio Class re-allege and incorporate the preceding paragraphs as if fully set forth herein.

460.   Ms. Grlicky and Ms. Richter assert this claim individually and on behalf of Ohio Class members.

461.   Defendants, Ms. Grlicky, Ms. Richter, and the Ohio Class are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

462.   Defendants engaged in "the course of [its] business" within the meaning of Ohio Rev. Code § 4165.02(A) with respect to the acts alleged herein.

463.   The Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02(A) ("Ohio DTPA") provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following: "(7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that

69

they do not have …; (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; … [or] (11) Advertises goods or services with intent not to sell them as advertised."

464.   In the course of its business, Defendants made false and misleading statements and concealed and suppressed material facts concerning the FasciaBlasters.

465.   Defendant thus violated the  provisions of the Ohio DTPA by: (1) representing that the FasciaBlasters have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the FasciaBlasters are of a particular standard, quality, and grade when they are not; (3) advertising the FasciaBlasters with the intent not to sell them as advertised; (4) failing to disclose information concerning the FasciaBlasters with the intent to induce consumers to purchase the FasciaBlasters.

466.   In the course of its business, Defendants willfully made misrepresentations and failed to disclose and actively concealed the the truth about the FasciaBlasters and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the FasciaBlasters.

467.   Defendants intentionally and knowingly misrepresented material facts regarding the FasciaBlasters with intent to mislead Plaintiffs and the Ohio Class.

468.   Defendants knew or should have known that its conduct violated the Ohio DTPA.

469.   Defendants owed Ms. Grlicky, Ms. Richter, and the Ohio Class a duty to disclose the Defects in the FasciaBlasters because it:

      a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing FasciaBlasters that could not confer the promised benefits;

      b.   intentionally concealed the foregoing from Ms. Grlicky and Ohio Class members.

470.   The FasciaBlasters' ability confer the promised benefits Defendants' concealment of the truth about the FasciaBlasters were material to Ms. Grlicky, Ms. Richter, and the Ohio Class.

471.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Ms. Grlicky and Ms. Richter, about the ability of the FasciaBlasters to confer the promised benefits.

472.   Ms. Grlicky, Ms. Richter, and the Ohio Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information.  Ms. Grlicky, Ms. Richter, and the Ohio Class members who purchased the FasciaBlasters would not have purchased at all if they had known the truth that the FasciaBlasters could not confer the promised benefits.

473.   Defendants have an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Ohio DTPA.  All owners of FasciaBlasters suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

474.   Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

475.   As a direct and proximate result of Defendant' violations of the Ohio DTPA, Ms. Grlicky, Ms. Richter, and the Ohio Class have suffered injury-in-fact and/or actual damage.

476.   Pursuant to Ohio Rev. Code § 1345.09, Ms. Grlicky, Ms. Richter, and the Ohio Class seek an order enjoining Defendants's unfair and/or deceptive acts or practices, actual damages - trebled, and fees, costs, and any other just and proper relief, to the extend available under the Ohio DTPA.

### TWENTY-FIFTH COUNT
### Express Warranty, Ohio Rev. Code § 1302.26, et seq.) (U.C.C. § 2-313)
### (On Behalf of Plaintiffs Sue Grlicky, Carol Richter and Ohio Class Members)

477.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

478.   Ms. Grlicky and Ms. Richter assert this claim individually and on behalf of Ohio Class members.

479.   Defendants are and were at all relevant times "merchants" with respect to the FasciaBlasters under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of the FasciaBlasters under § 1302.01(4).

480.   The FasciaBlasters are and were at all relevant times "goods" within the meaning of Ohio Rev. Code § 1310.01(A)(20).

481.   Defendants marketed and advertised the FasciaBlasters as able to confer certain health benefits as described herein. These representations formed the basis of the bargain that was reached when Plaintiffs and other Ohio Class members purchased the FasciaBlasters.

482.   However, the FasciaBlasters are incapable on conferring the promised benefits.

483.   Defendants breached the express warranty by selling the FasciaBlasters, which could not confer the promised health benefits.

484.   The FasciaBlasters were not of merchantable quality and were unfit for the ordinary purposes for which they are used and do not perform as warranted.

485.   Defendants were provided notice of the fact that the FasciaBlasters could not confer the promised benefits and knew, or should have known, that the FasciaBlasters could not confer the promised benefits much earlier.

486.   Affording Defendants a reasonable opportunity to cure its breach of express warranties would be futile here because Defendants have known of and concealed the truth about the FasciaBlasters.

