## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **EMILY ELSON, et. al.** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **Vs.** | § | **Case No. 4:20-CV-02125** |
| | § | |
| **ASHLEY BLACK, et.al.** | § | **DEFENDANTS' RULE 12F** |
| | § | **MOTION TO STRIKE** |
| *Defendants.* | § | **CLASS ALLEGATIONS** |

## <u>DEFENDANTS' MOTION TO STRIKE THE PLAINTIFFS' CLASS ALLEGATIONS</u>

Defendants Ashley Black, ADB Innovations, LLC, Ashley Black Guru, Ashley Diana Black International Holdings, LLC, Ashley Black Fasciology, LLC, ADB Interests, LLC. (collectively referred to as "Defendants") file this Motion to Strike the Plaintiffs' Class Allegations, pursuant to Federal Rules of Civil Procedure 12(f) and 23(d), and in support of such motion will show as follows:

## <u>INTRODUCTION</u>

"Generally, claims involving individual reliance are unsuitable for class certification." *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613, 630 (E.D. Tex. 2004), *citing Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 219 (5ᵗʰ Cir. 2003) ("Cases that involve individual reliance fail the predominance test" for class certification); *Simon v. Merrill Lynch, Pierce, Fenner & Smith*, 482 F.2d 880, 882-83 (5th Cir. 1973) ("If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action"). Here, the Plaintiffs originally alleged that they purchased the Defendants' products in reliance on allegedly fraudulent representations contained in eight different sources of information spread over a two-year time period. In an amended complaint, the Plaintiffs have blatantly contradicted their prior allegations and implausibly alleged that each of the sixteen named Plaintiffs relied upon a single paragraph located on the checkout page of the Defendants' website. The Plaintiffs' original allegations establish that class certification is improper, and the Plaintiffs' class allegations must be stricken.

## FACTUAL BACKGROUND

### A.    The Subject Products

The subject putative class action concerns the Defendants marketing of massage devices that include the following (collectively referred to herein as the "Products"):[1]



| **The FasciaBlaster** | **The MasterBlaster** | **The FaceBlaster** |

| **The Mini 1** | **The Mini 2** | **The Nugget** |

The Plaintiffs allege that consumers of the Products personally rub the Products back and forth across their skin to massage the muscles and tissue underneath the skin. (ECF No. 37).

### B.    Procedural Background

This litigation consists of two consolidated putative class actions: (1) the *Elson Action* that 10 Plaintiffs originally filed in the Superior Court for Los Angeles County, California on October 23, 2017 (ECF Nos. 1-3 to 1-4); and (2) the *Dalton Action* that 6 different Plaintiffs originally filed in the

---

[1] The Plaintiffs also allege that the Defendants manufacture and market oils and lotions for use during and after using the massage devices.

in the U.S. District Court for the Central District of California on January 23, 2018 (approximately three months after the Elson action). (See Original Dalton Complaint, attached hereto as Exhibit A).

On January 5, 2018, the Defendants removed the *Elson Action* to the Central District of California. (ECF No. 1). On January 12, 2018, the Defendants moved to dismiss the *Elson Action* for failure to state a claim, *inter alia*, and moved to strike the Plaintiffs' class allegations. (ECF Nos. 10-11). On January 23, 2018, the Dalton Plaintiffs filed the *Dalton Action* in the Central District of California. (Ex. A). On February 1, 2018, the Central District of California consolidated the *Elson Action* and the *Dalton Action* and granted the Plaintiffs leave to file an amended, consolidated complaint. (ECF No. 31).

On April 17, 2018, the Plaintiffs filed the subject amended, consolidated complaint (the "Amended Complaint"). (ECF No. 37). Of the 10 Plaintiffs that filed the original *Elson Action*, two Plaintiffs did not join the Amended Complaint (Lefebvre and Gaines). (ECF No. 37). However, the Amended Complaint named two new Plaintiffs (Richter and Neufeld). (ECF No. 37). All 6 of the Dalton Plaintiffs joined the Amended Complaint. (ECF No. 37). Accordingly, the Amended Complaint includes 16 named Plaintiffs. (ECF No. 37).

On August 14, 2018, the Defendants moved to dismiss the Amended Complaint for failure to state a claim, and moved to strike the class allegations. (ECF Nos. 63-64). Further, the Defendants moved to dismiss some of the individual Plaintiffs' claims for lack of standing. (ECF No. 45). Also, some of the individual Defendants moved to dismiss for insufficient process, insufficient service of process, and lack of personal jurisdiction. (ECF Nos. 46-47).

On October 15, 2018, the Plaintiffs filed their responses to the Defendants' dispositive motions. (ECF Nos. 76-81). On November 14, 2018, the Defendants filed their reply briefs in support of their dispositive motions. (ECF Nos. 87-92).

On September 25, 2019, the Central District of California ruled on the Defendants' dispositive motions as follows:

- Regarding process and service of process, the Court found that the Defendants were adequately served and denied these motions.

- Regarding personal jurisdiction, the Court found that the Plaintiffs failed to establish that the Court had personal jurisdiction over all the Defendants, and the Court ordered the case transferred to this District Court.

- Regarding the motion to dismiss for failure to state a claim and the motion to strike the class allegations, the Court struck those motions without prejudice pursuant to the Court's local rules because the briefs exceeded the applicable page limits. Accordingly, the Court did not rule on the merits of those motions. (ECF No. 96).

On June 17, 2020, the transfer of this case from the Central District of California to this District was completed. On August 3, 2020, this Honorable Court allowed the undersigned to substitute as counsel for the Defendants. On September 1, 2020, this Honorable Court granted the Defendants an extension until September 7, 2020 to answer or otherwise respond to the Amended Complaint.

**C.    Plaintiffs' Allegations**

    1.    <u>The Original Elson Complaint</u>

The original complaint in the *Elson Action* asserted 15 causes of action sounding in personal injury torts, breach of warranty claims, fraud claims, and violations of California consumer protection statutes. In the Amended Complaint, the Plaintiffs all allege that they read and relied upon a single representation on the checkout page of the Defendants' website before they purchased the subject Products. However, the Plaintiffs' Amended Complaint directly contradicts the Plaintiffs' allegations in the original *Elson Action* complaint regarding the materials they reviewed and relied upon before they purchased the subject Products.  Specifically, the Plaintiffs in the original *Elson Action* Complaint alleged the following:

- Elson alleged that she purchased the Subject Product "because she saw advertising—on social media website Facebook—which touted the device's ability to reduce cellulite." (ECF No 1-3; p. 8, ¶ 11).

- Haavisto alleged that she relied on "targeted" ads on Facebook. (ECF No. 1-3; p. 10, ¶ 16).

- Oakes alleged that she purchased the Product after conducting "ample" research on cellulite reduction. (ECF No. 1-3; p. 14, ¶ 24).

- Lanum alleged that she purchased the Product based on a friend's recommendation and after "she looked into it." (ECF No. 1-3; p. 15, ¶ 28).

- Grlicky alleged that she researched the Product on Google, reviewed ads on Facebook, "assiduously researched" the Product over a period of four weeks, joined an Ashley Black Guru discussion site, reviewed over one hundred product reviews, watched numerous promotional videos, and read "cover to cover" a book authored by Ashley Black regarding the Products. (ECF No. 1-3; p. 20-21, ¶ 42).

- Dorenkamp alleged that she purchased the Product based on a friend's recommendation, and "carefully adhered to the instructions" provided in YouTube videos. (ECF No. 1-3; p. 23, ¶ 48).