487.   Any attempt by Defendant to disclaim or limit the express warranties is unconscionable and unenforceable here.  Specifically, any warranty limitation is unenforceable because Defendants knowingly sold a product that could not work as promised. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Class.

488.   Defendant knew that the FasciaBlasters could not confer the promised benefits and did not conform to their warranties. Ms. Grlicky, Ms. Richter, and members of the Ohio Class were induced into purchasing the FasciaBlasters under false pretenses.

489.   Ms. Grlicky, Ms. Richter, and members of the Ohio Class have been excused from performance of any warranty obligations as a result of Defendants' conduct as described herein.

490.    As a direct and proximate result of Defendants' breach of express warranties, Ms. Grlicky, Ms. Richter, and members of the Ohio Class have been damaged in an amount to be determined at trial.

**TWENTY-SIXTH COUNT**
**Implied Warranty Of Merchantability, Ohio Rev. Code §§ 1302.27 and 1310.19**
**(On Behalf of Plaintiffs Sue Grlicky, Carol Richter and Ohio Class Members)**

491.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

492.   Ms. Grlicky and Ms. Richter assert this claim individually and on behalf of Ohio Class members.

493.   Defendants are and were at all relevant times "merchants" with respect to the FasciaBlasters under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of the FasciaBlasters under § 1302.01(4).

494.   The FasciaBlasters are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8) and 1310.01(A)(8).

495.   A warranty that the FasciaBlasters were in merchantable condition and fit for the ordinary purpose for which processors are used is implied by law pursuant to Ohio Rev. Code §§ 1302.27 and 1310.19.

496.   The FasciaBlasters, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used.

497.   Specifically, the FasciaBlasters cannot confer the health benefits promised by Defendants.

498.   Defendants knew of, and were provided notice of, the truth about the FasciaBlasters due to numerous complaints posted online.

499.   As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Ms. Grlicky, Ms. Richter, and the other Ohio Class members have been damaged in an amount to be proven at trial.

## TWENTY-SEVENTH COUNT
### Unlawful Deceptive Acts or Practices, NY Gen. Bus. Law § 349
### (On Behalf of Plaintiff Brooke Neufeld and New York Class Members)

500.   Plaintiffs repeat and re-allege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

501.   Ms. Neufeld asserts this claim individually and on behalf of New York Class members.

502.   New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

503.   The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Ms. Neufeld and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the FasciaBlasters.

504.   There is no adequate remedy at law.

505.   Defendants' improper consumer-oriented conduct is misleading in a material way in that it induced Ms. Neufeld and the New York Subclass Members to purchase FasciaBlasters when they otherwise would not have.

506.   Defendants made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

507.   Ms. Neufeld and the New York Subclass Members have been injured because they paid for a product that does not, and cannot, work as represented and also risks injury to consumers. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

508.   Defendants' deceptive and misleading practices constitute deceptive acts and practices in the conduct of business in violation of New York General Business Law §349(a) and Ms. Neufeld and the New York Subclass Members have been damaged thereby.

509.   As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Ms. Neufeld and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

\\\

## **TWENTY-EIGHTH COUNT**
## **False Advertising, NY Gen. Bus. Law § 350**
## **(On Behalf of Plaintiff Brooke Neufeld and New York Class Members)**

510.   Plaintiffs repeats and re-allege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

511.   Ms. Neufeld asserts this claim individually and on behalf of New York Class members.

512.   N.Y. Gen. Bus. Law § 350 provides, in part, as follows:
False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

513.   N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

514.   Defendants' advertising falsely represented the health benefits of the FasciaBlasters.

515.   Ms. Neufeld and the New York Subclass Members have been injured because they purchased FasciaBlasters in reliance on Defendant's misrepresentations.

76

516.   Defendants made their untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

517.   Defendants conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

518.   Defendants made the material misrepresentations and omissions described in this Complaint in Defendants' advertising.

519.   Defendants' material misrepresentations and omissions were substantially uniform in content, presentation, and impact upon consumers at large.

520.   As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**TWENTY-NINTH COUNT**
**Express Warranty, NY UCC §§ 2-313 and 2A-210**
**(On Behalf of Plaintiff Brooke Neufeld and New York Class Members)**

521.   Plaintiffs repeat and re-allege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

522.   Plaintiff asserts this claim individually and on behalf of New York Class members.

523.   Defendants are and were at all relevant times "merchants" with respect to the FasciaBlasters under New York's Article 2 of the Uniform Commercial Code, NY UCC Law § 2-104(1) and "sellers" of the FasciaBlasters under § 2-103(1)(d).