- Salas alleged that she purchased the Product based on her cousin's recommendation, and continued using the Product based on "success stories" and "before and after" photographs posted on the products Facebook page, as well as recommendations relating to the Product's effect on multiple sclerosis. (ECF No. 1-3; p. 25-26, ¶¶ 56-58).

- Rodriguez alleged that she relied on Facebook ads and the Facebook discussion group relating to the Product. (ECF No. 1-3; p. 28, ¶ 63).

- Lefebvre – who has not joined the Amended Complaint – alleged that she researched the Products after seeing ads on Facebook, "which then led her to the FasciaBlaster website, Defendants' promotional videos, and public Internet forums populated by 90,000+ putative satisfied customers." (ECF No. 1-3; p. 18, ¶ 36).

- Gaines – who has not joined the Amended Complaint – alleged that he received the Product as a gift from his granddaughter (Plaintiff Lanum), and that Lanum told him to use the Product as specified on Defendants' Facebook page, "online videos, photos and testimonials" and "other marketing and instructional materials." (ECF No. 1-3; p. 32, ¶ 71).

The Plaintiffs alleged in the original *Elson Action* complaint that consumers of the Defendants' products relied on the following "non-exhaustive" list of representations regarding the product:

1.  The Products are "FDA Approved";

2.  The Products were subject to a clinical study and scientific research;

3.  Statements that Ashley Black is a Licensed Massage Therapist, scientist, and "Inventor of the Year" nominee, spokespersons Dari Sami and Bart Jameson are doctors, and spokesperson Kathleen Stross is a neuroscientist;

4.  Statements in promotional videos on May 18, 2017 and August 31, 2017 that no women had reported serious injuries using the Products;

5.  Statements that the Products do not have any effect on hormones or estrogen levels;

6.  Statements that the Products reduce the appearance of varicose veins and cellulite;

7.  Statements that the Products reduce lines and wrinkles;

8.  Statements that the Products are "healthy, restorative, and cleansing;" and

9.  Before and after photos on Defendants' websites and social media pages. (ECF No. 1-3, pp. 36-40, ¶ 84).

The *Elson Action* Plaintiffs sought to represent a nationwide class defined as "all persons who have purchased and/or used FasciaBlaster, or who will have done so at some point prior to resolution of the Plaintiffs' claims herein." (ECF No. 1-3; p. 33, ¶ 73). The *Elson Action* Plaintiffs alleged that they sustained an "array of physical maladies" from using the Products, including, *inter alia*, weight gain and weight loss, sleep loss, aggravation of various pre-existing mental illnesses, aggravation of Epstein-Barr virus, oral herpes, hormonal changes complicating efforts to get pregnant, and digestive issues such as nausea, vomiting, constipation, and diarrhea. (ECF No. 1-3). The *Elson Action* Plaintiffs proposed to represent seven separate subclasses based on the nature of the personal injuries sustained, including the following: (1) Endocrine problems; (2) Cardiovascular problems; (3) Digestive problems; (4) Neurological problems; (5) Psychological problems; (6) Defamation, harassment, and cyber-bullying; and (7) Aesthetic harms. (ECF No. 1-3; p. 5, ¶ 5).

2.    The Original Dalton Complaint

The Plaintiffs' allegations in the original *Dalton Action* complaint mirror the allegations in the Amended Complaint. Specifically, each of the Plaintiffs alleged that they read and relied on the same representation that "features prominently on the [Defendants'] website at checkout." (Ex. A; p. 3, ¶ 4). The *Dalton Action* Plaintiffs then asserted 27 causes of actions, sounding in violations of: (1) the Magnuson-Moss Warranty Act ("MMWA"), (2) the consumer protection statutes of the Plaintiffs' home states, as well as all 50 states in the U.S. and D.C.; and (3) the express and implied warranty laws of each of the Plaintiffs' home states, as well as the same laws of all 50 states in the U.S. and D.C.; and (4) unjust enrichment. (Ex. A). The *Dalton Action* Plaintiffs sought to represent a nationwide class defined as "all consumers who purchased the FasciaBlaster anywhere in the United States during the Class Period" as well as subclasses of the same consumers in the named Plaintiffs' home states. (Ex. A; p. 24, ¶¶ 123-124). The *Dalton Action* Complaint does not define the "Class Period." (Ex. A).

3. <u>Richter's Individual Complaint</u>

In the approximately one year interval between the parties' completion of briefing on the dispositive motions and the California Court's decision to transfer this case to the Southern District of Texas, Richter filed a separate lawsuit in Ohio state court on May 15, 2019 asserting tort claims on an individual basis arising out of her use of the Products against some of the same Defendants in this case. (See Richter Complaint, attached hereto as <u>Exhibit B</u>). Contrary to her allegations in the Amended Complaint, Richter alleged in her individual complaint that she purchased the Products after reviewing Facebook advertisements, joining an online discussion group, and reading product reviews. (Ex. B; ¶ 36). The defendants removed Richter's individual case to the Northern District of Ohio on June 18, 2019, and the parties stipulated to dismiss Richter's individual case on December 16, 2019. *See Richter v. Ashley Black, et al*, Case No. 3:19-cv-1403-JJH (N.D. Oh.).

4. <u>The Amended Complaint</u>

<u>The Plaintiffs</u>:  The Amended Complaint includes 16 named Plaintiffs, who reside in 8 different states, including the following:

- California (4 Plaintiffs);
- Florida (3 Plaintiffs);
- Nevada (3 Plaintiffs);
- Ohio (2 Plaintiffs);
- Arizona (1 Plaintiff);
- Louisiana (1 Plaintiff);
- Mississippi (1 Plaintiff); and
- New York (1 Plaintiff) (ECF No. 37).

<u>Alleged Representations</u>: In the Amended Complaint, all the Plaintiffs now assert practically identical allegations. Tracking the allegations in the *Dalton Action*, all of the Plaintiffs – including the *Elson Action* Plaintiffs – now allege that they read and relied on the same representation (hereafter, the "Subject Representation") that "features prominently on the [Defendants'] website at checkout:"

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE. (ECF No. 37; p. 3, ¶ 4).

The Plaintiffs allege that the Subject Representation contains health claims that are "false" and are not supported by any "competent and reliable scientific evidence." (ECF No. 37; p. 29-30, ¶¶ 186-196).

However, the Amended Complaint also alleges that Defendants' website reads "at the bottom of the checkout page:"

> Legal Disclaimer: All claims and results within are based on years of anecdotal evidence. The company is currently studying claims for scientific validation. (ECF No. 37; p. 37, ¶ 228).

The Amended Complaint alleges that the Defendants' website states the following:

> Research and product claims have not been reviewed by the US Food and Drug Administration. (ECF No. 37; p. 35, ¶ 213).

Causes of Action: The Amended Complaint asserts 35 causes of actions, sounding in violations of: (1) the Magnuson-Moss Warranty Act ("MMWA"), (2) various consumer protection statutes of the Plaintiffs' home states, as well as all 50 states in the U.S. and D.C.; and (3) the express and implied warranty laws of each of the Plaintiffs' home states, as well as the same laws of all 50 states in the U.S. and D.C.; and (4) unjust enrichment. (ECF No. 37).

Class Allegations: The Plaintiffs in the Amended Complaint purport to represent a nationwide class defined as "all consumers who purchased the FasciaBlaster anywhere in the United States during the Class Period" as well as subclasses of the same consumers in the named Plaintiffs' home states. (ECF No. 37; p. 37, ¶¶ 231-232). The Amended Complaint does not define the "Class Period." (ECF No. 37).