524.   The FasciaBlasters are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

525.   Defendants marketed and advertised the FasciaBlasters as being able to confer certain health benefits.  Such representations formed a basis of the bargain

that was reached when Ms. Neufeld and other New York Class members purchased the FasciaBlasters.

526.   However, Defendants' representations about the health benefits of the FasciaBlasters are false.

527.   Defendants breached the express warranties by selling FasciaBlasters knowing that they could not live up to Defendants' representations.

528.   The FasciaBlasters were not of merchantable quality and were unfit for the ordinary purposes for which they are intended to be used and do not perform as warranted.

529.   Defendants were provided notice by complaints from consumers and knew or should have known that the FasciaBlasters could not live up to their warranties.

530.   Any attempt by Defendants to disclaim or limit the express warranties made to consumers is unconscionable and unenforceable here.   Specifically, any warranty limitation is unenforceable because Defendants knowingly sold a product that Defendants knew could not live up to its warranties. A gross disparity in bargaining power existed between Defendants and members of the Class, and Defendants knew or should have known that the FasciaBlasters could not live up their warranties.

531.   Defendants knew that the FasciaBlasters did not conform to their warranties and Ms. Neufeld and members of the New York Class were induced into purchasing FasciaBlasters under false pretenses.

532.   Ms. Neufeld and members of the New York Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

533.   As a direct and proximate result of Defendants' breach of express warranties, Ms. Neufeld and members of the New York Class have been damaged in an amount to be determined at trial.

## THIRTIETH COUNT
## Implied Warranty of Merchantability, NY UCC Law §§ 2-314 and 2A-212
## (On Behalf of Plaintiff Brooke Neufeld and New York Class Members)

534.   Plaintiffs repeat and re-allege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

535.   Ms. Neufeld asserts this claim individually and on behalf of New York Class members.

536.   Defendants are and were at all relevant times "merchants" with respect to the FasciaBlasters under New York's Uniform Commercial Code Law § 2-104(1) and "sellers" of the FasciaBlasters under § 2-103(1)(d).

537.   The FasciaBlasters are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

538.   A warranty that the FasciaBlasters were in merchantable condition and fit for the ordinary purpose for which they are used is implied by law pursuant to N.Y. UCC Law §§ 2- 314 and 2A-212.

539.   The FasciaBlasters, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used.

540.   Specifically, the FasciaBlasters cannot confer any of the health benefits described by Defendants.

541.   Defendants were provided notice of these issues by consumer complaints.

542.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Ms. Neufeld and the other New York Class members have been damaged in an amount to be proven at trial.

**THIRTY-FIRST COUNT**
**VIOLATION OF OTHER STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiffs and All Class Members)**

543.   Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

544.   Plaintiffs and Class Members have been injured as a result of Defendants' violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiffs and Class Members based on Defendants' fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

545.   Defendants' conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.   **Alaska:** Defendants' practices violated Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.   **Arkansas:**  Defendants' practices violated Arkansas Code Ann. § 4-88-101, *et seq.*

c.   **Colorado**:  Defendants' practices violated Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

d.   **Connecticut:**  Defendants' practices violated Connecticut's Gen. Stat. § 42-110a, *et seq.*

e.   **Delaware:**  Defendants' practices violated Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

f.   **District of Columbia:**  Defendants' practices violated the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

g. **Hawaii:**  Defendants' practices violated the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

h. **Idaho:**  Defendants' practices violated Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

i. **Illinois:**  Defendants' acts and practices violated Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

j. **Indiana:**  Defendants' practices violated Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

k. **Kansas:**  Defendants' practices violated Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq*.

l. **Kentucky:**  Defendants' practices violated Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

m. **Maine:**  Defendants' practices violated the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq*. and 10 Me. Rev. Stat. Ann. § 1101, *et seq*.

n. **Maryland:**  Defendants' practices violated Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq*.

o. **Massachusetts:**  Defendants' practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

p. **Michigan:**  Defendants' practices violated Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*.

q. **Minnesota:**  Defendants' practices violated Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful

Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

r. **Missouri:** Defendants' practices violated Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

s. **Nebraska:** Defendants' practices violated Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

t. **New Hampshire:** Defendants' practices violated New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

u. **New Jersey:** Defendants' practices violated New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

v. **New Mexico:** Defendants' practices violated New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

w. **North Carolina:** Defendants' practices violated North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

x. **North Dakota:** Defendants' practices violated North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

y. **Oklahoma:** Defendants' practices violated Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

z. **Oregon:** Defendants' practices violated Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

aa. **Pennsylvania:** Defendants' practices violated Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

bb. **Rhode Island:**  Defendants' practices violated Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

cc. **South Dakota:**  Defendants' practices violated South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

dd. **Texas:**  Defendants' practices violated Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

ee. **Utah:**  Defendants' practices violated Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

ff. **Vermont:**  Defendants' practices violated Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

gg. **Washington:**  Defendants' practices violated Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

mm. **West Virginia:**  Defendants' practices violated West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

*nn.* **Wisconsin:**  Defendants' practices violated Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

oo. **Wyoming:**  Defendants' practices violated Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101*, et seq.*

546.  Defendants violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the use of the FasciaBlasters could confer the promised health benefits.

547.  Contrary to Defendants' representations, the FasciaBlaster cannot confer these health benefits.

548.  Defendants' misrepresentations were material to Plaintiffs' and Class

Members' decision to purchase the FasciaBlaster and to pay the price they did for it.

549.   Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

550.   Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**THIRTY-SECOND COUNT**
**BREACH OF EXPRESS WARRANTY LAWS OF OTHER STATES**
**(On Behalf of Plaintiffs and All Class Members)**

551.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

552.   Defendants provided the Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the use of the FasciaBlaster will confer the promised health benefits.

553.   The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

554.   These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

555.   Plaintiffs and Class Members reasonably relied upon the Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Product.

556.   Within a reasonable time after she knew or should have known of Defendants' breach, Plaintiff, on behalf of herself and Class Members, placed Defendants on notice of their breach.

557.   Defendants breached the express warranty because the use of the

FasciaBlaster does not confer the promised health benefits.

558.   Defendants thereby breached the following state warranty laws:

a.   Code of Ala. § 7-2-313;

b.   Alaska Stat. § 45.02.313;

c.   A.R.S. § 47-2313;

d.   A.C.A. § 4-2-313;

e.   Cal. Comm. Code § 2313;

f.   Colo. Rev. Stat. § 4-2-313;

g.   Conn. Gen. Stat. § 42a-2-313;

h.   6 Del. C. § 2-313;

i.   D.C. Code § 28:2-313;

j.   Fla. Stat. § 672.313;

k.   O.C.G.A. § 11-2-313;

l.   H.R.S. § 490:2-313;

m.   Idaho Code § 28-2-313;

n.   810 I.L.C.S. 5/2-313;

o.   Ind. Code § 26-1-2-313;

p.   Iowa Code § 554.2313;

q.   K.S.A. § 84-2-313;

r.   K.R.S. § 355.2-313;

s.   11 M.R.S. § 2-313;

t.   Md. Commercial Law Code Ann. § 2-313;

u.   106 Mass. Gen. Laws Ann. § 2-313;

v.   M.C.L.S. § 440.2313;

w.   Minn. Stat. § 336.2-313;

x.   Miss. Code Ann. § 75-2-313;

y.   R.S. Mo. § 400.2-313;

z.     Mont. Code Anno. § 30-2-313;

aa.    Neb. Rev. Stat. § 2-313;

bb.    Nev. Rev. Stat. Ann. § 104.2313;

cc.    R.S.A. 382-A:2-313;

dd.    N.J. Stat. Ann. § 12A:2-313;

ee.    N.M. Stat. Ann. § 55-2-313;

ff.    N.Y. U.C.C. Law § 2-313;

gg.    N.C. Gen. Stat. § 25-2-313;

hh.    N.D. Cent. Code § 41-02-30;

ii.    Il. O.R.C. Ann. § 1302.26;

jj.    12A Okl. St. § 2-313;

kk.    Or. Rev. Stat. § 72-3130;

ll.    13 Pa. Rev. Stat. § 72-3130;

mm.   R.I. Gen. Laws § 6A-2-313;

nn.    S.C. Code Ann. § 36-2-313;

oo.    S.D. Codified Laws, § 57A-2-313;

pp.    Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.   Wis. Stat. § 402.313;

xx.    Wyo. Stat. § 34.1-2-313.

559.   As a direct and proximate result of Defendants' breach of express warranty, Plaintiffs and Class Members were damaged in an amount to be proven at

trial.

## THIRTY-THIRD COUNT
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY- LAWS OF OTHER STATES
### (On Behalf of Plaintiffs and All Class Members)

560.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

561.   Defendants are in the business of manufacturing, distributing, marketing and advertising the FasciaBlaster.

562.   Under the Uniform Commercial Code's implied warranty of merchantability, the Defendants warranted to Plaintiffs and Class Members that the FasciaBlaster could confer the health benefits described above.