## D.    Chronology Regarding the Subject Representation

"Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000), *quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). "The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *See Also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (explaining that a plaintiff cannot "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit"). Accordingly, a court can consider documents outside the complaint that the Defendant attaches to a Rule 12 motion if the Plaintiff references the documents in her complaint and the documents are central to the Plaintiffs' claims. *Inclusive Cmtys. Project v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (collecting cases).

Here, the Defendants' website is referenced in the Amended Complaint and is central to each of the Plaintiffs' claims. Attached hereto as Exhibit C is the affidavit of the Defendants' Chief Strategy

Officer and Chief Financial Officer, Joshua Ketter, which establishes a foundation for the content of the Defendants' websites. (Ex. C; pp. 7-9, ¶ 11-12).

Contrary to the allegations in the Amended Complaint, the Subject Representation has never appeared on the "checkout screen" of Defendants' website. Rather, the only "representation" appearing on the checkout screen was the following disclaimer:

> Legal Disclaimer: All claims and results within are based on years of anecdotal evidence. The company is currently studying claims for scientific validation. (Kettler Decl. at ¶ 12(b))

Indeed, the Amended Complaint acknowledges the existence of this disclaimer, and the Plaintiffs do not deny that they reviewed this disclaimer. (See Also ECF No. 37; ¶ 228).

The content of the Subject Representation first appeared on the Defendants' website after October 31, 2016. While the Plaintiffs' claim that the Subject Representation appeared on the "checkout page" of the website, the content actually appeared on the "product page," and a mere 28 percent of purchasers visited the "product page" in connection with their purchase. (Ex. C; ¶ 11(e)). While all of the Plaintiffs allege that they reviewed and relied on the Subject Representation, the majority of the Plaintiffs (10 out of 16) allege that they made their first purchase of the Products prior to October 31, 2016, which was before the content of the Subject Representation first appeared on the Defendants' website.

According to the Amended Complaint, the Plaintiffs purchased the Products from the Defendants on the following dates (in chronological order):

- Sheila Smith (Florida) "in 2015." (ECF No. 37; ¶ 52).
- Mary Dennis (Mississippi) "in 2016." (ECF No. 37; ¶ 61).
- Joey Campbell (Arizona) "in 2016." (ECF No. 37; ¶ 70).
- Sharon Dalton (California) "in early 2016." (ECF No. 37; ¶ 22).
- Stacy Haavisto (California) "in or around April of 2016." (ECF No. 37; ¶ 79).
- Kelli Frederick (Louisiana) "in the Summer of 2016." (ECF No. 37; ¶ 41).
- Dina Salas (Nevada) "in or around June of 2016." (ECF No. 37; ¶ 142).
- Brooke Neufeld (New York) "in July of 2016." (ECF No. 37; ¶ 60).

- Carol Richter (Ohio) "in or around August of 2016." (ECF No. 37; ¶ 122).
- Loretta Oakes (Nevada) "in or around September of 2016." (ECF No. 37; ¶ 89).
- Michelle Lanum (Florida) "in or around September of 2016." (ECF No. 37; ¶ 98).
- Tilly Dorenkamp (Florida) "in October 2016." (ECF No. 37; ¶ 131).
- Arlene Rodriguez (California) "in November of 2016." (ECF No. 37; ¶ 151).
- Allyson McCarthy (Nevada) "in January of 2017." (ECF No. 37; ¶ 32).
- Emily Elson (California) "in or around March of 2017." (ECF No. 37; ¶ 13).
- Sue Grlicky (Ohio) "in or around April of 2017." (ECF No. 37; ¶ 111).

Based on their alleged purchase dates, only six Plaintiffs could have purchased their first Products after October 31, 2016: (1) Dennis (Mississippi); (2) Campbell (Arizona); (3) Rodriguez (California); (4) McCarthy (Nevada); (5) Elson (California); and (6) and Grlicky (Ohio).

While Campbell (Arizona) vaguely alleges that she first purchased the Product "in 2016," the Defendants' sales records confirm that she first purchased the Product on March 7, 2016. (Ex. C; ¶ 13(a)(viii)). Accordingly, only five of the sixteen Plaintiffs purchased their first Products after October 31, 2016

In light of the facts that the Subject Representation first appeared after October 31, 2016 and eleven of the Plaintiffs' first purchases were before that date, none of the Plaintiffs from New York, Louisiana, Arizona, or Florida could have possibly read and relied on the Subject Representation at the time of their first purchase.

**E.    Other Sources of Information Beyond the Defendants' Websites.**

While the Amended Complaint alleges that all the Plaintiffs relied on the Subject Representation on the Defendants' website, the Amended Complaint acknowledges that there are other sources of information regarding the Products beyond the Defendants' Website. Indeed, the Amended Complaint makes allegations regarding the following sources of information: (1) multiple sections of the Defendants' Website beyond the "checkout" page (ECF No. 37; ¶¶ 181, 183, 200, 222, 226); (2) statements on Facebook by users of the Products (ECF No. 37; ¶ 220); (3) statements from spokespersons for the Products; (4) statements in promotional videos on May 18, 2017 and August

31, 2017 (which post-date the date that any of the Plaintiffs first purchased the products) (ECF No. 37; ¶ 224); and (5) before-and-after photos on social media sites. (ECF No. 37; ¶ 226).

While the Amended Complaint is silent regarding whether any of the Plaintiffs reviewed and relied on these sources of information beyond the Subject Representation, the *Elson Action* Plaintiffs explicitly alleged that they reviewed and relied on multiple sources of information beyond the Defendants' website as detailed above.  Indeed, the *Elson Action* Plaintiffs variously alleged in their original complaint that they relied sources of information including: (1) Facebook advertisements; (2) recommendations of friends and family members; (3) research on Google; (4) online discussion groups; (5) product reviews; (6) promotional videos; (7) a book authored by Ashley Black; (8) and before-and-after photographs. Indeed, the *Elson Action* Plaintiffs did not make any allegations regarding the Subject Representation in their original complaint whatsoever.

**F.    Refunds and Replacements Issued to the Plaintiffs**

Defendants' Refund Policies:  Since March of 2015, the Defendants have offered a money-back guarantee to their customers. (Ex. C; ¶ 11(d)). The terms and conditions of the Defendants' refund policy are stated on the Defendants' website. (Ex. C; ¶ 11(d) and Exhibit 5 thereto, at pages 22 and 31). The Defendants originally offered refunds for a period of sixty days after sale, and the Defendants subsequently expanded the refund period to three years. As detailed below, the Defendants offered refunds to all of the Plaintiffs who requested refunds.

Complete Refunds for Three Plaintiffs:  Three of the Plaintiffs have requested and received complete refunds from the Defendants for their purchases prior to filing suit.  Specifically, the Defendants gave complete refunds to Grlicky on June 7, 2017, Salas between June 7 and June 8, 2017, and Rodriguez on September 13, 2017. (Ex. C; ¶¶ 13(a)(iv), (xii), and (xv)).

Partial Refund for One Plaintiff: The Defendants approved one of the Plaintiffs – Richter – for a complete refund for all of the Products she purchased if she returned her Products. (Ex. C; ¶

13(a)(vi)). Richter returned some, but not all of her products, and the Defendants issued Richter refunds for the products she returned on November 14, 2017. (Ex. C; ¶ 13(a)(vi)).

Refund Requested and Approved for One Plaintiff:  Similar to Richter, the Defendants approved one of the Plaintiffs – Haavisto – for a complete refund for all of the Products she purchased if she returned her products. (Ex. C; ¶ 13(a)(ii)). Despite being approved for a refund, Haavisto never returned any of her Products. (Ex. C; ¶ 13(a)(ii)).