563.   Defendants breached the implied warranty of merchantability because the FasciaBlaster could not and cannot confer the health benefits described above.

564.   Reasonable consumers expecting a product that can confer the promised health benefits would not accept the FasciaBlaster if they knew that it could not confer the promised health benefits.

565.   In addition, the FasciaBlaster does not conform to the representations made by Defendants.

566.   The inability of the FasciaBlaster to confer the promised health benefits was wholly the Defendants' fault and without Plaintiff's or Class Members' fault or neglect, and was solely due to the Defendants' manufacture and distribution of the FasciaBlaster to the public.

567.   As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the FasciaBlaster together with interest thereon from the date of purchase.

\\\
\\\
\\\

**THIRTY-FOURTH COUNT**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR**
**PURPOSE LAWS OF OTHER STATES**
**(On Behalf of Plaintiffs and All Class Members)**

568.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

569.    Defendants knew or had reason to know that the Plaintiffs and other Class Members were buying the FasciaBlaster with the specific purpose of buying a product that could confer the promised health benefits.

570.    Plaintiffs and the other Class Members relied on the Defendants' statements in selecting FasciaBlaster to fit their specific intended use, which was to achieve the promised health benefits.

571.    Defendants held themselves out as having particular knowledge of the FasciaBlaster and its health benefits.  Plaintiffs' and Class Members' reliance on Defendants in selecting Defendants' Product to fit their particular purpose was reasonable given Defendants' claims and representations in their advertising and statements concerning the health benefits conferred by the use of the FasciaBlaster.

572.    Plaintiffs and the other Class Members' reliance on Defendants in selecting the FasciaBlaster to fit their particular use was reasonable given Defendants' particular knowledge of the FasciaBlaster.

573.    As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the FasciaBlasters, together with interest thereon from the date of purchase.

**THIRTY-FIFTH COUNT**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and All Class Members)**

574.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

575.    Defendants have benefited by knowingly selling a worthless product.

88

576.   Defendants have received and retained the benefits of the sales.

577.   It is unjust, unconscionable, and inequitable for Defendant to retain these benefits.

578.   As a result of Defendants' misconduct, Defendants should be required to disgorge the amount of their unjust enrichment in an amount to be determined at trial.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representatives of the nationwide Class and Subclasses if appropriate under Rule 23 of the FRCP;

(b) Awarding monetary damages, including treble damages;

(c) Awarding injunctive relief preventing the Defendants from continuing to sell the FasciaBlaster and make false and unsupportable statements in advertising the FasciaBlaster;

(d) Awarding punitive damages;

(e) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts, and reimbursement of Plaintiffs' expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated:  April 17, 2018                    **LAW OFFICES OF PERRIN F. DISNER**

By: __/s/ Perrin Disner_____
Perrin F. Disner, Esq.

4630 Sepulveda Boulevard, Suite 105
Sherman Oaks, CA 91403
Phone: 310-742-7944
Fax: 888-544-5154
pdisner@disnerlaw.com

*Counsel for Plaintiffs*
*Emily Elson, Stacy Haavisto,*
*Loretta Oakes, Michelle Lanum,*
*Sue Grlicky, Tilly Dorenkamp,*
*Dina Salas, Arlene Rodriguez,*
*Carol Richter, and Brooke Neufeld*

**SHOOP, A PROFESSIONAL LAW CORPORATION**
David R. Shoop, Esq.
Thomas S. Alch, Esq.
350 S. Beverly Drive, Suite 330
Beverly Hills, CA 90212
Tel: (310) 277-1700
Fax: (310) 277-8500
david.shoop@shoop.law.com

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq.
Adam Gonnelli, Esq.
Jeremy Francis, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

**WALSH PLLC**
Bonner C. Walsh, Esq.
1561 Long Haul Road
Grangeville, ID 83530
Tel:(541) 359-2827
Fax: (866) 503-8206
bonner@walshpllc.com

**LEEDS BROWN LAW, P.C.**
Jeffrey Brown, Esq.
One Old Country Road, Suite 347
Carle Place, NY 11514-1851
(516) 873-9550
*jbrown@leedsbrownlaw.com*

*Counsel for Plaintiffs*
*Sharon Dalton, Allyson McCarthy,*
*Sheila Smith, Mary Dennis,*
*Kelli Frederick, and Joey Campbell*