Replacements Issued to Three Plaintiffs:  Three of the Plaintiffs requested and received replacement Products when they claimed that their Products were defective. Specifically, the Defendants gave replacement Products to Frederick, Dennis, and Campbell. (Ex. C; ¶¶ 13(a)(iii), (vii), and (viii)).

## G.     Lanum and Dorenkamp Waivers

In December of 2016, plaintiffs Lanum and Dorenkamp voluntarily participated in a study regarding the Products. Both signed a waiver which released "Ashley Black, ADB Interests, LLC, or any affiliated entity" from claims for any "injury, illness, reaction … or lack of results from … using a product … of ADB Interest, LLC." (Ex. C; ¶¶ 9(a)-(c) and Exhibits 1 and 2 attached thereto).

## H.     Pre-Suit Notices

Pre-Suit Notice Requirement for Warranty Claims:  As detailed in the argument section below, all of the Plaintiffs' home states required the Plaintiffs to provide notice to the Defendants of their potential breach of warranty claims before filing those claims. *See e.g., Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (applying California law). Under California law, the notice must be provided prior to filing suit. *Id.* Issuing notice simultaneously with filing the complaint is improper, and is a basis for dismissal of the warranty claims. *Id.*

Similarly, California imposes a 30-day pre-suit notice requirement for claims pursuant to its Consumer Legal Remedies Act ("CLRA"). Cal Civ. Code § 1782(a); *Cattie v. Wal-Mart Stores, Inc.*, 504

F.Supp.2d 939 (S.D. Cal. 2007). As detailed below and in the Defendants' motion to dismiss pursuant to Rule 12(b)(6), failure to comply with these pre-suit notice requirements is a basis for dismissal.

Here, some of the Plaintiffs failed to issue any pre-suit notices, and other Plaintiffs issued notices simultaneously with filing their Complaint. The following provides the chronology of the Plaintiffs' pre-suit notices:

- On August 24, 2017, Dalton issued a notice of potential CLRA and warranty claims. (Ex. C; ¶ 14(a), Exhibits 8 attached thereto);

- On October 23, 2017, the *Elson Action* Plaintiffs filed suit. On that same day, all ten *Elson Action* Plaintiffs issued a notice of potential CLRA claims. (Ex. C; ¶ 14(a), Exhibit 8 attached thereto);

- On November 16, 2017, seven[2] Plaintiffs issued notices of potential CLRA claims, Florida consumer protection statute claims, and warranty claims. (Ex. C; ¶ 14(a), Exhibits 8 and 9 attached thereto) Five of those Plaintiffs were already parties to the *Elson Action* (Elson, Rodriguez, Haavisto, Lanum, and Dorenkamp). Two of those Plaintiffs had not yet filed any complaint (Dalton and Smith).

- On January 23, 2018, the *Dalton Action* Plaintiffs filed suit (Dalton, Smith, McCarthy, Dennis, Frederick, and Campbell). Of the six Dalton Plaintiffs, only Dalton and Smith had previously issued notice letters (Dalton on August 24, 2017 and November 16, 2017 and Smith on November 16, 2017).

Accordingly, only Dalton and Smith issued notices prior to filing suit. The rest of the Plaintiffs either issued notices simultaneously with filing suit (the *Elson Action* Plaintiffs) or did not issue any notice at all (McCarthy, Frederick, Dennis, Campbell, Neufeld, and Richter).

On September 22, 2017, the Defendants' counsel responded to Dalton's August 24, 2017 notice. While the Defendants denied Dalton's allegations, the Defendants advised that in response to Dalton's allegations, the Defendants had contacted the putative class members and offered a three-year money back guarantee if they were not happy with the Products. (Ex. C; ¶ 14(a), and Exhibit 9 attached thereto).

---

[2] An eighth individual, Jerry Gaines, also issued notice at this time. As noted above, Jerry Gaines has not joined the Amended Complaint.

14

On November 27, 2017, the Defendants' counsel responded to the *Elson Action* Plaintiffs' October 23, 2017 notice with the same response that the Defendants provided to Dalton. (Ex. C; ¶ 14(a), and Exhibit 9 attached thereto).

On December 21, 2017, the Defendants' counsel responded to the seven November 16, 2017 notices. The Defendant advised that it contacted over 50,000 putative class members offering the expanded refund, and 42 customers requested returns, all of which the Defendant honored. (Ex. C; ¶ 14(a), and Exhibit 9 attached hereto).

## I.    Summary of Facts

For the Court's convenience, the table below summarizes the relevant individual facts pertaining to each of the 16 Plaintiffs, listed in chronological order by the first purchase date:

| | Name | State | Alleged Purchase Date | Initial Purchase After "Subject Representation" Published? | First Complaint | Pre-Suit Notice | Refunds and Replacements |
|---|---|---|---|---|---|---|---|
| 1 | Smith | FL | 2015 | **No** | *Dalton Action* | Yes | **No** |
| 2 | Haavisto | CA | April 2016 | **No** | *Elson Action* | **No** | Refund Approved |
| 3 | Frederick | LA | Summer 2016 | **No** | *Dalton Action* | **No** | Replacement Issued |
| 4 | Dalton | CA | Early 2016 | **No** | *Dalton Action* | Yes | **No** |
| 5 | Salas | NV | June 2016 | **No** | *Elson Action* | **No** | Refund Issued |
| 6 | Neufeld | NY | July 2016 | **No** | Amended Complaint | **No** | **No** |
| 7 | Richter | OH | Aug. 2016 | **No** | Amended Complaint | **No** | Partial Refund Issued |
| 8 | Oakes | NV | Sept. 2016 | **No** | *Elson Action* | **No** | **No** |
| 9 | Lanum | FL | Sept. 2016 | **No** | *Elson Action* | **No** | **No** |
| 10 | Dorenkamp | FL | Oct. 2016 | **No** | *Elson Action* | **No** | **No** |
| 11 | Campbell | AZ | 2016 | **No** | *Dalton Action* | **No** | Replacement Issued |
| 12 | Dennis | MS | 2016 | Yes | *Dalton Action* | **No** | Replacement Isssued |
| 13 | Rodriguez | CA | Nov. 2016 | Yes | *Elson Action* | **No** | Refund Issued |
| 14 | McCarthy | NV | Jan. 2017 | Yes | *Dalton Action* | **No** | **No** |

| 15 | Elson | CA | March 2017 | Yes | *Elson Action* | **No** | **No** |
| 16 | Grlicky | OH | April 2017 | Yes | *Elson Action* | **No** | Refund Issued |

## STANDARDS FOR CLASS CERTIFICATION

"It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). In addition to establishing an adequately defined and clearly ascertainable class, the Plaintiffs "must satisfy Federal Rule of Civil Procedure 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 252 (5th Cir. 2020). "The Rule 23(a) prerequisites are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Id.* at 252, n. 11. "Rule 23(b)(3) embodies two requirements: (1) common questions must predominate over any questions affecting only individual members; and (2) class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at 252.

District Courts have authority to strike class allegations under both Federal Rules of Civil Procedure 12(f) and 23(d)(4). *Read v. Input/Output, Inc.*, 2005 U.S. Dist. LEXIS 37025, *6 (S.D. Tex. Aug. 26, 2005). A court may strike class allegations when the issues are "plain enough from the pleadings." *Gen Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, (1982); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (holding that a court may dismiss a class allegation "where it is facially apparent from the pleadings" that there is no ascertainable class).

**ARGUMENT**

I.   **This Honorable Court may disregard the Plaintiffs' allegations in their Amended Complaint because those allegations blatantly contradict the Plaintiffs' admissions in the original *Elson Action* complaint, and they are a transparent attempt to avoid the Defendants' motion to strike the Plaintiffs' class allegations.**

The Fifth Circuit has explained that the Plaintiffs' original allegations in the *Elson Action* may be used as evidentiary admissions. *Sanders v. Univ. of Tex. Pan Am.*, 776 Fed. Appx. 835, 837-838 (5th Cir. 2019). Further, when deciding a Rule 12 motion, this Court has discretion to disregard facts alleged in an amended pleading when they "directly and blatantly contradict an essential factual element as pled in a previous complaint and when the court discerns an intent to manipulate the pleadings in over to avoid an argument for dismissal." *Di Simone v. CN Plumbing, Inc.*, 2014 U.S. Dist. LEXIS 44574, *9 (E.D.N.Y. Mar. 31 2014) (collecting cases); *See Also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324 (Fed. Cir. 1998) (affirming district court's decision to strike alleged facts in an amended complaint that contradicted original complaint and were a "transparent attempt to conform the facts to the requirements of the cause of action"); *Palm Beach Strategic Income, LP v. Salzman,* 2011 U.S. Dist. LEXIS 46867, *16-18 (E.D.N.Y. May 2, 2011) *aff'd*, 457 F. App'x 40 (2d Cir. 2012) (disregarding facts alleged in amended complaint that "blatantly" contradicted facts alleged in three prior complaints and that were relied on in the plaintiff's briefs opposing a previous motion to dismiss), *Swenson v. Eldorado Casino Shreveport Joint Venture*, 2017 U.S. Dist. LEXIS 54194, *14 (W.D. La. Apr. 7, 2017) ("A plaintiff may not assert new allegations, based on facts not previously asserted, or contradict facts previously alleged, in her attempt to avoid dismissal"); *Carrillo v. Buendia*, 2020 U.S. Dist. LEXIS 142309, *12 (S.D. Tex. Aug. 10, 2020) ("When amended pleadings are a transparent attempt to conform the facts to the requirements of the cause of action and represent diametrically opposed recollections of the events, the Court has discretion to reject the changes as sham"); *See Also* Fed. R. Civ. Proc. 11(b) (when counsel signs a pleading, he certifies that to the best of his knowledge, information, and belief, formed

after an inquiry reasonable under the circumstances, that the factual contentions in the pleading have evidentiary support).

Here, as detailed above, the Plaintiffs originally alleged in the *Elson Action* that they purchased the Products in reliance on representations contained in at least eight different sources of information spread over a two-year time period. In the Amended Complaint, the Plaintiffs have blatantly contradicted their prior allegations and implausibly alleged that each of the sixteen Plaintiffs uniformly relied on the same Subject Representation contained on the checkout page of the Defendants' website. In addition to being contradicted by their own pleadings, the Plaintiffs' allegations in the Amended Complaint that they relied on the Subject Representation are demonstrably false because: (1) the Subject Representation was not actually located on the checkout page as the Plaintiffs allege; (2) the Subject Representation did not appear on the Defendants' website until after October 31, 2016, which was after 11 of the 16 Plaintiffs purchased their first Product; and (3) the Subject Representation appeared on a page that was visited by only 28% of customers.

In addition to being contradicted by their prior allegations, the Plaintiffs' allegations in the Amended Complaint are implausible on their own terms. The Amended Complaint alleges that the Plaintiffs relied on the Subject Representation, which was located on the *checkout* page of the Defendants' website. Even if this were true, the Plaintiffs logically would not have reached the checkout page unless they had already decided to purchase the Products. Indeed, two of the Plaintiffs in the original *Elson Action* did not join the Amended Complaint when they originally alleged that they relied on other sources of information before purchasing and using the Products.

Tellingly, the Amended Complaint – and the *Dalton Action* Complaint that it mirrors – were filed after the Defendants originally moved to strike the class allegations in the *Elson Action*. The Plaintiffs' implausible allegations in the Amended Complaint blatantly contradict their original allegations in the *Elson Action* and are a transparent effort to avoid the Defendants' motion to strike.

Accordingly, this Honorable Court must disregard the implausible allegations in the Amended Complaint, and instead accept as true the Plaintiffs' admissions in their original *Elson Action* complaint that they relied on multiple disparate sources of information spread over a two-year time period, thereby destroying any commonality in their claims and defeating class certification.

II.   **The Plaintiffs have failed to allege an adequately defined and clearly ascertainable class, because determining membership in the alleged class will require individual inquiries on whether the individual class members actually reviewed and relied on the Subject Representation.**

"It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). "For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Moore's Federal Practice*, § 23.21[3][a], *cited with approval by John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.4 (5th Cir. 2007). "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class." *Moore's Federal Practice,* § 23.21[3][c], *cited with approval by Morrow v. Washington,* 277 F.R.D. 172, 187 (E.D. Tex. Aug. 29, 2011). Further, "no class may be certified that contains members lacking Article III standing" and "the class must therefore be defined in such a way that anyone within it would have standing." *In re Deepwater Horizon*, 739 F.3d 790, 801 (5th Cir. 2014).

"Generally, claims involving individual reliance are unsuitable for class certification." *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613, 630 (E.D. Tex. 2004), *citing Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 219 (5th Cir. 2003) ("Cases that involve individual reliance fail the predominance test" for class certification); *Simon v. Merrill Lynch, Pierce, Fenner & Smith*, 482 F.2d 880, 882-83 (5th Cir. 1973) ("If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action").

Here, the Amended Complaint asserts four broad categories of claims: (1) violations of various state consumer protection statutes; (2) violations of various state warranty laws; (3) violations of the federal Magnuson-Moss Warranty Act ("MMWA"); and (4) claims for unjust enrichment.  However, all of these claims require the Plaintiffs to prove that they either relied on, or at least actually reviewed, the Subject Representation in order to state a claim.

For the state consumer protection statute claims, and using California law as an example[3], "California law does not authorize an award on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595-96 (9th Cir. 2012) (reversing class certification for claims based on the same three California consumer protection statutes at issue in this case because "it is likely that many class members were never exposed to the allegedly misleading advertisements" and "a presumption of reliance does not arise when class members were exposed to quite disparate information from various representatives of the defendant").

For the warranty claims, the Plaintiffs must establish that each class member actually reviewed the Subject Representation. *See, e.g. Osborne v. Subaru of America, Inc.,* 243 Cal.Rptr. 815, 824 (Cal. Ct. App. 1988) (denying class certification in case alleging breach of warranty based on advertisements, because plaintiff failed to establish that the putative class members actually reviewed the subject advertisements, and some of the subject advertisements were first published after some putative class members made their purchases).  Specifically regarding the express warranty claims, the UCC's Section 2-313 states that a representation becomes an express warranty only if the representation is "made by the seller to the buyer" and "becomes part of the basis of the bargain." *See e.g.* Cal. Com. Code § 2313.

---

[3] For the purposes of this portion of the brief, the Defendant uses California law as an example because a plurality of the Plaintiffs reside in California and have asserted claims under California law.  While there are material differences in the laws of eight different home states of the Plaintiffs, the laws of all of those states present the same class definition problem because membership in the alleged class requires an individual inquiry into whether the putative class member actually reviewed or relied upon the Subject Representation.

Accordingly, the Plaintiffs need to establish that the putative class members actually reviewed the Subject Representation and that it became part of the basis of the bargain. *See e.g. In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 754 F.Supp.2d 1145, 1183 (C.D. Cal. 2010) (plaintiffs cannot establish express warranty claim based on advertisements "in the absence of specific allegations that they were aware of the statements" made in the advertisements); *Allied Fidelity Ins. Co. v. Pico,* 656 P.2d 849, 850 (Sup. Ct. Nev. 1983) (same); *Ramirez v. Medtronic Inc.,* 961 F.Supp.2d 977, 1001 (D. Ariz. 2013) (same); *Global Truck & Equipment Co. v. Palmer Machine Works, Inc.,* 628 F. Supp. 641, 651 (N.D. Miss. 1986) (same); *Price Bros. Co. v. Philadelphia Gear Corp.,* 649 F.2d 416, 421-23 (6th Cir. 1981) (same, applying Ohio law).

Regarding the implied warranty of merchantability claims, the UCC's Section 2-314 states that there is an implied warranty that goods "are fit for the ordinary purposes for which such goods are used." *See, e.g.,* Cal. Com. Code § 2314(2)(c). However, the Plaintiffs allege that their understanding of the ordinary purposes for which the subject product is used was derived from their review of the Defendants' alleged representations. The Plaintiffs have not alleged that the Products failed to perform as a personal massage device. Rather, the Plaintiffs allege that the Products did not produce certain results such as cellulite reduction that the Plaintiffs claim were promised in the Subject Representation. Accordingly, the Plaintiffs have to establish that the putative class members actually reviewed those representations for those representations to create any warranty of merchantability.

Regarding the implied warranty of fitness for a particular purpose, "[s]uch an implied warranty arises only where the purchaser at the time of contracting intends to use the goods for a particular purpose; the seller at the time of contracting has reason to know of this particular purpose; the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular purpose; and the seller at the time of contracting has reason to know that the buyer is relying on such skill or judgment." *Metowski v. Traid Corp.,* 104 Cal.Rptr. 599, 604 (Cal. App. Ct. 1972). However, "each of

these elements may be established only by testimony from each purchaser as to what his [or her] intended purpose was, whether he [or she] relied on defendant's skill and judgment, whether defendant had reason to know of his [or her] particular purpose and his [or her] reliance." *Id.* (denying class certification based on these individual issues). Accordingly, the Plaintiffs have to establish each of these individual elements before any putative class member could become a member of the alleged class.

Regarding the MMWA claims, MMWA claims "stand or fall with […] express and implied warranty claims under state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008). Accordingly, the Plaintiffs would need to establish reliance for each of the putative class members on the MMWA claims for the same reasons as detailed above.

Regarding the unjust enrichment claims, unjust enrichment is not a "theory of recovery" but rather a "measure of damages" that is "synonymous with restitution" for the breach of a contract. *Hernandez v. Lopez*, 103 Cal.Rptr.3d 376, 380-81 (Cal. Ct. App. 2009). Unjust enrichment is an "equitable remedy" that requires an individual to "make restitution if he or she is unjustly enriched at the expense of another." *Dunkin v. Boskey*, 98 Cal. Rptr. 2d 44, 61 (Cal. Ct. App. 2000). Accordingly, the Plaintiffs would need to establish, at a minimum, that putative class members actually relied on the Subject Representation before they could be entitled to any equitable relief pursuant to an unjust enrichment theory.

Here, the Plaintiffs purport to represent a class defined as "all consumers who purchased the FasciaBlaster anywhere in the United States during the Class Period." For the reasons detailed above, all of the Plaintiffs' causes of action require some individualized inquiry into whether the putative class members reviewed or relied on the Subject Representation. The Plaintiffs' alleged class of all purchasers of the Products is not adequately defined because it includes putative class members who did not review or rely on the Subject Representation. *See In re Deepwater Horizon*, 739 F.3d at 801 (the

class must be "defined in such a way that anyone within it would have standing"); *John*, 501 F.3d 443 (in putative class action alleging that insurance company systematically underpaid insurance claims, affirming district court's dismissal of class claims for failure to allege an ascertainable class where the class was defined simply as all policy holders who had received a claims estimate).

Even if the Plaintiffs limited their class definition to include only those purchasers who reviewed or relied on the Subject Representation, this class definition would not be ascertainable because it would require individual inquiries into the merits of each putative class member's claim to determine whether she is a member of the class. "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class." *Moore's Federal Practice*, § 23.21[3][c], *cited with approval by Morrow v. Washington*, 277 F.R.D. 172, 187 (E.D. Tex. Aug. 29, 2011). "Generally, claims involving individual reliance are unsuitable for class certification." *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. at 630, *citing Simon*, 482 F.2d at 882-83 ("If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action"); *See Also Mazza*, 666 F.3d at 596 (vacating as "overbroad" a class defined as all purchasers of a product in a case involving misrepresentation claims because "an individualized case must be made for each member showing reliance" and "[a] presumption of reliance does not arise when class members "were exposed to quite disparate information from various representatives of the defendant"). Accordingly, this Honorable Court must strike the Plaintiffs' class allegations because the Plaintiffs cannot possibly establish an adequately defined and clearly ascertainable class in light of the individual issues regarding whether the putative class members reviewed or relied on the Subject Representation.

**III.    The Plaintiffs' class allegations must be stricken because the Plaintiffs cannot establish all the prerequisites for class certification under Rule 23(a).**

    A.    <u>The Plaintiffs cannot establish numerosity because the putative class is not ascertainable without engaging in individual merits inquiries.</u>

Rule 23(a) requires "a class so numerous that joinder of all members is impracticable." While the Plaintiffs claim that the putative class consists of all purchasers of the Products, the foregoing demonstrates that such a class is not adequately defined because it includes purchasers who did not review or rely on the Subject Representation. Further, even if the class was limited to those persons who did review or rely on the Subject Representation, such a class would not be ascertainable, because it would require engaging in individual merits inquiries to determine whether an individual is a member of the class. "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class." *Moore's Federal Practice,* § 23.21[3][c]. Accordingly, the Plaintiffs cannot demonstrate numerosity because the putative class is not ascertainable without engaging in individual merits inquiries.

B.    The Plaintiffs cannot establish the commonality requirement because each of the putative class members' claims require an individualized showing that the class member reviewed or relied on the Subject Representation.

To establish commonality, the purported class members' claims "must depend upon a common contention […] that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality requirement "is easy to misread, since any competently crafted class complaint literally raises common questions." *Id.* at 349. Commonality requires more than claiming that all class members "suffered a violation of the same provision of the law." *Id.* at 350. "What matters to class certification is not the raising of common questions – even in droves – but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.*

Here, the Plaintiffs contend that the accuracy of the performance claims in the Subject Representation present common questions. However, as detailed above, all of the Plaintiffs' claims

require proof that the putative class members reviewed or relied on the claims in the Subject Representation. Accordingly, deciding whether the performance claims in the Subject Representation are accurate does not generate "common answers" that determine the validity of the Plaintiffs' claims "in one stroke," because the individual questions of reliance will still need to be answered for each putative class member. Accordingly, the Plaintiffs cannot establish the commonality requirement for class certification.

C.     The Plaintiffs cannot establish the typicality and adequacy requirements because none of the named Plaintiffs' claims are typical or representative of the putative class.

Rule 23(a) requires that the "claims or defenses of the representative are typical of the claims or defenses of the class." Fed. R. Civ. Proc. 23(a)(3). The typicality requirement protects class members from representation by a party who is "preoccupied with a defense which is applicable only to himself." *Warren v. Reserve Fund, Inc.*, 728 F.2d 741, 747 (5th Cir. 1984). "Class certification is inappropriate where a putative representative is subject to unique defenses which threaten to become the focus of the litigation." *Kalodner v. Michaels Stores*, 172 F.R.D. 200, 205 (N.D. Tex. 1997).

Rule 23(a) further requires that the named plaintiffs "will fairly and adequately protect the interests of the class," which can be defeated if there is a "conflict or antagonism between the interests of the named plaintiffs and the interests of the class." Fed. R. Civ. Proc. 23(a)(4); *Kalodner,* 172 F.R.D. at 209.

As detailed below, all of the named Plaintiffs are subject to defenses that prevent any of the named Plaintiffs from establishing typicality or adequacy of representation, including: (1) the *Elson Action* Plaintiffs' contradictory allegations; (2) the timing of purchases; (3) the Plaintiffs' failure to issue pre-suit notices; (4) the Plaintiffs' receipt of refunds; and (5) the Plaintiffs' home states.

*Elson Action* Plaintiffs' Contradictory Allegations Regarding Reliance: As detailed above, all of the Plaintiffs' claims require the Plaintiffs to establishe that they reviewed or relied on the Subject Representation. However, the *Elson Action* Plaintiffs explicitly alleged that they reviewed and relied on

multiple different sources of information beyond the Subject Representation, including: (1) Facebook advertisements; (2) recommendations of friends and family members; (3) research on Google; (4) online discussion groups; (5) product reviews; (6) promotional videos; (7) a book authored by Ashley Black; (8) and before-and-after photographs. Richter similarly alleged in her individual suit in Ohio that she reviewed and relied on other sources of information. Indeed, the *Elson Action* Plaintiffs did not make any allegations regarding the Subject Representation in their original complaint whatsoever. The foregoing demonstrates that Richter and the *Elson Action* Plaintiffs' claims are not typical of the putative class, and those Plaintiffs are not adequate class representatives.

Purchases Prior to October 31, 2016:  As detailed above, only five of the sixteen Plaintiffs made their first purchase after the Subject Representation first appeared on the Defendants' website after October 31, 2016.  Accordingly, the following Plaintiffs' claims are not typical of the putative class, and they are not adequate class representatives: (1) Dalton; (2) Smith; (3) Haavisto; (4) Frederick; (5) Salas; (6) Neufeld; (7) Richter; (8) Oakes; (9) Lanum; (10) Dorenkamp; and (11) Campbell.

Failure to Comply with Notice Requirements for Warranty Claims:  "To avoid dismissal of a breach of contract or breach of warranty claim in California, a buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011). The plaintiff must provide notice prior to filing suit, and notice issued simultaneously with filing the complaint fails to satisfy the notice requirement. *Alvarez*, 656 F.3d at 932 (affirming district court's dismissal of class action complaint with prejudice where plaintiff provided notice for the first time simultaneously with filing suit).  All of the Plaintiffs' home states have similar pre-suit notice requirements for breach of warranty claims. *See e.g., General Matters v. Paramount Canning Co.*, 382 So.2d 1262 (Fl. Ct. App. 1980) (entering judgment in favor of seller on buyer's breach of warranty claim under Florida law for failure to provide pre-suit notice); *Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d 813 (8th Cir. 1978) (same, applying

Ohio law); *First Sec. Mortg. Co. v. Goldmark Plastics Compounds*, 862 F.Supp.918 (E.D.N.Y. 1994); *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F.Supp.2d 1096 (D. Ariz. 2003); *See Also* Nev. Rev. Stat. Ann. § 104.2607(3)(a); Miss. Code Ann. § 75-2-607(3)(a); La. C.C. Art. 2522.

Here, only two Plaintiffs provided notice of their potential warranty claims prior to filing suit (Dalton and Smith). The *Elson Action* Plaintiffs issued notice simultaneously with filing their original complaint, and the remaining Plaintiffs did not issue any notice at all. Accordingly, with the sole exceptions of Dalton and Smith[4], all of the Plaintiffs' warranty claims must be dismissed for their failure to comply with the pre-suit notice requirements. This failure to comply with the pre-suit notice requirements demonstrates that these Plaintiffs' claims are not typical of the putative class with respect to the warranty claims, and those Plaintiffs are not adequate class representatives with respect to the warranty claims.

Failure to Comply with the CLRA's 30-Day Pre-Suit Notice Requirements: California's Consumer Legal Remedies Act requires consumers to give at least thirty days notice before commencing an action for damages, and failure to provide such notice prior to filing suit requires dismissal of the Plaintiff's claim with prejudice. Cal Civ. Code § 1782(a); *Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939 (S.D. Cal. 2007), *citing Outboard Marine Corp. v. Superior Ct.*, 124 Cal. Rptr. 852 (Cal. App. Ct. 1975).

Here, the *Elson Action* Plaintiffs issued their CLRA notice simultaneously with filing their original complaint, and their original complaint sought recovery of monetary damages. Some California District Courts have found that a named Plaintiff in putative CLRA class action can avoid the consequences of her failure to provide a timely pre-suit CLRA notice if another named Plaintiff did so. *See e.g., Asghari v. Volkswagen Group of Am., Inc.*, 42 F. Supp. 3d 1306, 1317-1318 (C.D. Cal. 2013)

---

[4] As noted above, Dalton and Smith's claims are not typical of the putative class because they made their first purchase prior to October 31, 2016, and they are not adequate class representatives for the same reason.

(collecting cases). However, *Asghari* found that a Plaintiff who failed to provide a pre-suit CLRA notice could not rely on the notice provided by another Plaintiff who had since withdrawn her CLRA claim. *Id.*

Here, while Dalton provided a CLRA notice thirty days prior to filing suit, Dalton's claims must be dismissed because she purchased her first Product prior to October 31, 2016. Accordingly, the California *Elson Action* Plaintiffs cannot rely on Dalton's CLRA notice. More importantly for the purposes of the subject motion, the foregoing defenses demonstrate that the California *Elson Action* Plaintiffs' claims are not typical of the putative California subclass' claims, and the California *Elson Action* Plaintiffs are not adequate class representatives.

Waivers:  As detailed above, Lanum and Dorenkamp both executed waivers in connection with their participation in a study regarding the Products, which released the Defendants from any claims regarding the Products' results.  Accordingly, the Plaintiffs' claims are not typical of the putative class, and these Plaintiffs are not adequate class representatives.

Refunds:  As detailed above, three of the Plaintiffs were issued complete refunds (Salas, Rodriguez, Grlicky), one of the Plaintiffs was issued a partial refund (Richter), and one of the Plaintiffs was approved for a refund, but did not return her products (Haavisto).  Accordingly, these Plaintiffs' claims are not typical of the putative class, and these Plaintiffs are not adequate class representatives.

Failure to Use Refund Process: The MMWA "contains an explicit congressional policy statement encouraging warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593 (C.D. Cal. 2008), *citing* 15 U.S.C. § 2310(a)(1). "Pursuant to this policy, a class of consumers may not proceed in a class action unless the named plaintiffs initially resort to the warrantor's informal dispute settlement mechanism." *Id.* As detailed above, the Defendants had a refund policy posted on their website.  Only five of the Plaintiffs requested refunds (Salas, Rodriguez,

Grlicky, Richter, and Haavisto), and an additional three Plaintiffs requested replacement products (Federick, Dennis, and Campbell). The remaining eight Plaintiffs failed to use the policy in any way whatsoever. Accordingly, those Plaintiffs' claims are not typical of the putative class with respect to the MMWA claims, and they are not adequate class representatives with respect to the MMWA claims.

Home States: "To certify a class under Rule 23, plaintiffs must show they are members of the class." *Morrow v. Washington*, 277 F.R.D. 172, 188 (E.D. Tex. 2011). Here, the entirety of the Plaintiffs' claims are either based on state law (the warranty claims, consumer protection statues claims, and unjust enrichment claims) or dependent on state law (the MMWA claims). However, because the Plaintiffs' claims are dependent on state law, each Plaintiff can only enforce the law of the state where that Plaintiff purchased the Products. *See Mazza*, 666 F.3d at 594 (vacating certification of a nationwide class applying California law, explaining that each class member's claim should be governed by the law of the state where the transaction took place). Accordingly, each named Plaintiffs' claim is not typical of the putative class members who reside in other states, and each named Plaintiff cannot adequately represent putative class members who reside in other states.

The foregoing demonstrates that none of the named Plaintiffs' claims are typical of all the causes of action alleged in this case, and none of the Plaintiffs are adequate class representatives. Accordingly, this Honorable Court must strike the Plaintiffs' class allegations because the Plaintiffs cannot possibly establish the Rule 23(a) requirements for class certification.

III.    **The Plaintiffs cannot establish a class for injunctive relief pursuant to Rule 23(b)(2), because the Plaintiffs' are primarily seeking monetary damages.**

The Plaintiffs cannot pursue class certification pursuant to Rule 23(b)(2) because the Plaintiffs are simultaneously seeking monetary relief that "predominates" over any requests for injunctive or declaratory relief. *See Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir. 1998). Here, the Amended Complaint predominantly seeks monetary relief in the form of refunds, monetary damages, treble damages, punitive damages, and attorney fees and costs. (ECF No. 37; p. 89). Accordingly, the

Plaintiffs cannot pursue class certification pursuant to Rule 23(b)(2). *See Kabbash v. Jewelry Channel, Inc. USA*, 2017 U.S. Dist. LEXIS 87502, *21-22 (W.D. Tex. Jun. 7, 2017) (finding that the Plaintiff could not pursue class certification pursuant to Rule 23(b)(2) when the Plaintiff primarily sought refunds for the class members that purchased the products at issue).

**IV.    The Plaintiffs cannot establish predominance and superiority under Rule 23(b)(3) because all of the Plaintiffs' claims require individual inquiries into whether the putative class members reviewed and relied on the Subject Representation and the Plaintiffs cannot pursue a nationwide class.**

To certify a class pursuant to Rule 23(b)(3), the Plaintiffs must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Proc. 23(b)(3).

A.    <u>The Plaintiffs cannot establish that common questions of fact predominate because all of the Plaintiffs' claims require individual proof regarding whether individual class members actually reviewed or relied on the Subject Representation.</u>

"Generally, claims involving individual reliance are unsuitable for class certification." *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613, 630 (E.D. Tex. 2004), *citing Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 219 (5th Cir. 2003) ("Cases that involve individual reliance fail the predominance test" for class certification); *Simon v. Merrill Lynch, Pierce, Fenner & Smith*, 482 F.2d 880, 882-83 (5th Cir. 1973) ("If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action"); *Unger v. Amedisys Inc.*, 401 F.3d 316, 321-22 (5th Cir. 2005) ("If the circumstances surrounding each plaintiff's alleged reliance on fraudulent representations differ, then reliance is an issue that will have to be proven by each plaintiff, and the proposed class fails Rule 23(b)(3)'s predominance requirement").

Here, all of the Plaintiffs' claims require proof that the individual putative class members actually reviewed or relied on the Subject Representation. The Plaintiffs' own allegations in the *Elson Action* demonstrate that the named Plaintiffs variously relied on multiple different sources of

information beyond the Subject Representation, including: (1) Facebook advertisements; (2) recommendations of friends and family members; (3) research on Google; (4) online discussion groups; (5) product reviews; (6) promotional videos; (7) a book authored by Ashley Black; (8) and before-and-after photographs. Accordingly, this Honorable Court must strike the Plaintiffs' class allegations because the Plaintiffs' own allegations demonstrate that the Plaintiffs cannot possibly establish that common factual issues predominate.

B.   The Plaintiffs cannot establish that common questions of law predominate because they purport to assert claims based on the laws of all 50 states that contain multiple material differences.

"In a class action governed by the laws of multiple states, … variations in state law may swamp any common issues and defeat predominance." *Cole v. GMC*, 484 F.3d 717, 724 (5th Cir. 2007). The party seeking certification of a nationwide class must therefore provide an extensive analysis of state law variations to reveal whether these pose insuperable obstacles." *Id.* "The district court must then consider how variations in state law affect predominance." *Id.*

Here, the Plaintiffs purport to represent a nationwide class asserting state law claims based on the warranty, consumer protection, and unjust enrichment laws of all 50 states and the District of Columbia.  Regarding the warranty claims, "the Fifth Circuit has declined to certify state-law express and implied warranty claims for a nationwide class because the elements and defenses differ by state and the class members do not share common legal and factual issues." *Gordon v. Sig Sauer, Inc.*, 2019 U.S. Dist. LEXIS 160584, *58 (S.D. Tex. Sept. 20, 2019), *citing Cole v. GMC*, 484 F.3d 717, 726-29 (5th Cir. 2007) (vacating certification of nationwide class asserting warranty claims for failure to establish predominance, finding that state warranty laws have multiple material differences with respect issues including reliance, pre-suit notice requirements, and privity of contract)

Regarding the consumer protection laws, multiple courts have recognized that there are material differences across the states. *See Mazza*, 666 F.3d at 591 (vacating certification of nationwide

class asserting consumer protection claims for failure to establish predominance, finding that state consumer protection law have multiple material differences on issues including scienter, reliance, and recoverable damages); *In re Prempro*, 230 F.R.D. 555, 564 (E.D. Ark. 2005) ("Both consumer fraud and unfair competition laws of the states differ with regard to the defendant's state of mind, type of prohibited conduct, proof of injury-in-fact, available remedies, and reliance, just to name a few differences"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules."); *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (same). Courts have made the same observations regarding unjust enrichment laws. *See Mazza*, 666 F.3d at 591 ("The elements necessary to establish a claim for unjust enrichment also vary materially from state to state").

The Plaintiffs cannot establish that common questions of law or fact predominate in their purported nationwide class action. Moreover, the Plaintiffs cannot establish that a nationwide class action applying the divergent laws of every state is a superior method of adjudication. *Cole*, 484 F.3d at 726 (noting that "variations in state law raise the potential for the application of multiple and diverse legal standards and a related need for multiple jury instructions"). Accordingly, this Honorable Court must strike the Plaintiffs' class allegations because the Plaintiffs cannot possibly establish predominance pursuant to Rule 23(b)(3).

**PRAYER**

Defendants Ashley Black, ADB Innovations, LLC, Ashley Black Guru, Ashley Diana Black International Holdings, LLC, Ashley Black Fasciology, LLC et al. respectfully pray that the Court grants their Motion to Strike the Plaintiffs' Class Allegations.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By:     */s/ Clyde O. Adams*
Clyde "Chip" Adams
ATTORNEY IN CHARGE
So. Dist. No.:
SBN: 24026761
coadams@grsm.com

**ATTORNEYS FOR DEFENDANTS**

**OF COUNSEL**

**GORDON REES SCULLY MANSUKHANI, LLP**
1900 West Loop South, Suite 1000
Houston, Texas 77027
Telephone: (713) 961-3366

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed electronically on the 7th day of September, 2020, and is available for viewing and downloading from the ECF system. Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of electronic filing, which constitutes service of same, and satisfies the requirements of Fed. R. Civ. P. 5(b)(2)(D).

<u>/s/ Clyde O. Adams</u>
Clyde O. Adams